**RECEIVED**

MAR - 2 2016 *[handwritten initials]*

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PEGGY MAYS, ET AL. | CIVIL ACTION NO. 14-3098 |
| VERSUS | JUDGE DOHERTY |
| CHEVRON PIPE LINE CO., ET AL. | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment [Doc. 63], filed by defendant Chevron Midstream Pipelines, LLC ("Midstream"), whereby defendant seeks dismissal of all claims brought against it by plaintiffs, arguing "there is no evidence that the pipeline owned by Midstream was defective and/or that any alleged failure with the pipeline or valve caused the subject accident."[1] [Id. at 1] For the following reasons, the motion for summary judgment is GRANTED.

**I.     Factual Background**

Peggy Mays (individually and as personal representative of the Estate of James Mays), Daphne Lanclos, Brent Mays and Jared Mays (collectively, "plaintiffs") have sued Midstream in tort for damages arising out of a workplace accident that resulted in the death of James Mays. [Doc. 1-1] Jurisdiction in this matter is based upon diversity of citizenship, 28 U.S.C. § 1332. [Doc. 1-1, p.2;

---

[1]The motion was jointly filed by Midstream and defendant Chevron Pipe Line Company ("Chevron Pipe Line"). However, subsequent to the filing of this motion, the Court issued a ruling dismissing all tort claims asserted against Chevron Pipe Line, on the grounds that those claims were barred by the Louisiana Workers' Compensation Act. [Doc. 84] Therefore, the Court addresses the motion solely as to the arguments made by Midstream.

Doc. 12, p.2] The following facts are not in dispute:

On January 30, 2014, Chevron Pipe Line and Furmanite America, Inc., Mays' employer, entered into a Master Services Contract, whereby Furmanite agreed to provide valve maintenance services for Chevron Pipe Line at its onshore and offshore facilities. [Doc. 29-6, p. 1; Doc. 39-3, p. 1]  On September 9, 2014, Mr. Mays was sent by Furmanite to the Lighthouse Point platform, a platform located in state waters, to perform valve maintenance services. [Id.; *see also* Doc. 63-7, ¶ 2; Doc. 67-9, ¶ 2] The platform was owned by Midstream and operated by Chevron Pipe Line. [Doc. 63-7, ¶¶ 1, 8; Doc. 67-9, ¶ 1, 8]

The pipeline had a DEMCO ball valve connected to it, which was used to control the flow of natural gas in the pipeline. [Id at ¶¶ 1, 1]  When Mr. Mays and other members of the crew manually turned the gear operator on the DEMCO ball valve in an effort to close the valve, the gear operator broke. [Doc. 63-7, ¶ 2; Doc. 67-9, ¶ 2]  Mr. Mays and the crew returned to the Lighthouse Point platform on September 13, 2014 to remove the broken gear operator. [Doc.  Doc. 63-7, ¶ 3; Doc. 67-9, ¶ 3] After removing the gear operator, the crew began removing the operator cap/bonnet cover plate from the valve. [Id. at ¶¶ 4, 4] While removing the last bolt, the pressure barrier was breached causing the operator cap/bonnet cover plate and valve stem to be expelled. [Id. at ¶¶ 5, 5] Mr. Mays was struck in the head and killed. [Doc. 1-1, p. 2]

The parties agree the accident was not caused by a failure of the natural gas pipeline, nor by a failure of the DEMCO ball valve. [Doc. 63-7, ¶¶ 6-7; Doc. 67-9, ¶¶ 6-7] Additionally, at all times pertinent, there were no Midstream employees involved in the inspection, maintenance, repair, service or operation of the pipeline or DEMCO ball valve. [Id. at ¶¶ 9, 9; *see also* LR 56.2]

## II.    Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense - or the part

of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by:

> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

*Id.* at § (c)(1).

> As summarized by the Fifth Circuit:
>
> When seeking summary judgment, the movant bears the initial responsibility
> of demonstrating the absence of an issue of material fact with respect to those issues
> on which the movant bears the burden of proof at trial. However, where the
> nonmovant bears the burden of proof at trial, the movant may merely point to an
> absence of evidence, thus shifting to the non-movant the burden of demonstrating by
> competent summary judgment proof that there is an issue of material fact warranting
> trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury
> to return a verdict for that party" is a full trial on the merits warranted. *Anderson v.
> Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d

1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

### III.    Analysis

Midstream argues the claims against it must be dismissed, because "[t]here is no evidence that the . . . natural gas pipeline or ball valve were defective and/or that any alleged failure with the pipeline or valve caused the accident." [Doc. 63-3, p. 3] Midstream asserts it "did not inspect, maintain or service the pipeline and valve," and offers the affidavit of Marion Cooper East, an Operations Advisor for Chevron Pipe Line, who attests Midstream "did not employ any of the workers who maintained, inspected or serviced the pipelines and valves in the Henry Gas Gathering System." [Id. at 3; Doc. 63-4, p. 37] Midstream notes neither of plaintiffs' expert liability witnesses found any failures or defects with Midstream's pipeline or valve. [Id. at 5]

Midstream further notes neither of plaintiffs' liability experts found any fault on the part of Midstream, but rather, both concluded the accident was caused by the sole negligence of Chevron Pipe Line. [Id. at 4-6] More specifically, plaintiffs' Safety Specialist, Michael E. Sawyer, concludes in his report that Chevron Pipe Line "neglected to comply with industry recognized safety practices and its own safe practices for valve repair, inspection and isolation of pressurized equipment prior to maintenance," and that Chevron Pipe Line should have "shut down the pipeline prior to conducting repairs on the subject valve." [Doc. 63-4, p. 45] Plaintiffs' "Mechanical/Metallurgical Engineering" expert, Gordon A. Aaker, Jr., opines Chevron Pipe Line was negligent in failing to

enforce and follow its safety procedures and in failing to properly identify the valve at issue.[2] [Doc. 63-5, p. 7] In fact, Mr. Aaker specifically states in his conclusion, "**This incident was not caused by a valve failure. This incident was specifically the result of Chevrons [sic] negligence to follow their own procedures.**" [Id. (emphasis in original)]   Thus, Midstream has pointed to the absence of evidence supporting plaintiffs' claim, thereby shifting to plaintiffs "the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Anderson*, 477 U.S. at 249.

In their opposition memorandum, plaintiffs point to statements contained in the report of their Mechanical Engineering expert, Gordon Aaker, that "Chevron failed to provide any evidence that this valve had ever received any previous maintenance since installation in 1984"; had he been supervising the project he would have required a hazards analysis; and it was his opinion "that the valve was so horribly corroded, nobody should have even touched it for fear it could have disintegrated on them." [Doc. 67, pp. 6-7] However, all of the foregoing testimony is irrelevant to the issue at hand, as it has no relevance to Mr. Aaker's opinion regarding causation. Again, Mr. Aaker concluded the accident was caused by Chevron Pipe Line's failure to enforce and follow its own safety procedures and its failure to properly identify the valve at issue. [Doc. 63-5, p. 7] More importantly, Mr. Aaker specifically states in his conclusion, "**This incident was not caused by a valve failure. This incident was specifically the result of Chevrons [sic] negligence to follow their own procedures.**" [Id. (emphasis in original)] Plaintiffs additionally cite to testimony from

---

[2]According to Mr. Aaker, the DEMCO ball valve was misidentified as a WKM Ball Valve. Mr. Aaker states in his report that WKM valves manufactured in the 1980-1984 time frame have a blowout proof stem and thus, removal of the operator cap would not have breached the pressure barrier. He opines because Mr. Mays and the crew believed they were repairing a WKM valve, they "believe[d] they would not be breaching the pressure barrier by removing the plate." [Doc. 63-5, pp. 2, 3]

their Safety Specialist, Michael Sawyer. However, like Mr. Aaker, Mr. Sawyer's testimony solely addresses fault on the part of Chevron Pipe Line.[3] [Doc. 67, pp. 7-9; Doc. 63-4, p. 45]

Plaintiffs' remaining arguments similarly fail to show, by competent summary judgment proof, that there is an issue of material fact warranting trial. Plaintiffs note their complaint sets forth a claim for premises liability pursuant to La. Civ. Code art. 2322, which imposes liability for injuries caused by the ruin of a building. However, pursuant to that article, plaintiffs "must show that the defendant knew or should have known of the condition that caused the harm." *Ukudi v. McMoran Oil & Gas, L.L.C.*, 587 Fed.Appx. 119, 122 (5th Cir. 2014); *see also* La. Civ. Code art. 2322 ("However, [the owner of a building] is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage. . . ."). In this matter, plaintiffs have pointed to no evidence from which a jury could conclude Midstream knew or should have known of a defective condition on the Lighthouse Point platform, the natural gas pipeline, or the DEMCO ball valve.

Plaintiffs argue the affidavit of Mr. East[4] should be stricken, because prior to his affidavit, he "had never been disclosed as a person with knowledge of relevant facts and Plaintiff was never afforded the opportunity to depose Mr. East prior to the expiration of the discovery period in this case." [Doc. 67, p.3] However, regardless of the affidavit of Mr. East, Midstream has pointed to the

---

[3]Mr. Sawyer concludes in his report "that CPL [Chevron Pipe Line] neglected to comply with industry recognized safework practices and its own safework practices for valve repair, inspection and isolation of pressurized equipment prior to maintenance," and that Chevron Pipe Line should have "shutdown the pipeline prior to conducting repairs on the subject valve." [Doc. 63-4, p. 45]

[4]Again, Marion Cooper East is the Operations Advisor for Chevron Pipe Line, who attests Midstream "did not employ any of the workers who maintained, inspected or serviced the pipelines and valves in the Henry Gas Gathering System." [Doc. 63-4, p. 37]

absence of evidence of liability on its part. Thus, the burden is shifted to plaintiffs to demonstrate by competent summary judgment proof that there is an issue of material fact warranting trial. Plaintiffs have pointed to no evidence of any negligence on the part of Midstream which is *causative* of the injuries incurred by Mr. Mays.

Finally, plaintiffs contend "[s]ince the inception of this litigation," Midstream and Chevron Pipe Line "have held themselves out as 'Chevron' and did not make any distinction between these two entities until after Plaintiffs' [sic] filed their opposition to Defendant's Motion for Summary Judgment asserting immunity based on the statutory employer defense." [Doc. 67, p. 4] Plaintiffs continue, "If Defendants now, after the discovery period has ended, want to establish a distinction between these two entities, Plaintiffs seek to re-open the discovery period regarding this issue." [Id. at 4-5] However, as Midstream points out in its reply brief, "plaintiffs, in suing both [Chevron Pipe Line] and Midstream, knew that they were separate and distinct entities." [Doc. 70, pp. 1-2] Midstream further notes plaintiffs acknowledge in their briefing that Midstream owned the pipeline, while Chevron Pipe Line operated the pipeline. [Id. at 2; *see also* Doc. 67, p. 3] The Court finds this argument is insufficient to defeat summary judgment, as plaintiffs have failed to come forward with evidence showing there is a genuine dispute for trial.[5]

---

[5]To the extent plaintiffs wish to re-open discovery, they have failed to provide an adequate basis for same and have failed to properly make such a request. When opposing a motion for summary judgment, "[i]f a nonmovant shows by *affidavit* or *declaration* that, *for specified reasons,* it cannot present facts essential to justify its opposition, the court may . . . allow time . . . to take discovery. . . ." Fed. R. Civ. P. 56(d). In this matter, plaintiffs merely make a statement in their opposition memorandum that they wish to re-open discovery, based upon unsupported assertions that Chevron Pipe Line and Midstream "did not make any distinction between these two entities" until confronted with plaintiffs' argument on a separate motion. The record belies plaintiffs' argument.

## V.     Conclusion

For the reasons set forth above, the motion for summary judgment [Doc. 63] filed by defendant Chevron Midstream Pipelines, LLC is GRANTED.

As all claims in this matter have now been dismissed, the parties are ORDERED to submit a proposed final judgment, approved as to form, within fifteen days of issuance of this Ruling.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ____2____ day of March, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE