RECEIVED

JAN 1 0 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PEGGY MAYS, ET AL. | CIVIL ACTION NO. 14-3098 |
| VERSUS | JUDGE DOHERTY |
| CHEVRON PIPE LINE CO., ET AL. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Currently pending before the Court is plaintiffs' motion for reconsideration [Doc. 89] of this Court's prior Ruling on summary judgment [Doc. 84]. Pursuant to the motion, plaintiffs move this Court to reconsider that portion of its prior Ruling whereby the Court dismissed plaintiffs' claims against Chevron Pipe Line Company ("Chevron Pipe Line"). Having considered the applicable law, evidence and arguments for and against reconsideration, the Court finds merit in plaintiffs' motion. Accordingly, for the reasons that follow, the motion for reconsideration is GRANTED, and the underlying motion for summary judgment [Doc. 29] is DENIED to the extent it seeks dismissal of plaintiffs' claims against Chevron Pipe Line Company.

**I.     Factual and Procedural Background**

Peggy Mays (individually and as personal representative of the Estate of James Mays), Daphne Lanclos, Brent Mays and Jared Mays (collectively, "plaintiffs") brought this tort suit against Chevron Pipe Line Company and Chevron Midstream Pipelines, LLC ("Chevron Midstream") for damages arising out of a workplace accident that resulted in the death of James Mays. [Doc. 1-1] The following facts are not in dispute:

On January 30, 2014, Chevron Pipe Line and Furmanite America, Inc., Mays' employer, entered into a Master Services Contract, whereby Furmanite agreed to provide valve maintenance services for Chevron Pipe Line at its onshore and offshore facilities. [Doc. 29-6, p. 1; Doc. 39-3, p. 1] On September 9, 2014, Mr. Mays was sent by Furmanite to the Lighthouse Point platform to perform valve maintenance services. [Id.] The platform was owned by Chevron Midstream and operated by Chevron Pipe Line. [Doc. 63-7, p.1; Doc. 67, pp. 1-2; Doc. 70, p.2] The platform was located 2.9 miles off the coast of Louisiana, and thus, was in state territorial waters. [Doc. 29-6, p. 1; Doc. 39-3, p. 1] While Mr. Mays and others were attempting to manually close a valve, a gear operator broke. [Doc. 63-7, p. 1; Doc. 67-9, p. 1] Mr. Mays returned to the Lighthouse Point platform on September 13, 2014 to remove the broken gear operator. [Doc. 29-6, p. 2; Doc. 39-3, p. 1; Doc. 63-7, p. 2; Doc. 67-9, p.1] After removing the gear operator, the crew began removing the operator cap/bonnet cover plate from the valve. [Id.] While removing the last bolt, the pressure barrier was breached causing the operator cap/bonnet cover plate and valve stem to be expelled. [Doc. 63-7, p. 2; Doc. 67-9, p. 2] Mr. Mays was struck in the head by thee objets and died as a result. [Doc. 1-1, p. 2]

After suit was filed, Chevron Midstream and Chevron Pipe Line moved for summary judgment, arguing they were the "statutory employers" of Mr. Mays under the Louisiana Workers' Compensation Act ("LWCA"), and therefore they were entitled to tort immunity by virtue of the LWCA. The Court denied the motion with regard to Chevron Midstream, finding it had not submitted sufficient evidence showing it was Mr. Mays' statutory employer.[1] [Doc. 84, pp. 7-9] The

---

[1] All claims against Chevron Midstream were subsequently dismissed pursuant to a second motion for summary judgment filed by Chevron Midstream. [Doc. 87] In Ruling on the subsequent motion, the Court found there was no evidence in the record supporting a claim of negligence against

Court granted the motion with regard to the claims brought against Chevron Pipeline. [Doc. 84, p. 16] The decision turned upon whether Mr. Mays was covered by the LWCA (which would grant tort immunity to Chevron Pipe Line in its capacity as Mays' statutory employer), or by the Longshore Harbor and Workers' Compensation Act ("LHWCA"). In their opposition to defendants' motion, plaintiffs argued that although Mr. Mays was not a "person engaged in maritime employment" - a requirement for direct coverage under the LHWCA - Mays nevertheless was entitled to LHWCA benefits by virtue of section 1333(b) of the Outer Continental Shelf Lands Act ("OCSLA"), which extends LHWCA coverage to injuries "occurring as the result of operations conducted on the outer Continental Shelf" for the purpose of extracting and transporting natural resources from the shelf. 43 U.S.C. § 1333(b). Ultimately, the Court determined Mays' fatal injury was not covered under § 1333(b), finding plaintiffs had "not established a substantial nexus between Mr. Mays' death and Chevron Pipe Line's extractive operations on the outer Continental Shelf." [Doc. 84, p. 13; *see also* id. at 15] Accordingly, the Court held Mays was covered under the state workers' compensation act, and under that body of law, Chevron Pipe Line was deemed Mays' statutory employer and was thus immune from tort liability. [Id.]

Plaintiffs have now moved for reconsideration of the foregoing Ruling, arguing summary judgment is not warranted, as plaintiffs submitted sufficient evidence in support of their arugment that "there was a substantial nexus between defendant Chevron Pipe Line Company's OCS operations and decedent's injury and death." [Doc. 89-1, p. 1] For the reasons that follow, the Court agrees and finds a genuine issue of material fact exists with regard to this issue.

---

Chevron Midstream.

## II. Standards of Review

### A. Reconsideration

Where a motion for reconsideration of a prior judgment on the merits is filed within 28 days of rendition of the judgment, the applicable procedural rule is Fed. R. Civ. P. 59(e). *Dudenhefer v. Davol, Inc.*, 52 F.3d 1068, *2 (5th Cir. 1995).

> A Rule 59(e) motion calls into question the correctness of a judgment. This Court has held that **such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.** Rather, Rule 59(e) **serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.** Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)(internal alterations, quotation marks and citations omitted; emphasis added).

While a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under Rule 59(e), such discretion is not limitless. *Templet* at 479 (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990). The Fifth Circuit has identified two judicial imperatives relating to such a motion: "1) the need to bring litigation to an end; and 2) **the need to render just decisions on the basis of all the facts.**" *Id.* (citing *Lavespere* at 174)(emphasis added).

This Court is fully cognizant of the application of waiver where a party fails to meet its burden by failing to present sufficient evidence or argument available at the time of summary judgment, and the Court in no way intends to provide the proverbial second bite at/of the apple. *See e.g. Templet* at 479. However, neither can the Court in good conscience ignore a valid argument with supporting evidence, when, had the argument been set forth with a bit more clarity, the Court

would have more fully appreciated the argument being made. It is within the spirit of the latter the Court will revisit this matter.

### B. Summary Judgment

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit:

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

### III. Applicable Law

The Outer Continental Shelf Lands Act extends the federal workers' compensation scheme established in the Longshore and Harbor Workers' Compensation Act to employees who are injured as a result of operations conducted on the outer Continental Shelf ("OCS"). 43 U.S.C. § 1333(b). Specifically, section 1333 of the OCSLA provides in pertinent part as follows:

> With respect to disability or death of an employee resulting from any injury **occurring as the result of operations** conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or **transporting by pipeline** the natural resources . . . of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable under the provisions of the Longshore and Harbor Workers' Compensation Act [33 U.S.C.A. § 901 et seq.]. For the purposes of the extension of the provisions of the Longshore and Harbor Workers' Compensation Act under this section--
>
> > **(1)** the term "employee" does not include a master or member of a crew of any vessel. . .;
> >
> > **(2)** the term "employer" means an employer any of whose employees are employed in such operations. . . .

43 U.S.C. § 1333(b)(brackets in original; emphasis added).

"Section 1333(b) states only two requirements: The extractive operations must be 'conducted on the outer Continental Shelf,' and the employee's injury must occur 'as the result of those operations.'" *Pac. Operators Offshore, LLP v. Valladolid*, 132 S.Ct. 680, 687 (2012). In 2012, the Supreme Court resolved a circuit split regarding the scope of LHWCA coverage under § 1333(b) of the OCSLA, and held the language used in § 1333(b) - "occurring as the result of operations" - requires a claimant to establish a "substantial nexus" between the injury and extractive operations on the shelf. *Valladolid* at 685, 691.[2] To meet the substantial nexus test, the claimant must establish a "significant causal link" between the injury suffered and the on-OCS operations conducted for the purpose of extracting (or transporting by pipeline) natural resources from the OCS. *Id.* at 691; *see also Reagan Equip. v. Donovan*, 296 F.Supp. 535, 536 (E.D.La. 1968). Thus, although "employees injured while performing tasks on the OCS will regularly satisfy the test, whether an employee injured while performing an off-OCS task qualifies . . . is a question that will depend on the individual circumstances of each case." *Valladolid* at 691.

## IV. Analysis

The only issue before the Court at this time is whether defendant adequately carried its burden of pointing to the absence of evidence in the record showing a significant causal link

---

[2]Prior to the Supreme Court's decision *Valladolid*, the Third Circuit held § 1333(b) extended LHWCA coverage to all injuries that would not have occurred "but for" operations on the OCS, reasoning Congress intended LHWCA coverage to be expansive. *Valladolid* at 686. In contrast, the Fifth Circuit held § 1333(b) extended coverage only to employees whose injuries or death occurred on an OCS platform or the waters above the OCS, reasoning Congress intended to establish "a bright-line geographic boundary for § 1333(b) coverage." *Id.* The Supreme Court rejected both of these tests, finding neither test was compatible with the language of § 1333(b), and adopted the Ninth Circuit's "substantial nexus" test. *Id.* at 687, 690-91 (finding the Third Circuit's "but for" test overly broad, and finding no requirement in the language of § 1333(b) supporting the Fifth Circuit's "situs-of-injury" test). As perhaps foreshadowed in *Valladolid*, the substantial nexus test, when applied to persons conducting off-OCS employment tasks, will frequently involve determinations of fact.

between Mays' death and Chevron's operations on the OCS. In this Court's original Ruling on summary judgment, it found as follows:

> The accident in this matter occurred *on a platform in state waters* due to the failure to release pressure from an operator cap on a valve prior to removal of the operator cap. As in *Herb's Welding*, the fact that the platform in state waters might have been connected to a platform on the shelf is unrelated to the accident's causation. To adopt plaintiffs' argument in this case would essentially be to adopt the Third Circuit's "but for" test, which the Supreme Court has rejected as overly broad. The arguments made by each party **using the facts at hand** would seem to place this occurrence neither firmly within the "but for" analysis, nor the "substantial nexus" analysis. However, such a characterization would be overly simplistic. The Supreme Court instructs that the inquiry is causal in nature and is between "*the injury* that [Mr. Mays] suffered and his employer's [or here, statutory employer's] on-OCS operations." *Valladolid* at 691. As noted, Mr. Mays' *injury* occurred when attempting to remove an operator cap on a valve on a platform in state waters. **Plaintiffs' only allegation of any OCS connectivity is that the operator cap Mr. Mays was attempting to remove was on a valve which was "part of the Chevron pipeline" that transported natural gas from the Outer Continental Shelf in addition to transporting natural gas from state waters.** To accept plaintiff's argument would come perilously close to the "but for" analysis rejected by the Supreme Court, and allow a random mechanic who might be repairing a third party transport truck on land, used to transport product originating from an OCS platform, to claim longshoreman status - clearly not the intention of the Supreme Court. Accordingly, this Court finds plaintiffs have not established a significant causal link between "the injury," here Mr. Mays' death, and Chevron Pipe Line's extractive operations on the Outer Continental Shelf, and therefore finds Mr. Mays was not covered by the LHWCA at the time of his death.

[Doc. 84, pp. 14-15 (italics in original; bold added)]

Upon reconsideration, the Court finds plaintiffs have clarified certain facts, thereby persuading this Court defendant has failed to meet its burden of showing the required absence of material fact such that defendant is entitled to judgment as a matter of law. According to plaintiffs, pressurized natural gas *being transported by pipeline from the outer Continental Shelf* "was a substantial factor in, if not direct cause of, the fatal explosion." [Doc. 89-1, p. 4] In

support of their argument, plaintiffs submitted excerpts from the deposition of Reggie Motty, a pipeline operator for Chevron Pipe Line. [Doc. 39-4] In his deposition, Mr. Motty described the Lighthouse Point platform as a location where several of defendant's pipelines meet "and kind of go through that platform to come to Henry [Gas Gathering System]." [Id. at 4-5, 6] After the explosion, Mr. Motty called personnel on the Tiger Shoals platform and told them to shut in. [Id. at 11] Mr. Motty additionally called the Mountain Point platform and told them to shut in and close the ESD valve coming from South Marsh Island 239. [Id.] Michael E. Sawyer, plaintiffs' engineering expert, testified "Chevron's P&ID . . . is a diagram of piping interconnections that includes the valve that is the subject of this case."[3] [Doc. 39-7, p. 2] According to Mr. Sawyer, "The P&ID identifies one of the natural gas sources interconnected to the subject valve as 'Tiger Shoals A - 217A' . . . ." [Doc. 39-7, p. 2] *The Court notes the Tiger Shoals platform and South Marsh Island 239 platform are both located on the outer Continental Shelf.* [Doc. 39-5] According to Mr. Sawyer, "*The natural gas production from these platforms had to be shut in to stop the release of gas through the valve at the incident site.*" [Doc. 39-7, p. 2 (emphasis added)] Mr. Sawyer further concludes "*gas from the Outer Continental Shelf (OCS) platforms was being pressurized through the valve involved in the fatal injury of Mr. Mays.*"[4] [Id. (emphasis added)]

---

[3] The copy of the P&ID submitted by plaintiffs is unreadable, nevertheless, Chevron Pipe Line has not contested Mr. Sawyer's characterization of that which the P&ID purportedly depicts. [Doc. 39-6]

[4] In the original briefing, Chevron Pipe Line noted "plaintiffs neglected to disclose that Mr. Motty also testified that he called to shut in the Mountain Point platforms, which are in state waters." [Doc. 76, p. 12] However, the Court notes Mr. Motty's testimony was that he called the Mountain Point platform and told them to shut in *and to close the ESD valve coming from South Marsh Island 239*. While the Mountain Point platform is located in state waters, the 8-inch pipeline at the Mountain Point platform appears to be a part of the 8-inch pipeline originating at South Marsh Island 239; South Marsh Island 239 is located on the OCS. [Doc. 39-5]

Chevron contends plaintiffs have failed to show a genuine issue of material fact exists as to whether there was a significant causal link between Mays' accident and Chevron's OCS operations, arguing as follows: Mays' accident occurred on a platform in state waters; the majority of pipeline in the area where Mays was working (the Henry Gas Gathering System) are in state waters; the fact that Mr. Motty "closed other valves after the accident to stop the flow of gas in state and federal waters does not establish a link between the decedent's death (i.e. repairing a valve on the Lighthouse Point platform) and Chevron's OCS operations"; and "[t]he removal of the 'operator cap' from a valve on a platform in Louisiana's territorial waters had no 'direct relation' or 'significant causal link' to CPL's OCS operations." [Doc. 76, pp. 12-13; Doc. 93, pp. 8-9] Importantly, Chevron does not contest plaintiffs' position that natural gas from the outer Continental Shelf was being transported by pipeline to the platform and the valve upon which Mr. Mays was working at the time of his death.

Upon reconsideration, the Court finds plaintiffs have presented evidence in support of their argument that pressurized natural gas *originating from the OCS* was being transported by pipeline *through the valve on the Lighthouse platform which Mr. Mays was attempting to repair* at the time of his death. Plaintiffs have submitted evidence that at least one OCS platform transported natural gas by pipeline to and through the valve at issue (Tiger Shoals A - 217A), and two OCS platforms had to be shut in to stop the release of pressurized gas through the pipeline and valve involved in Mr. Mays' death. In light of this evidence, the Court finds Chevron Pipe Line has not carried its burden and shown it is entitled to judgment as a matter of law.

## V.    Conclusion

For the reasons set forth above, the Court finds there are triable issues of fact which preclude summary judgment. Accordingly, plaintiffs' motion for reconsideration [Doc. 89] is GRANTED, and the motion for summary judgment [Doc. 29] is DENIED to the extent it seeks dismissal of the claims brought by plaintiffs against Chevron Pipe Line Company.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this __10th__ day of January, 2017.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE