RECEIVED

MAY 1 6 2017 $\sigma\gamma\sigma$

TONY A. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

PEGGY MAYS, ET AL.                                      CIVIL ACTION NO. 14-3098

VERSUS                                                        JUDGE DOHERTY

CHEVRON PIPE LINE CO., ET AL.           MAGISTRATE JUDGE WHITEHURST

## MEMORANDUM RULING

Currently pending before the Court is defendant Chevron Pipe Line Company's ("CPL")

motion to certify the January 10, 2017 Ruling and Order of this Court[1] for interlocutory appeal

pursuant to 28 U.S.C. § 1292. [Doc. 101] For the following reasons, the motion is DENIED.

### I.      Factual and Procedural Background

Peggy Mays (individually and as personal representative of the Estate of James Mays),

Daphne Lanclos, Brent Mays and Jared Mays (collectively, "plaintiffs") brought this tort suit against

Chevron Pipe Line Company and Chevron Midstream Pipelines, LLC for damages arising out of a

workplace accident that resulted in the death of James Mays.[2] Prior to Mays' death, Chevron Pipe

Line and Furmanite America, Inc. (Mays' employer) entered into a Master Services Contract,

whereby Furmanite agreed to provide control valve maintenance services for Chevron Pipe Line at

its onshore and offshore facilities.[3] On September 9, 2014, Mr. Mays was sent by Furmanite to the

---

[1]Doc. Nos. 98, 99

[2]Chevron Midstream is no longer a party to this suit, as the Court granted summary judgment in
its favor. [Doc. Nos. 87, 88]

[3]Doc. 29-4, pp. 1-2

Lighthouse Point platform to perform valve maintenance services. The platform was owned by Chevron Midstream and operated by Chevron Pipe Line. The platform was located 2.9 miles off the coast of Louisiana, and thus, was in state territorial waters. While Mr. Mays and others were attempting to manually close a valve, a gear operator broke. Mr. Mays returned to the Lighthouse Point platform on September 13, 2014 to remove the broken gear operator. After removing the gear operator, the crew began removing the operator cap/bonnet cover plate from the valve. While removing the last bolt, the pressure barrier was breached, causing the operator cap/bonnet cover plate and valve stem to be expelled. Mr. Mays was struck in the head by these objects and died as a result.

After suit was filed, Chevron Pipe Line moved for summary judgment arguing because the accident occurred in state waters, the Louisiana Workers' Compensation Act ("LWCA") applied and under that act, Chevron Pipe Line is deemed Mays' "statutory employer" and is thus immune from suit in tort. In opposition to defendants' motion, plaintiffs argued they were receiving benefits under the Longshore and Harbor Workers Compensation Act ("LHWCA"), the LHWCA was the applicable workers' compensation regime, and therefore the Louisiana Workers' Compensation provision regarding "statutory employers" is inapplicable in this matter. According to plaintiffs, the LHWCA is the proper compensation regime because Mays' death "was the direct result of extraction operations conducted by Chevron on the outer continental shelf," and the Outer Continental Shelf Lands Act ("OCSLA") extends LHWCA coverage to the "death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf."[4]

As set forth in the Court's prior Rulings, section 1333(b) of the OCSLA provides in pertinent part:

---

[4]Doc. 39, p. 4

With respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources . . . of the outer Continental Shelf, compensation shall be payable under the provisions of the Longshore and Harbor Workers' Compensation Act [33 U.S.C.A. § 901 et seq.].

43 U.S.C.A. § 1333(b) (West)(alterations in original).

In 2012, the Supreme Court resolved a circuit split regarding the scope of LHWCA coverage under section 1333(b) of the OCSLA, and held the language used in § 1333(b) - "occurring as the result of operations" - requires a claimant to establish a "substantial nexus" between the injury and extractive operations on the shelf. *Pac. Operators Offshore, LLP v. Valladolid*, 132 S.Ct. 680, 685, 691 (2012) (abrogating *Mills v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 877 F.2d 356 (5th Cir. 1989)). To meet the substantial nexus test, the claimant must establish a "significant causal link" between the injury suffered and the on-OCS operations conducted for the purpose of extracting natural resources from the OCS. *Id.* at 691. As noted by the Supreme Court, although "employees injured while performing tasks on the OCS will regularly satisfy the test, whether an employee injured while performing an off-OCS task qualifies . . . *is a question that will depend on the individual circumstances of each case.*" *Id.* (emphasis added)

In its original ruling, this Court found plaintiffs had "not established a substantial nexus between Mr. Mays' death and Chevron Pipe Lines' extractive operations on the outer Continental Shelf," and therefore, plaintiffs had failed to demonstrate a material fact existed with regard to whether the LHWCA applied through the OCSLA extension.[5] The Court reasoned, in part, merely showing that the platform upon which plaintiff was working at the time of his death was connected by a pipeline system to platforms on the OCS, in and of itself, was insufficient to establish a

---

[5]Doc. 84, p. 13

"substantial connection" or "significant causal link" between Mays' death and Chevron Pipe Line's extractive operations on the OCS.[6] Accordingly, the Court held Mays was covered under the state workers' compensation act, and under that body of law, Chevron Pipe Line was deemed Mays' statutory employer and was thus immune from tort liability.

Thereafter, the Court granted plaintiffs' motion for reconsideration upon additional argument supplied, and reversed its prior ruling based upon the argument presented, finding summary judgment in defendant's favor to be unwarranted.[7] Upon reconsideration, the Court determined plaintiffs had neglected to properly argue certain evidence relied upon by plaintiffs in support of their argument *that a genuine issue of material fact existed* with regard to whether Mays' death occurred as the result of operations conducted on the OCS. The Court found plaintiffs had presented evidence that at the time of the explosion, pressurized natural gas was being transported by pipeline from the OCS through the actual valve involved in plaintiff's injury, and natural gas production from platforms located on the OCS had to be shut in to stop the release of gas through the subject valve, thus directly impacting the extraction of natural gas from the OCS.[8] The Court found the foregoing evidence was sufficient *to raise an issue of material fact* for trial - namely, whether there exists a "substantial nexus" between Mr. Mays' death and extractive operations on the shelf. Chevron Pipe Line now moves the Court to certify its Ruling and Order on reconsideration for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

---

[6]*Id.* at 14-15

[7]Doc. Nos. 98, 99

[8]Doc. 98, p. 9

## II. Standard of Review

28 U.S.C. 1292(b) provides for interlocutory appeal when the district judge certifies that an

order, which is not otherwise appealable, satisfies three criteria: (1) the order involves a controlling

question of law; (2) there is substantial ground for difference of opinion as to that question; and (3)

an immediate appeal from the order may materially advance the ultimate termination of the litigation.

28 U.S.C. § 1292(b); *see also Clark-Dietz and Associates-Engineers, Inc. v. Basic Construction Co.*,

702 F.2d 67, 69 (5ᵗʰ Cir.1983). The decision to certify an order for interlocutory appeal under Section

1292(b) is a matter of discretion for the district court. *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35,

47 (1995). "The basic rule of appellate jurisdiction restricts review to final judgments, avoiding the

delay and extra effort of piecemeal appeals. Section 1292(b) appeals are exceptional." *Clark-Dietz*

at 69. Generally, questions of fact are inappropriate for interlocutory review. *Id.* As stated by

Professors Wright and Miller:

> The statutory language naturally suggests an opposition between a question
> of law and a question of fact. . . . There is indeed no reason to suppose that
> interlocutory appeals are to be certified for the purpose of inflicting upon courts of
> appeals an unaccustomed and ill-suited role as factfinders. Even when the question
> is the supposed question of law whether there are any genuine issues of material fact
> that preclude summary judgment, ordinarily it seems better to keep courts of appeals
> aloof from interlocutory embroilment with the factual content of the record.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3930 (3d

ed.).

## III. Analysis

In support of its position that the Court's Ruling involves a controlling question *of law*,

defendant makes two arguments: (1) "legally, there was no substantial nexus between Mays'

injury/death and CPL extractive operations"[9]; and (2) "the Court should have focused on Furmanite's extractive operations."[10]

First, this Court notes that like the mixed question of law and fact inherent in determining whether a sufficient nexus exists to find one a Jones Act seaman, the substantial nexus standard the Supreme Court has instituted for the OCS is, also, a mixed question of law and fact. *Valladolid* at 691 ("employees injured while performing tasks on the OCS will regularly satisfy the test, whether an employee injured while performing an off-OCS task qualifies . . . is a question that will depend on the individual circumstances of each case"); *see also Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir. 1983) (courts must "weigh[] the total circumstances of an individual's employment to determine whether they had sufficient nexus with the navigation of vessels and the perils attendant thereon to implicate the concerns of the Jones Act"). And much like with a Jones Act determination, such a determination is more often than not reserved for the trier of fact. Defendant does not explain how the Court's determination that a genuine issue of material fact exists as to whether there was a "substantial nexus between Mays' injury/death and CPL extractive operations" involves a controlling issue of *law, rather merely declares it to be*. The Court presumes defendant is arguing that *under these particular facts*, there can be no "substantial nexus" *as a matter of law*, but defendant has not provided any support for such a position in its memorandum.[11] Rather, defendant's entire argument

---

[9]Doc. 101-3, p. 8 (emphasis omitted)

[10]*Id.* at 9 (emphasis omitted)

[11]To the extent the Court is correct in assuming defendant is arguing there is no "substantial nexus" *as a matter of law* under the facts of this particular matter, the Court addressed that argument in its Ruling on reconsideration. [Doc. 98, p. 10]

in support of its contention that "legally, there was no substantial nexus between Mays' injury/death

and CPL extractive operations" reads as follows:

> Mays' accident occurred while he was removing a broken gear operator from a valve on a platform in Louisiana's territorial waters. The dispositive issue in this case is which workers' compensation scheme applies to him. If Mays is covered by the LWCA, CPL is entitled to tort immunity as the statutory employer of the decedent. Conversely, if he is covered by the LHWCA, the statutory employer defense is inapplicable to CPL. And the determination of whether the LWCA or LWHCA applies to Mays requires the application of the "substantial nexus" test set forth in *Valladolid*. *While an analysis of the test is partly factual*, how that test is applied to the material facts is very much a legal issue. In fact, this Court acknowledged the legal nature of CPL's argument on this issue in its Memorandum Ruling. The resolution of this *legal issue* will materially affect the outcome of the litigation.

> There has been very little case law interpreting the Supreme Court's "substantial nexus" test. Furthermore, the difficulty in applying this test was recognized by Judge Scalia in his concurring opinion in *Valladolid*, when he wrote:

>> "The Court has given us a new test whose contours are entirely undescribed, and which has nothing to be said for it except that it [will] add complexity to the law and litigation to the courts."[12]

A review by the Fifth Circuit of this novel legal issue will either resolve the case or add clarity to any remaining issues. CPL therefore urges this court to certify these

---

[12]In his concurring opinion, Justice Scalia advocated for the adoption of a "proximate cause" standard of causation, rather than the "substantial nexus" standard adopted by the majority, *arguing proximate cause, unlike substantial nexus, is a legal concept with which courts are familiar. Valladolid* at 223 (emphasis added); *but see* Thomas C. Galligan, Jr., *OCLSA, the LHWCA, Pacific Operators Offshore, LLP v. Valladolid, and the New Substantial-Nexus Requirement*, 37 Tul. Mar. L.J. 45, 56 (2012)("[a]lthough the development of a meaningful definition of 'substantial nexus' will require time and effort, it is clearly preferable to requiring a worker to prove that extraction operations on the OCS proximately caused his injuries," given the "liberal nature of workers' compensation statutes to provide benefits to workers who suffer employment injuries, diseases, and/or death."); Ryan T. Martin, *Unraveling the Tangled Web: A Discussion of the Development and Effects of the Supreme Court's Substantial-Nexus Test As It Applies to the Outer Continental Shelf Lands Act*, 37 Tul. Mar. L.J. 231, 251 (2012)(courts should "construe the substantial nexus test as a new intermediate level of causation somewhere between but-for causation and proximate cause").

controlling questions of law for an interlocutory appeal.[13]

The Ruling and Order issued by this Court for which defendant seeks an interlocutory appeal does not declare a legal determination as a matter of law, rather, *this Court found defendant had failed to meet "its burden of pointing to the absence of evidence in the record showing a significant causal link [i.e., a 'substantial nexus'] between Mays' death and Chevron's operations on the OCS."*[14] [Doc. 98, pp. 7-8, 10 (emphasis added)] The Court's determination did not declare a controlling issue *of law* as required for certification under § 1292(b). *See e.g. Malbrough v. Crown Equipment Corp.*, 392 F.3d 135, 136 (5th Cir. 2004)("The underlying issue of whether Malbrough has presented sufficient evidence to show a 'genuine issue . . . [of] material fact', and thus avoid summary judgment under Fed.R.Civ.P. 56(c), is not a question of law within the meaning of 1292(b).")

To the extent defendant contends the controlling question *of law* is whether the state or federal workers' compensation act applies to Mays, that is not a question for which there is "substantial ground for difference of opinion." § 1292(b). Rather, *once the trier of fact* determines

---

[13]*Id.* at 8 (footnotes omitted; emphasis added)

[14]The reasoning for the Court's finding was, in part:

> [T]he Court finds plaintiffs have presented evidence in support of their argument that pressurized natural gas *originating from the OCS* was being transported by pipeline *through the valve on the Lighthouse platform which Mr. Mays was attempting to repair* at the time of his death. Plaintiffs have submitted evidence that at least one OCS platform transported natural gas by pipeline to and through the valve at issue (Tiger Shoals A - 217A), and two OCS platforms had to be shut in to stop the release of pressurized gas through the pipeline and valve involved in Mr. Mays' death.

[Doc. 98, p. 10(emphasis in original)]

whether or not Mays' death occurred as the result of operations on the OCS, the legal question will

be answered. If there is no substantial nexus to OCS operations, the LWCA will apply and defendant

will be immune from suit; if there is a substantial nexus, the LHWCA will apply and defendant will

not be immune from suit.

With regard to defendant's second argument, defendant asserts, "*Valladolid* requires a court

to analyze the nexus between the worker's injury and his 'employer's extractive operations on the

OCS.'"[15] According to defendant, "the focus should have been on Mays' direct, payroll employer's

(Furmanite's) OCS operations," which, according to defendant, "the Court ignored."[16] Defendant

then contends the Court "accepted CPL as Mays' statutory employer *before* it even determined

whether the LWCA applied to Mays," and CPL only qualifies as a "statutory employer" if the

LWCA applies.[17]

Defendant is incorrect - the Court did not determine defendant to be Mays' statutory

employer. Indeed, whether defendant is deemed Mays' statutory employer cannot be resolved until

a determination is made as to whether the federal or state workers' compensation scheme applies to

this matter. If the trier of fact determines Mays' death occurred "as the result of operations conducted

on the outer Continental Shelf," then the federal workers' compensation regime is the applicable

body of law, and defendant cannot, as a matter of law, be deemed Mays' statutory employer, as the

Louisiana "'statutory employer' definition of coverage is inconsistent with and contrary to the

---

[15]Doc. 101-3, p. 9 (emphasis in original)

[16]*Id.*

[17]*Id.* (emphasis in original)

LHWCA." *Gates v. Shell Oil*, 812 F.2d 1509, 1514 (5th Cir. 1987); *see also Grantham v. Avondale Industries, Inc.*, 964 F.2d 471 (5th Cir. 1992)(In diversity cases, when the claimant has elected to receive benefits under the LHWCA, the Louisiana rule of statutory immunity is preempted by the LHWCA). If however the jury finds Mays' death was not caused by operations on the OCS, the state workers' compensation regime will apply and defendant can be deemed Mays' statutory employer and thus, immune from suit in tort.

Defendant appears to base its argument that the Court found defendant to be Mays' statutory employer on the following language from the Court's original Ruling:

> Chevron Pipe Line asserts without any supporting authority that to meet the substantial nexus test, one must look solely to the direct employer. Presumably, Chevron Pipe Line is inferentially relying upon the statement in *Valladolid* that "OCSLA extends coverage to an employee who can establish a substantial nexus between his injury and his employer's extractive operations on the Outer Continental Shelf." However, there were no statutory employers involved in *Valladolid*. Thus, Chevron Pipe Line's framing of the issue is likely fatally narrow as it, without jurisprudential support, excludes consideration of a statutory employer's OCS extractive operations, when the issue at hand is that very statutory employer's possible liability.
>
> ***Nevertheless, the Court need not make that legal determination. . . .***[18]

While the Court recognizes the impreciseness of the quoted language, it did not determine Chevron to be Mays' statutory employer. Rather, the dicta relied upon by defendant merely pointed out the *Valladolid* case involved only the plaintiff and his direct employer, and thus, *Valladolid* does not necessarily stand for the proposition for which it was relied upon by defendant. Because there were no third parties involved in *Valladolid*, the decision did not address whether or not one must

---

[18]Doc. 101-3, pp. 5, 9 (quoting Doc. 84, pp. 12-13 (internal citations omitted; emphasis added)

look *solely* to the direct employer when determining whether a claimant has established a substantial

nexus between an injury and extractive operations on the outer Continental Shelf. Rather than using

the term "statutory employer," the Court would have been better served had it stated, "However,

there were no third party contractors, independent contractors, purported borrowing employers,

purported statutory employers, or other similar entities involved in *Valladolid.*"

As to the substance of defendant's argument, the Court notes section 1333(b) provides "the

term 'employer' means an employer any of whose employees are employed in such operations" - *i.e.,*

"operations conducted on the outer Continental Shelf for the purpose of . . . transporting by pipeline

the natural resources . . . of the outer Continental Shelf." 43 U.S.C. § 1333(b). The plain language

of the statute does not restrict its application solely to employees whose *direct or payroll employer*

is the entity conducting the extractive operations on the Shelf, and the language is broad enough to

support an argument to encompass employees of third party contractors *should the facts support*

*same.* Furthermore, the Fifth Circuit has previously held the language of 1333(b) does not require

the direct employer to, itself, be engaged in extractive operations on the Shelf. For example, in

*Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 340 (5th Cir. 1982), the widow and children of

a helicopter pilot who died while transporting passengers to work on a platform on the OCS sought

damages against the decedent's employer in admiralty. In determining whether Barger's direct

employer was an "'employer' within the intendment of 43 U.S.C. § 1333(b)(2)," the Court held as

follows:

> Barger's employer, Petroleum Helicopters, was not itself engaged in mineral
> operations. However, helicopter transportation of men and equipment from the
> mainland to the offshore rigs and back plays an important role in "developing" the
> Shelf. This transportation is an "operation conducted . . . for the purpose of" natural

resource development. Helicopter pilots involved in these operations perform the same function with respect to resource development whether employed directly by a producer or by a separate contractor, and should not be treated differently on the basis of who their immediate employer is.[19]

*Barger* at 340; *see also Reagan Equipment Co. v. Donovan*, 296 F.Supp. 535, 536 (E.D.La. 1968)(Plaintiff's contention that the claimant's direct employer must be "engaged in the business of exploring and recovering oil from the seabed" is "refuted by the language of the Act itself"; "the Act does not require that the employee himself be engaged in exploring for and recovering natural resources" nor does the Act "require that the employer be engaged in such activities.")

The same reasoning, it would seem, should apply to this matter. In this factual scenario the valve maintenance services involved arguably "play[] an important role in 'developing' the Shelf," and such services can be "operations conducted . . . for the purpose of" natural resource development. *Id.* Likewise, valve maintenance technicians arguably "perform the same function with respect to resource development whether employed directly by a producer or by a separate contractor, and should not be treated differently on the basis of who their immediate employer is." *Id.* While a jury may ultimately determine Mays' injury did not occur as the result of operations on the OCS, the Court is unpersuaded at this juncture that such determination must be made by *exclusively* analyzing Furmanite's activities on the Shelf.

Boiled down to the essentials, defendant disagrees with this Court's determination that summary dismissal of plaintiff's claim is unwarranted, because there exists in this matter an issue

---

[19]The Court additionally found Barger's death was the "result of operations conducted on the outer Continental Shelf," because "[h]is work furthered mineral exploration and development activities and was in the regular course of such activities." *Barger* at 340.

of material fact warranting trial with regard to whether Mays' death occurred as the result of operations conducted on the outer Continental Shelf. Such a ruling does not involve a controlling question *of law*, but rather, involves a factual inquiry, perhaps foreshadowing the need for careful consideration of the appropriate jury instructions for a case such as this. *Malbrough* at 136; *Clark-Dietz* at 69. Accordingly, for the reasons noted above the Court declines to certify this matter for interlocutory appeal.

This Court is not unsympathetic to defendant's plight of having to endure the slow, often expensive, and always uncertain evolution of the factual application of a new legal standard and perhaps Justice Scalia was prescient in his concurrence. However, much like with the often tortured historical evolution of the mixed question of law and fact inherent in a Jones Act determination, it would seem the Supreme Court has placed litigants and the Courts on that same circuitous path.

## IV.    Conclusion

For the reasons set forth above, Chevron Pipe Line Company's motion to certify the January 10, 2017 Ruling and Order of this Court for interlocutory appeal [Doc. 101] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this __*16*__ day of May, 2017.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE