UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

PEGGY MAYS, ET AL.                                CIVIL ACTION

VERSUS

CHEVRON PIPE LINE CO., ET AL.                     NO.: 14-03098-BAJ-CBW

RULING AND ORDER

Before the Court are four motions filed by Defendant Chevron Pipe Line Company: the **Motion to Bifurcate Trial (Doc. 146)**; the **Motion for Oral Argument (Doc. 147)**; the **Motion for Leave to File Supplemental Memorandum in Support of Motion in Limine (Doc. 151)**; and the **Motion to Modify Scheduling Order or Reconsider (Doc. 154)**. For the following reasons, the **Motions (Docs. 146, 147, 151, 154)** are **DENIED**.

I. BACKGROUND

This wrongful death action arises from a pipeline explosion on a drilling platform in Louisiana territorial waters. (Doc. 98, p. 2). The explosion killed James Mays. (*Id.*). Members of his family sued the operator of the pipeline, Defendant Chevron Pipe Line Company, for negligence. (*Id.*). Primarily at issue is whether Plaintiffs can show a "substantial nexus" between Mays's death and Defendant's operations on the outer Continental Shelf. If Plaintiffs cannot, then Mays's death is covered by the Louisiana Workers' Compensation Law ("LWCL"), La. Rev. Stat. § 1020.1 *et seq.*, and Defendant enjoys immunity as Mays's statutory employer. *See* La.

1

REV. STAT. § 23:1061. If Plaintiffs can, then Mays's death is covered by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, which poses no impediment to Plaintiffs' suit.

Mays worked for Furmanite as a valve technician. (*Id.*). Furmanite contracted with Defendant to provide valve maintenance services at Defendant's offshore facilities. (*Id.*). Under that contract, Furmanite sent Mays to the Lighthouse Point platform to perform valve maintenance services on Defendant's pipeline. (*Id.*). The Lighthouse Point platform is located 2.9 miles offshore in Louisiana territorial waters. (Doc. 98, p. 2).

On September 9, 2014, Mays visited the Lighthouse Point platform to try to close a pipeline valve. (*Id.*). But a gear operator broke, requiring Mays and others to return to the platform to retrieve the gear operator. (*Id.*).

On September 13, 2014, Mays and others returned to the Lighthouse Point platform and removed the gear operator. (*Id.*). After the crew removed the gear operator, they began removing the operator cap from the pressurized valve. (*Id.*). When the crew removed the last bolt, the operator cap dislodged and struck and killed Mays. (*Id.*).

On October 23, 2014, Plaintiffs invoked the Court's diversity jurisdiction and sued Chevron Pipe Line Company. (Doc. 1). Plaintiffs allege that the following acts of negligence caused Mays's death:

(a) Maintaining and creating an unsafe work environment;
(b) Failing to properly supervise and/or instruct in the safe method to carry out the work;
(c) Failing to enforce and promulgate proper safety procedures;

(d) Failing to provide a safe place to work;
(e) Failing to exercise reasonable care in the maintenance of a safe work environment;
(f) Failing to properly maintain and inspect the platform and valve;
(g) Failing to use proper technique, equipment, and material;
(h) Failing to depressurize the line and/or valve before beginning the work;
(i) Failing to notify James L. Mays and his employer of the proper valve on the platform prior to the work being performed; and
(j) Other acts of negligence, fault, strict liability that will be shown at the trial of this matter.

(Doc. 1, ¶ 12).

On September 17, 2015, Defendant moved for summary judgment. (Doc. 29). Defendant argued that it was immune from tort liability as Mays's statutory employer under the LWCL. (Doc. 29-3, p. 1). Plaintiffs opposed the Motion, contending that Defendant was not entitled to the statutory-employer defense because the LHWCA, as extended by the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333, applied to Mays. (Doc. 39, p. 1). The parties agreed that the statutory-employer issue turned on an interpretation of § 1333(b) of the OCSLA and *Pac. Operators Offshore, LLP v. Valladolid*, 565 U.S. 207 (2012). (Docs. 29, 39).

Section 1333(b) extends the LHWCA to injuries "occurring as the result of operations conducted on the outer Continental Shelf" for the purpose of extracting natural resources from the shelf. 43 U.S.C. § 1333(b). The United States Supreme Court, in *Valladolid*, interpreted § 1333(b) to require an employee seeking LHWCA coverage to show a "substantial nexus" between his injury and his employer's operations on the outer Continental Shelf. *Valladolid*, 565 U.S. at 222. And the Court explained that the substantial-nexus question "will depend on the individual

circumstances of each case." *Id.* The parties recognized § 1333(b) and *Valladolid* as controlling, and they concentrated the bulk of their summary judgment briefing on one question: whether Plaintiffs could show a "substantial nexus" between Mays's death and Defendant's extractive operations on the outer Continental Shelf. (Docs. 29, 39).

On February 23, 2016, the Court granted summary judgment in Defendant's favor. (Doc. 84). The Court's Memorandum Ruling rested on two findings. (Doc. 84, p. 15). First: the Court found that Mays was not covered by the LHWCA, as extended by the OCSLA, because Plaintiffs failed to show a "substantial nexus" between Mays's death and Defendant's extractive operations on the outer Continental Shelf. (*Id.*). Second: the Court found that the LWCL applied, and Defendant enjoyed immunity as Mays's statutory employer under LA. REV. STAT. § 23:1061. (*Id.*).

On March 2, 2016, Plaintiffs moved the Court to reconsider its summary judgment ruling. (Doc. 89). Plaintiffs argued that genuine issues of material fact as to the "substantial nexus" between Defendant's extractive operations on the outer Continental Shelf and Mays's death precluded summary judgment. (*Id.*). Plaintiffs clarified the basis for their substantial-nexus argument, insisting that their summary judgment evidence was not "limited to the fact that Mr. Mays was working on a valve that was part of a pipeline transporting natural gas from at least two OCS extraction wells." (*Id.* at p. 2). Rather, Plaintiffs argued that the Court should find a "substantial nexus" on the ground that the valve that exploded was transporting natural gas from extractive operations on the outer Continental Shelf. (*Id.*) In support, Plaintiffs

4

pointed to the affidavit of their engineering expert, Michael Sawyer. (*Id.*) In his affidavit, Sawyer attests that "gas from the outer Continental Shelf platforms was being pressured through the valve involved" in Mays's injury. (*Id.* at p. 3).

On January 10, 2017, the Court issued a Memorandum Ruling (Doc. 98) granting Plaintiffs' Motion to Reconsider (Doc. 89) and denying Defendant's Motion for Summary Judgment. (Doc. 29). The Court's Memorandum Ruling concluded that Defendant failed to carry its summary judgment burden of showing the absence of a genuine issue of material fact as to the "substantial nexus" between Mays's death and Defendant's extractive operations on the outer Continental Shelf. (Doc. 98, p. 10). The Memorandum Ruling reasoned that Plaintiffs created a genuine factual dispute on the substantial-nexus issue by "present[ing] evidence in support of their argument that pressurized natural gas originating from the outer Continental Shelf was being transported by pipeline through the valve on the Lighthouse Point platform Mays was attempting to repair at the time of his death." (Doc. 98, p. 10).

On January 24, 2017, Defendant moved the Court to certify its Memorandum Ruling (Doc. 98) for interlocutory appeal. (Doc. 101). Defendant also asked the Court to stay the case pending appeal. (*Id.*). The Court denied Defendant's requests in a May 16, 2017 Memorandum Ruling. (Doc. 113). In that Memorandum Ruling, the Court concluded that the substantial-nexus determination is a mixed question of law and fact that is inappropriate for interlocutory appellate review. (*Id.* at p. 6). The Court likened the substantial-nexus determination to the determination of seaman

status under the Jones Act, and emphasized that a jury must decide the issue. (Doc. 113, p. 6).

On May 19, 2017, the Court set a jury trial for February 5, 2018. (Doc. 115). That setting was upset when, on October 2, 2017, the case was reassigned to an "unassigned" United States District Judge. (Doc. 118). Shortly thereafter, the Magistrate Judge entered a Scheduling Order setting a jury trial for October 15, 2018. (Doc. 128). This case was not reassigned to an identified United States District Judge until July 23, 2018. (Doc. 148).

When this case was reassigned, five substantive motions were pending: Defendant's Motion to Exclude the Expert Testimony of Michael Sawyer (Doc. 74), filed more than two years ago; Defendant's Motion in Limine to Exclude Investigation Report (Doc. 82), also more than two years old; Defendant's Motion in Limine Regarding the Statutory Employer Defense (Doc. 116), filed more than a year ago; Defendant's Motion for Summary Judgment (Doc. 140), filed on May 30, 2018; and Defendant's Motion to Bifurcate Trial (Doc. 146), filed on July 3, 2018.

On August 13, 2018, the Court denied Defendant's Motion for Summary Judgment (Doc. 140) as untimely. (Doc. 152). The other motions are pending, and the Court addresses each in turn.

## III. DISCUSSION

### A. Motion to Bifurcate

Defendant asks the Court to bifurcate trial of the statutory-employer issue from trial of liability and damages. (Doc. 146). Defendant argues that trying the statutory-employer issue separately furthers judicial economy because a favorable finding on the issue would "eliminate the necessity of 5-8 days of trial to resolve the issue of liability and damages." (Doc. 146-3, p. 2). Plaintiffs oppose. (Doc. 150). They contend that trying the statutory-employer issue separately would add to their litigation expenses and further delay trial of this nearly four-year-old case. (Doc. 150, p. 7).

The Court may order a separate trial of separate issues to avoid prejudice or to expedite and economize. FED. R. CIV. P. 42(b). Whether to try distinct issues separately is a "case-specific procedural matter within the sole discretion of the district court." *Nester v. Textron, Inc.*, 888 F.3d 151, 162 (5th Cir. 2018).

Defendant's primary argument is one of judicial economy. (Doc. 146-3, p. 2). And that argument hinges entirely on the assumption that Defendant will win on the statutory-employer issue. (Doc. 146-3, p. 2). Because if Defendant does not win on that issue, then the bifurcated adjudication of this action would prove *less* economical and *more* prejudicial than resolving all issues in one trial. (*Id.*). And a single trial is not as inefficient as Defendant suggests: Plaintiffs state that they intend to offer the expert testimony of Michael Sawyer on both the statutory-employer and liability issues. (Doc. 150, p. 5). Beyond that, the Court is not persuaded that the evidence the

parties will offer on the statutory-employer question is sufficiently different from the evidence they will offer on liability and damages to justify separate trials. The statutory-employer issue is a straightforward one for the jury; trying it together with liability and damages will only modestly increase the time required for trial.

Defendant has not shown that trying the statutory-employer issue separately from the issues of liability and damages will economize—rather than further delay—resolution of this nearly four-year-old case. Nor has Defendant articulated how it would be prejudiced by a single trial. The Court therefore DENIES Defendant's Motion to Bifurcate. (Doc. 146).

### B.  Motion to Reconsider

Defendant moves the Court to reconsider the order denying Defendant's summary judgment motion as untimely. (Doc. 154). Defendant argues that the Court should permit Defendant to file another summary judgment motion because the Court "correctly decided" the statutory-employer issue in the original summary judgment ruling it issued more than two years ago. (*Id.* at p. 6). Defendant also points to two "recently decided" opinions that Defendant says support its position. (*Id.*).

The Court may revise an interlocutory order at any time for any reason before it enters final judgment. *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013). An order denying a motion for summary judgment does not adjudicate all claims or decide the rights and liabilities of all parties and is therefore interlocutory. FED R. CIV. P. 54(b). Because requests to reconsider interlocutory orders under Rule 54(b) require courts to consider many of the policies behind Rule 59(e) requests to alter or

amend an order or judgment, courts apply the Rule 59(e) standard to Rule 54(b) motions to reconsider. *See, e.g., Hillie v. Williams*, No. 4:17-CV-69-DMB-DAS, 2018 WL 280531, at *2 (N.D. Miss. Jan. 3, 2018); *eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) (collecting cases).

Applying that standard here, the Court declines to reconsider its denial of Defendant's re-urged Motion for Summary Judgment. (Doc. 140). Defendant has neither "clearly established" that the Court's ruling was "manifestly erroneous," nor offered newly-discovered evidence justifying reconsideration. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Defendant instead raises many of the same arguments the Court rejected when it granted Plaintiffs' request to reconsider the original summary judgment ruling. (Doc. 29).

The only argument raised and not previously rejected is Defendant's assertion that the "recently decided case" of *Baker v. Dir., Office of Workers' Comp. Programs*, 834 F.3d 542 (5th Cir. 2016) supports a finding that Defendant is Mays's statutory employer.[1] But *Baker* provides no new insight.

In *Baker*, a marine carpenter injured himself building a housing module for use on an offshore platform. 834 F.3d 548. The carpenter argued for LWHCA coverage on the ground that there was a "substantial nexus" between his on-land injury and his employer's extractive operations on the outer Continental Shelf because the

---

[1] Defendant also directs the Court to a Department of Labor Benefits Review Board decision, which it cites as *Flores v. MMR Constructors, Inc.*, 50-786 BRBS 786 (2015). (Doc. 154-1, p. 6). The citation is apparently incorrect, as a Westlaw Next search for an administrative decision under that name and case number yields 10,000 results. To the extent Defendant intends to cite BRB No. 16-0133, 2016 WL 6518831, at *1 (DOL Ben. Rev. Bd. Oct. 25, 2016), the decision is unhelpful.

housing module he was injured while building was going to be placed on an offshore platform on the outer Continental Shelf. *Id.* The United States Court of Appeals for the Fifth Circuit disagreed, concluding that the carpenter's injury failed to satisfy the "fact-specific" substantial-nexus test. *Id.*

Applied here, *Baker* is of little analytical help. *Id.* The link between the *Baker* carpenter's injury and the outer Continental Shelf was remarkably attenuated; only one fact provided any link at all: the home the carpenter was injured while building would eventually be placed on a platform on the outer Continental Shelf. *Id.* Here, by contrast, Plaintiffs offer summary judgment evidence showing that Mays's death may have been caused by the explosion of a pipeline transporting natural gas from the outer Continental Shelf to the Lighthouse Point platform. (Doc. 142).

Defendant offers no good reason why the Court should pause this nearly four-year-old case to revisit the substantial-nexus issue and reconsider summary judgment. The Court therefore DENIES Defendant's Motion to Reconsider (Doc. 154).

### C. Motion to Modify Scheduling Order

Defendant moves the Court to modify its Scheduling Order to allow time for Defendant to file yet another summary judgment motion. (Doc. 154). Defendant argues that the "unique procedural history of this case" precluded it from re-urging a summary judgment motion. (*Id.* at p. 1).

Another round of summary judgment litigation is unnecessary. The Court has already concluded that it will not reconsider the denial of Defendant's original Motion for Summary Judgment (Doc. 29), and that the "recently decided cases" Defendant

cited in its second Motion for Summary Judgment (Doc. 140) would not change the Court's substantial-nexus analysis under § 1333(b) of OCSLA and *Valladolid*. The dipositive motions deadline has expired and only three tasks remain: setting a motion in limine deadline, selecting a trial date, and trying this case. The Court therefore DENIES Defendant's Motion (Doc. 154) to modify the Scheduling Order.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the **Motion to Bifurcate Trial (Doc. 146)** is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Oral Argument (Doc. 147)** is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Modify Scheduling Order or Reconsider (Doc. 154)** is **DENIED**.

**IT IS FURTHER ORDERED** that all pending **Motions in Limine (Docs. 72, 74, 80, 82, 83, 116, 151)** are **DENIED WITHOUT PREJUDICE**. The Court will set a new deadline for filing motions in limine at the upcoming status conference.

**IT IS FURTHER ORDERED** that the status conference set for September 17, 2018 at 10:00 A.M. is **RESET** for **September 17, 2018 at 9:00 A.M.** in the Chambers of Judge Brian A. Jackson at the Russell B. Long Federal Building and United States Courthouse, 777 Florida Street, Baton Rouge, LA.

Baton Rouge, Louisiana, this 14th day of September, 2018.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**