UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

PEGGY MAYS ET AL.                                              CIVIL ACTION

VERSUS

CHEVRON PIPE LINE CO. ET AL.                                   NO.: 14-3098-BAJ-CBW

RULING AND ORDER

Before the Court are Chevron's **Motions for Judgment as a Matter of Law or New Trial (Docs. 233, 234)** concerning the application of *Pac. Operators Offshore, LLP v. Valladolid*, 565 U.S. 207 (2012), and the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333(b), to James Mays's death.

Section 1333(b) of the OCSLA extends the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901, to injuries "occurring as the result of operations conducted on the outer Continental Shelf[.]" The United States Supreme Court has interpreted § 1333(b) to require an employee seeking LHWCA coverage to show a "substantial nexus" between his injury and his employer's extractive operations on the outer Continental Shelf. *Valladolid*, 565 U.S. at 222.

Chevron argues that the Court misapplied the substantial-nexus test and that Plaintiffs failed to satisfy the test, as misapplied. These **Motions (Docs. 233, 234)** lack merit and are **DENIED**. Also before the Court is Chevron's **Motion for Remittitur (Doc. 235)** of Peggy Mays's damages award. For the reasons that follow, the **Motion (Doc. 235)** is **GRANTED IN PART** and **DENIED IN PART**.

1

I.  **BACKGROUND**

This dispute arises from a pipeline accident on a drilling platform in Louisiana territorial waters. (Doc. 1). James Mays was killed when components of a pressurized valve dislodged and struck him in the head. (*Id.*). Members of his family sued the pipeline operator, Chevron, for negligence. (*Id.*).[1]

Following a four-day trial, a jury returned a verdict for Plaintiffs and against Chevron. (Doc. 222). The jury found Chevron to be 70% at fault and awarded Plaintiffs $2,942,549.79. (*Id.*). The breakdown was as follows:

- Funeral Expenses — $12,549.79
- Loss of Support of Peggy Mays — $630,000
- Loss of Love, Affection, and Consortium of Peggy Mays — $2,000,000
- Loss of Love and Affection of Daphne Lanclos — $100,000
- Loss of Love and Affection of Brent Mays — $100,000
- Loss of Love and Affection of Jared Mays — $100,000

The Court entered judgment on February 8, 2019. (Doc. 225). Chevron timely renewed its motions for judgment as a matter of law (Docs. 233, 234) and separately moved for remittitur of Peggy Mays's damages awards. (Doc. 235).

---

[1] The Court examined the procedural history of this case in a prior Ruling (Doc. 156) and declines to re-examine it here.

## II. LEGAL STANDARDS

### A. Renewed Motion for Judgment as a Matter of Law

Entry of judgment as a matter of law is appropriate if Chevron shows that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on the issue. *See* FED. R. CIV. P. 50(a). In deciding if Chevron has made that showing, the Court draws reasonable inferences in the light most favorable to Plaintiffs. *See Alonso v. Westcost Corp.*, 920 F.3d 878, 882 (5th Cir. 2019). Because the Court's jurisdiction is based on diversity of citizenship, the Court looks to Louisiana law "for the kind of evidence that must be produced to support a verdict." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011).

### B. Motion for New Trial

The Court may grant a new trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action in federal court." FED. R. CIV. P. 59(a). Louisiana's new trial and remittitur standards apply. *See Alonso*, 920 F.3d at 889. Under Louisiana law, the Court *must* grant a new trial if the verdict or judgment "appears clearly contrary to the law and the evidence." LA. CODE CIV. P. art. 1972(1).[2] The Court *may* grant a new trial "in any case if there is good ground therefor." LA. CODE CIV. P. art. 1973.

---

[2] Chevron does not argue that it is entitled to a new trial on any of the other peremptory grounds listed in LA. CODE CIV. P. art. 1972.

3

III. DISCUSSION

A. Application of *Valladolid*'s Substantial-Nexus Test

Chevron moves for judgment as a matter of law or a new trial on the ground that the Court misapplied *Valladolid*'s substantial-nexus test. (Doc. 233). Chevron argues that *Valladolid* requires the Court to focus on the link between James Mays's death and the operations of his payroll employer—Furmanite America—in applying the substantial-nexus test. (*Id.*). And Chevron argues that the Court "refused to follow binding precedent" when it considered Chevron's operations in applying the test. (*Id.*).

Both United States District Judges assigned to the case rejected Chevron's argument. (Docs. 113, 156). For one, the argument ignores the text of OCSLA—in particular, the meaning of "employer": "[T]he term 'employer' means an employer any of whose employees are employed in such operations." 43 U.S.C. § 1333(b)(2). *Valladolid* does not address the term; the statute does. *See id.* No party litigated the "employer" issue in *Valladolid* because there was no reason to do so: no party disputed that Pacific Operators Offshore was Juan Valladolid's "employer"; no party disputed that Valladolid had to show a link between his injuries and Pacific Operators Offshore's extractive operations; solely at issue was the type of causal link he had to show. *Valladolid*, 565 U.S. at 210–222. Because the parties in *Valladolid* did not litigate—and the Supreme Court did not adjudicate—the meaning of "employer" under § 1333(b)(2), the decision does not control the issue. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* § 6 at 85 (2016) ("An opinion is

4

precedential only for the points of law argued by the litigants and adjudicated by the court—even if the court bases its holding in part on the truth or falsity of a background assumption."). Chevron has had two years to digest this distinction yet has failed to do so. (Doc. 113 at pp. 10–12, entered 5/16/17).

Compounding the error, Chevron dismisses *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir. 1982), as non-controlling. (Doc. 246). Why? Because it predates *Valladolid*. That is not analysis of precedent—it is sophistry.

*Barger* interprets "employer" under § 1333(b)(2). *See* 692 F.2d at 340.[3] At issue was OCSLA coverage for a claim against a helicopter pilot's employer for the pilot's death. *Id.* Judge Alvin Rubin, writing for a panel of the United States Court of Appeals for the Fifth Circuit, interpreted the term "employer" to cover the helicopter pilot's employer, even though the company was not engaged in extractive operations on the outer Continental Shelf. *Id.* Judge Rubin reasoned as follows:

> [H]elicopter transportation of men and equipment from the mainland to the offshore rigs and back plays an important role in developing the Shelf. This transportation is an operation . . . conducted for the purpose of natural resource development. Helicopter pilots involved in these operations perform the same function with respect to resource development whether employed directly by a producer or by a separate contractor, and should not be treated differently on the basis of who their immediate employer is.

*Id.*

---

[3] The Court brought *Barger* to Chevron's attention in May 2017; in the two years since, Chevron has not attempted to engage with the decision—or § 1333(b)(2)—on the merits. (Doc. 113 at pp. 10–12).

5

The task Mays performed when killed—servicing valves on pipelines transporting natural gas from the outer Continental Shelf—plays "an important role in operations conducted for the purpose of natural resource development." *Id.* As a valve technician so engaged, Mays should "not be treated differently on the basis of who [his] immediate employer is." *Id.* Accordingly, the reasoning and result of *Barger* fully support the Court's formulation of *Valladolid*'s substantial-nexus test.

Chevron fails to engage with § 1333(b)(2) or *Barger*. Its atextual reading of the OCSLA is no more persuasive now than it was two years ago.[4] Accordingly, Chevron fails to show (1) that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on the issue, FED. R. CIV. P. 50(a), (2) that the Court's formulation of the substantial-nexus test "appears clearly contrary to the law and the evidence," LA. CODE CIV. P. art. 1972(1), or (3) that there is "good ground" for a new trial, LA. CODE CIV. P. art. 1973. The Court therefore denies Chevron's Motion for Judgment as a Matter of Law or New Trial (Doc. 233) on the issue.

**B. Satisfaction of Substantial-Nexus Test**

Chevron moves for judgment as a matter of law or a new trial on the ground that Plaintiffs failed to establish a substantial nexus between James Mays's death and Chevron's extractive operations. (Doc. 234). The motion lacks merit.

---

[4] Chevron again invokes *Baker v. Dir., Office of Workers' Compensation Programs*, 834 F.3d 542 (5th Cir. 2016), as purported support for its interpretation of "employer." As the Court explained eight months ago, *see* 2018 WL 4390750, *Baker* is of little analytical help because (1) the decision, like *Valladolid*, does not interpret "employer" under § 1333(b)(2) and (2) the link between the claimant's injury and the employer's operations was remarkably attenuated.

Plaintiffs presented evidence from which a jury could—and, indeed, did—find that Mays's death was caused, in part, by the release of pressurized natural gas travelling to the Lighthouse Point platform by pipeline from the outer Continental Shelf. Accordingly, Chevron fails to show (1) that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on the issue, FED. R. CIV. P. 50(a), (2) that the jury's substantial-nexus determination "appears clearly contrary to the law and the evidence," LA. CODE CIV. P. art. 1972(1), or (3) that there is "good ground" for a new trial, LA. CODE CIV. P. art. 1973. The Court therefore denies Chevron's Motion for Judgment as a Matter of Law or New Trial (Doc. 234) on the issue.

### C. Damages Awarded to Peggy Mays

Chevron moves for remittitur of the general and loss-of-support damages the jury awarded Peggy Mays. (Doc. 235).

Chevron argues that the general-damages award is an abuse of discretion because it far exceeds reasonable awards in comparable cases. (*Id.*). Chevron argues that the loss-of-support award is an abuse of discretion because it exceeds the parties' stipulation on the subject. (*Id.*). Plaintiffs rejoin that the evidence presented at trial fully supports the awards. (Doc. 241).

Louisiana's remittitur standard applies. *See Alonso*, 920 F.3d at 889. Under that standard, the Court may grant a remittitur as an alternative to a new trial if (1) the verdict is "so excessive . . . that a new trial should be granted for that reason only,"

7

(2) "quantum is clearly and fairly separable from other issues in the case," and (3) Plaintiffs consent to remittitur. *See* LA. CODE CIV. P. art. 1814.

Juries have "much discretion" in awarding damages. *See* LA. CIV. CODE art. 2324.1 That discretion is "vast" when it comes to general-damages awards. *Purvis v. Grant Parish Sch. Bd.*, 2013-1424, p. 6 (La. 2/14/14); 144 So. 3d 922, 927. The Court's task is to review the jury's exercise of discretion—not to tailor an "appropriate award." *See Guillory v. Lee*, 2009-0075, p. 15 (La. 6/26/09); 16 So. 3d 1104, 1117.

### 1. General Damages

The jury awarded Peggy Mays $2 million in general damages for loss of the love, affection, and consortium of her husband. (Doc. 222 at p. 5). Ms. Mays provided compelling testimony on the subject. (Doc. 218). She testified that she and her husband enjoyed a loving, nearly 40-year marriage; that she misses him dearly; and that she could not see his body post-accident because it was so badly mangled. (*Id.*).

General damages are "inherently speculative" and "cannot be fixed with mathematical certainty." *Bouquet v. Wal-Mart Stores, Inc.*, p. 4 2008-0309 (La. 4/4/08); 979 So. 2d 456, 458. Considering Ms. Mays's testimony, the Court cannot say that the general-damages award is a "clear abuse" of the jury's "vast" discretion. *See Youn v. Maritime Overseas Corp.*, 623 So. 2d 1257, 1260 (La. 1993). Because the Court finds no abuse of discretion, it need not consider prior awards. *See Duncan v. Kansas City So. Rwy. Co.*, 2000-0066, p. 14 (La. 10/30/00); 773 So. 2d 670, 683.

### 2. Loss of Support

The jury awarded Peggy Mays $630,000 for the loss of her husband's support. (Doc. 222 at p. 5). Dr. Anthony Greco provided opinion testimony estimating loss-of-support damages. (Docs. 218, 219). But he erred in his initial estimation; the parties later stipulated that, but for the error, he would have testified that Peggy Mays suffered $629,472.46 in loss-of-support damages. (*Id.*).

Dr. Greco's testimony—as modified by the stipulation—is the sole basis for the loss-of-support award. Unlike special damages, loss-of-support damages are quantifiable and clear. *See Bouquet*, 979 So. 2d at 458. The jury abused its discretion when it awarded Peggy Mays $527.54 more than Dr. Greco's estimate. The Court therefore grants Chevron's Motion for Remittitur (Doc. 235) as to the loss-of-support award and reduces the award to $629,472.46. Because Plaintiffs are adversely affected by the remittitur, Plaintiffs have the right to reject it and submit to a new trial on the issue. *See* LA. CODE CIV. P. art. 1814; *Falterman v. Schunemeyer*, 2014-216, p. 4 (La. App. 3d Cir. 12/17/14); 153 So. 3d 1284, 1286.

### D. Comments Regarding a Retired United States District Judge

Chevron accuses the United States District Judge formerly assigned to this case of "refus[ing] to follow" precedent. (Docs. 233 at p. 1; 233-1 at pp. 1, 7). It offers no support for the charge. (*Id.*). It even refers to the now-retired United States District Judge by name eight times. (Docs. 233 at p. 1; 233-1 at pp. 1, 5, 6, 7). That is an unusual—and inappropriate—step. *See, e.g., Thomas v. Bryant*, 919 F.3d 298, 315 (5th Cir. 2019). The Court trusts that, moving forward, counsel for Chevron will

9

appreciate the distinction between arguing for a client and offering arguments that may be construed as an attack on a judge's integrity.

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Chevron Pipe Line Company's **Motion for Judgment as a Matter of Law or New Trial on Furmanite's Lack of OCS Operations (Doc. 233)** is **DENIED**.

**IT IS FURTHER ORDERED** that Chevron Pipe Line Company's **Motion for Judgment as a Matter of Law or New Trial on Substantial Nexus (Doc. 234)** is **DENIED**.

**IT IS FURTHER ORDERED** that Chevron Pipe Line Company's **Motion for Remittitur (Doc. 235)** is **GRANTED IN PART** and **DENIED IN PART**, as follows: the jury's loss-of-support award is reduced by $527.54 to $629,472.46; the **Motion (Doc. 235)** is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiffs shall file into the record, **within 7 days** of entry of this Ruling and Order, a notice of acceptance or rejection of remittitur. If Plaintiffs accept the remittitur, the Court will enter an Amended Final Judgment in favor of Plaintiffs and against Chevron Pipe Line Company in the amount of **$2,059,257.31**, plus pre-judgment interest in the amount of $48,212.18, post-judgment interest in accordance with 28 U.S.C. § 1961, and costs taxable under

28 U.S.C. § 1920.[5] If Plaintiffs reject the remittitur, the Court will set the case for a new trial on the issue of loss-of-support damages.

**IT IS FURTHER ORDERED** that, considering the Court's Ruling and Order, Plaintiffs' **Motion to Amend Judgment (Doc. 232) is DENIED** as moot.

Baton Rouge, Louisiana, this 17th day of June, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[5] Plaintiffs moved the Court to amend the February 8, 2019 Final Judgment to award them pre- and post-judgment interest. (Doc. 232). Chevron opposed and complained that Plaintiffs' proposed judgment is confusing and error-laden. (Doc. 242). Chevron stated, however, that it had "no specific additional objection" to the proposed amendments. (*Id.*). Chevron even proposed an alternative amended judgment, which Chevron contended "more clearly grants Plaintiffs the specific relief they seek." (*Id.*).

11