UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

MAYS, ET AL : CIVIL ACTION

VERSUS : NO. 14-03098-BAJ-CBW

CHEVRON PIPE LINE
CO., ET AL : JANUARY 31, 2019

=======================================================

JURY CHARGE CONFERENCE
BEFORE THE HONORABLE BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

FOR THE PLAINTIFFS:

BRADLEY STEELE & PIERCE
BY: JILL SWEARINGEN PIERCE, ESQ.
BY: LANCE P. BRADLEY, ESQ.
3120 CENTRAL MALL DRIVE
PORT ARTHUR, TEXAS 77642

FERGUSON LAW FIRM
BY: JANE SWEARINGEN LEGER, ESQ.
350 PINE STREET, SUITE 1440
BEAUMONT, TEXAS 77701

WALTERS PAPILLION
BY: DARRELL J. PAPILLION, ESQ.
12345 PERKINS ROAD, BUILDING ONE
BATON ROUGE, LOUISIANA 70810

FOR THE DEFENDANTS:

KEAN MILLER
BY: JAMES R. SILVERSTEIN, ESQ.
BY: SEAN T. MCLAUGHLIN, ESQ.
909 POYDRAS STREET, SUITE 3600

NEW ORLEANS, LOUISIANA 70112

REPORTED BY: NATALIE W. BREAUX, RPR, CRR
UNITED STATES COURTHOUSE
777 FLORIDA STREET
BATON ROUGE, LOUISIANA 70801
(225) 389-3565

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING COMPUTER-AIDED TRANSCRIPTION SOFTWARE

**PROCEEDINGS**

**THE COURT:** OKAY. AT THIS TIME WE ARE ON THE RECORD. THIS IS NOT OF COURSE A PART OF THE TRIAL, BUT WE ARE ON THE RECORD NONETHELESS. THE TRIAL PROCEEDINGS, SO THAT THE RECORD IS CLEAR, HAVE CONCLUDED FOR THE DAY. WE WILL NOW GO INTO OUR CHARGE CONFERENCE; IN OTHER WORDS, OUR REVIEW OF THE PROPOSED JURY INSTRUCTIONS.

NOW, LADIES AND GENTLEMEN, I CAN TELL YOU THAT WE'LL BE A LITTLE BIT MORE INFORMAL ABOUT THIS. WE WILL DISPENSE WITH THE -- CERTAINLY THE MIDDLE DISTRICT LOCAL RULES WHICH I ADOPTED FOR THIS CASE THAT WOULD OTHERWISE REQUIRE COUNSEL TO STAND WHEN ADDRESSING THE COURT. YOU MAY REMAIN SEATED THROUGHOUT THIS PROCESS AS WE GO THROUGH THIS REVIEW OF THE PROPOSED INSTRUCTIONS. I WOULD SIMPLY REMIND YOU TO PLEASE SPEAK INTO THE MICROPHONE SO THAT WE'RE ABLE TO MAKE SURE WE HAVE EVERYTHING WE NEED.

ALL RIGHT. SO LET ME CONFIRM, FIRST OF ALL: MS. PIERCE, MS. LEGER, HAVE YOU ALL RECEIVED THE COPIES OF THE PROPOSED JURY INSTRUCTIONS?

**MS. PIERCE:** YES, SIR.

**THE COURT:** AND MR. SILVERSTEIN, MR. MCLAUGHLIN?

**MR. MCLAUGHLIN:** YES, YOUR HONOR.

**THE COURT:** OKAY. I SEE MR. PAPILLION. YOU LOOK LIKE -- LOOKS LIKES YOU TOO WILL PARTICIPATE ACTIVELY IN THIS PROCESS. CORRECT?

**MR. PAPILLION:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT. OKAY. LET'S TAKE THIS PAGE BY PAGE. WE'LL BEGIN OF COURSE WITH THE PLAINTIFF. ANY OBJECTION TO THE INSTRUCTIONS ON PAGE 1 BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** OKAY. BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** THANK YOU. OKAY. PAGE 2, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** PAGE 3, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** PAGE 4, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** PAGE 5, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** PAGE 6. WAIT. PAGE 6, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** PAGE 7, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** PAGE 8, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** PAGE 9. NOW, PAGE 9, AS YOU CAN SEE, WE'VE IDENTIFIED SPECIFICALLY AND BY NAME THE THREE EXPERTS WHO HAVE BEEN ADMITTED IN THIS TRIAL AS EXPERT WITNESSES: MR. GRECO -- OR DR. GRECO,

MR. SAWYER AND MR. AAKER. ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** ON GEORGE OR G.A. AAKER, IT SAYS "A STRESS ENGINEERING EXPERT." I THINK IT SHOULD JUST BE "AN ENGINEERING EXPERT."

**THE COURT:** SO I DON'T HAVE HIS DEPOSITION TESTIMONY. WHAT DOES HIS DEPOSITION TESTIMONY REFLECT?

**MR. MCLAUGHLIN:** I'M SORRY, YOUR HONOR?

**THE COURT:** MR. AAKER'S DEPOSITION TESTIMONY. WOULD ONE OF YOU JUST TAKE A LOOK AT HIS DEPOSITION AND TELL ME HOW HE IDENTIFIED HIMSELF OR HOW HE WAS QUALIFIED? WAS THAT HOW HE WAS QUALIFIED?

**MS. PIERCE:** HE WAS QUALIFIED AS AN ENGINEERING EXPERT.

**THE COURT:** OKAY. DO YOU AGREE WITH THAT?

**MR. SILVERSTEIN:** FAIR ENOUGH. HE -- YOU KNOW, BECAUSE HE WAS REALLY TAKEN FOR DISCOVERY PURPOSE, HE SORT OF SAID, I HAVE EXPERT IN ROOT CAUSE ANALYSIS AND FAILURE ANALYSIS." BUT HE'S A METALLURGICAL ENGINEER. I THINK IF WE PROBABLY CALLED HIM A METALLURGICAL ENGINEER, THAT WOULD PROBABLY SUFFICE.

**MS. PIERCE:** THAT'S FINE WITH ME.

**THE COURT:** AND, OF COURSE, JORDAN CAN SPELL

IT. RIGHT, JORDAN?

**MR. REDMON:** YES, SIR.

**THE COURT:** THAT GOOD RHODES COLLEGE EDUCATION, HUH?

**MR. REDMON:** THE LIBERAL ARTS, YES, SIR.

**THE COURT:** AND, MR. SILVERSTEIN, I APPRECIATE YOUR PROFESSIONALISM. I DON'T MEAN TO BE -- BUT YOU'RE OLD SCHOOL LIKE ME. YOU CAN'T -- WHEN ADDRESSING THE COURT, I KNOW YOU INSTINCTIVELY STAND UP. THERE IS NO NEED FOR YOU TO DO SO. I MEAN, IF YOU'RE MORE COMFORTABLE DOING SO, THAT'S FINE.

I'M REMINDED OF ONE OF MY FIRST TRIALS AFTER I LEFT THE JUSTICE DEPARTMENT AND APPEARING IN -- IN FACT, MY FIRST TRIAL IN STATE COURT I KEPT -- TWO THINGS: I KEPT LOOKING FOR A PODIUM TO STAND BEHIND, AND I WOULD STAND EVERY TIME I WOULD ADDRESS THE COURT. AND THE JUDGE KEPT TELLING ME "JUST SIT DOWN, SIT DOWN." BUT WHATEVER YOU'RE COMFORTABLE WITH.

ALL RIGHT. MOVING ON NOW TO THE INSTRUCTION ON PAGE 10. ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** OKAY. NO. 11. WE'VE HAD A

NUMBER OF DEMONSTRATIVE -- PIECES OF DEMONSTRATIVE EVIDENCE.

**MS. PIERCE:** I'M NOT SURE ANY OF THEM EVER HAD AN EXHIBIT NUMBER.

**THE COURT:** I DON'T THINK THEY DID. DO YOU AGREE WITH THAT, MR. MCLAUGHLIN? WE CAN SIMPLY SAY THAT -- SOMETHING TO THE EFFECT THAT AT VARIOUS TIMES ILLUSTRATIVE OR DEMONSTRATIVE EVIDENCE WAS PRESENTED, ET CETERA, ET CETERA.

**MR. MCLAUGHLIN:** I'M FINE WITH THAT, YOUR HONOR.

**THE COURT:** MS. PIERCE?

**MS. PIERCE:** YES, I THINK THAT'S APPROPRIATE.

**THE COURT:** JORDAN, CAN YOU HANDLE THAT?

**MR. REDMON:** YES, SIR.

**THE COURT:** THANK YOU. IF YOU CAN'T, LET ME KNOW. WE CAN GET ONE OF THE OTHER CLERKS TO COME IN FROM BATON ROUGE. ALL RIGHT?

**MR. REDMON:** YES, SIR.

**THE COURT:** ALL RIGHT. INSTRUCTION NO. 12, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** NO. 13, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** NO. 14, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO OBJECTION.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO OBJECTION.

**THE COURT:** NO. 15, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** MY ISSUE WITH THIS ONE, YOUR HONOR, IS HAVING IT SAY "LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT." I THINK THAT IT WOULD BE MORE APPROPRIATE TO MAYBE SAY "43 U.S.C. 1333" AND THEN JUST SAY "PLAINTIFFS CLAIM THAT JAMES MAYS'S DEATH IS COVERED BY 43 U.S.C. 1333." AND THEN "TO ESTABLISH THAT JAMES MAYS'S DEATH IS COVERED BY 43 U.S.C. 1333, PLAINTIFFS MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THERE IS A SUBSTANTIAL NEXUS. " AND THE REST OF THAT IS FINE.

**THE COURT:** OKAY. SO WHY DO YOU THINK IT'S IMPORTANT TO ACTUALLY CITE THE ACTUAL CODE ARTICLE -- CODE DESIGNATION?

**MS. PIERCE:** I'M CONCERNED IF YOU SAY "LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT," SOME JURORS MAY THINK THIS IS A WORKERS' COMPENSATION CASE OR, YOU KNOW, NOT UNDERSTAND -- WELL, THEY WON'T UNDERSTAND WHAT -- THE U.S.C. DESIGNATION EITHER. BUT I THINK THIS MAKES IT LOOK LIKE THIS IS A WORKERS' COMP CASE, WHICH MAY CAUSE SOME CONFUSION, AND THEY MAY THINK, WELL, WHY IS FURMANITE NOT A PARTY IF THIS IS WORKERS' COMPENSATION?

**THE COURT:** ALL RIGHT. MR. MCLAUGHLIN?

**MR. MCLAUGHLIN:** YES, YOUR HONOR. I GUESS FIRST TO ADDRESS MS. PIERCE'S POINT, I MEAN, FIRST, IT IS THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT, SO I THINK IT'S APPROPRIATE TO ACTUALLY USE THE TITLE. BUT WE ALSO HAVE, AS YOU CAN IMAGINE, OBJECTIONS TO THIS CHARGE, YOUR HONOR.

WE SUBMIT THAT IT IS AN INCORRECT STATEMENT OF THE LAW AND THAT IT IS CONTRARY TO THE U.S. SUPREME COURT'S DECISION IN THE *VALLADOLID* CASE, WHICH IS 132 SUPREME COURT 680. I BELIEVE THAT THE CHARGE SHOULD READ, WITH REGARDS TO THAT PERTINENT LANGUAGE AT THE BOTTOM: "A SIGNIFICANT CAUSAL LINK BETWEEN HIS EMPLOYER FURMANITE'S ON-OCS OPERATIONS CONDUCTED FOR THE PURPOSE OF EXTRACTING NATURAL RESOURCES FROM THE OCS," THE LANGUAGE DIRECTLY FROM

THE SUPREME COURT'S DECISION, YOUR HONOR. I UNDERSTAND YOU'VE ALREADY RULED ON THAT, YOUR HONOR, BUT I HAVE TO MAKE A RECORD.

**THE COURT:** I UNDERSTAND. OKAY. WELL --

**MR. MCLAUGHLIN:** AND IF I MAY?

**THE COURT:** YES.

**MR. MCLAUGHLIN:** PUTTING ASIDE THAT ISSUE, YOUR HONOR, I ALSO BELIEVE THAT JUST THE WAY THAT IT'S RAISED, "PLAINTIFFS CLAIM THAT JAMES MAYS'S DEATH IS COVERED BY," I THINK IT SHOULD BE THAT JAMES MAYS IS COVERED BY THE ACT, NOT SO MUCH AS DEATH, BECAUSE HE IS FALLS WITHIN THE SCOPE -- HIS CLAIM FALLS WITHIN THE SCOPE. SO IT'S NOT SO MUCH HIS DEATH PER SE. IT'S THAT HIS CLAIM WOULD FALL UNDER THE SCOPE OF THAT ACT, YOUR HONOR.

**THE COURT:** ALL RIGHT.

**MS. PIERCE:** RIGHT. JAMES MAYS DOESN'T HAVE A CLAIM. IT'S THE CLAIM OF HIS SURVIVING SPOUSE AND HEIRS.

AND IN SPEAKING WITH MY CO-COUNSEL, WE BELIEVE IF THE COURT WOULD SAY "PLAINTIFFS CLAIM THAT JAMES MAYS'S DEATH IS COVERED BY FEDERAL LAW, AS EXTENDED BY THE OUTER CONTINENTAL SHELF LANDS ACT."

**THE COURT:** THAT'S PRECISELY WHAT I WAS GOING TO SUGGEST; THAT WE CAN TAKE OUT THE "LONGSHORE

AND HARBOR WORKERS' COMPENSATION ACT." WE DON'T HAVE TO SAY ANYTHING ABOUT COMPENSATION BECAUSE THAT IS -- IT DOES SUGGEST PUTTING SORT OF THE CART BEFORE THE HORSE; THAT COMPENSATION MIGHT BE DUE WITHOUT EVEN FINDING LIABILITY.

SO I THINK IT'S FAIR TO SAY THAT IT'S COVERED BY, LET'S SAY, PROVISIONS OF FEDERAL LAW.

**MR. MCLAUGHLIN:** IF I MAY, YOUR HONOR. I DON'T WANT TO INTERRUPT YOU WHILE YOU'RE WRITING.

**THE COURT:** NO, GO AHEAD.

**MR. MCLAUGHLIN:** IF I MAY. I GUESS ONE POINT IS THAT HIS CLAIM BEING GOVERNED BY FEDERAL LAW, THAT -- THAT'S A PRETTY TRICKY ISSUE, YOUR HONOR, BECAUSE AS YOU'RE -- AS I'M SURE YOU'RE AWARE, OCSLA THERE IS -- DIFFERENT PROVISIONS OF OCSLA PERTAIN TO WHEN THE LAW OF THE ADJACENT STATE --

**THE COURT**: CORRECT.

**MR. MCLAUGHLIN:** -- APPLIES AS FEDERAL LAW. AND THEN ALSO WHAT THE PLAINTIFFS ARE ARGUING IS UNDER A DIFFERENT PROVISION OF OCSLA THAT A PERSON CAN BE COVERED BY THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT PURSUANT TO OCSLA. THERE ARE ACTUALLY TWO DIFFERENT PROVISIONS OF OCSLA. ONE IS --

**THE COURT:** THE QUESTION BECOMES -- AND

YOU'RE ABSOLUTELY RIGHT IN TERMS OF THE LAW, AND IT IS IMPORTANT TO BE PRECISE IN THE LAW. BUT THESE FOLKS ARE THE FINDERS OF FACT. THEY DON'T NEED A TUTORIAL ON THE SPECIFICS OF THE LAW. AND, YOU KNOW, ALL WE HAVE TO DO IS SET FORTH THE ELEMENTS OF THE LAW, NOT WHAT IT'S CALLED, WHEN IT APPLIES AND THINGS LIKE THAT; ALTHOUGH THAT MIGHT BE AN ISSUE FOR THE JURY TO TAKE UP AT SOME OTHER TIME.

BUT I THINK ALL WE HAVE TO DO -- IN FACT, I DON'T THINK WE NEED THE FIRST -- MUCH OF THE FIRST PARAGRAPH OR THE FIRST SENTENCE. THE FIRST SENTENCE IS SIMPLY AN INTRODUCTION AS TO WHY WE'RE THEN TALKING ABOUT THE LONGSHORE AND HARBORS COMPENSATION ACT AS EXTENDED BY THE OUTER CONTINENTAL -- SO I THINK WE CAN REALLY SIMPLIFY IT BY NOT EVEN GETTING INTO THAT.

SO I DO THINK, HOWEVER, IN THIS CASE THAT WE HAVE TO MENTION THE OUTER CONTINENTAL SHELF LANDS ACT BECAUSE, AS I HAVE RULED EARLIER AND AS I BELIEVE THE LAW IS CLEAR, THAT IS A FACTUAL ISSUE FOR THE JURY TO DETERMINE, WHICH IS WHY, AS YOU SAW IN ONE OF THE -- IN FACT, THE FIRST QUESTION ON THE VERDICT FORM REQUIRES THE JURY TO DETERMINE IF THERE WERE SOME ACTIVITIES THAT OCCURRED IN CONNECTION WITH THE OUTER CONTINENTAL SHELF.

SO FOR THAT REASON, THAT PART WE'LL KEEP, WHICH IS WHY, AGAIN, I'M INCLINED TO JUST HAVE IT STATE THAT "PLAINTIFFS CLAIM THAT JAMES MAYS'S DEATH" OR EVEN "THE INCIDENT INVOLVING JAMES MAYS'S DEATH IS COVERED BY PROVISIONS OF FEDERAL LAW AS EXTENDED BY THE OUTER CONTINENTAL SHELF."

**MR. SILVERSTEIN:** JUDGE, I WOULD ALSO LIKE TO PROPOSE JUST SIMPLY -- SO I GUESS IT MAKES A LITTLE MORE SENSE WHAT WAS SAID IN OPENING STATEMENT I THINK BY BOTH ATTORNEYS, AND I THINK THE JURY WAS TOLD IN OPENING -- THAT, YOU KNOW, THIS CONNECTION TO THE SHELF IS GOING TO DICTATE WHETHER STATE LAW APPLIES OR FEDERAL LAW APPLIES, WHICH IS IMPORTANT TO WHAT ISSUE OF LAW APPLIES. AND ASSUMING THAT THE JURY REMEMBERS THAT WAS SAID, I WOULD ASK THAT MAYBE THE COURT ADD THE SENTENCE THAT "THE DEFENDANTS CONTEND THAT THIS CASE IS COVERED BY LOUISIANA WORKERS' COMPENSATION ACT OR LOUISIANA LAW," SORT OF MAYBE TO HELP FRAME THE ISSUE A LITTLE CLEARER.

**THE COURT:** BUT I'VE ALREADY RULED THAT THAT IS NOT THE LAW OF THE CASE. THAT'S SOMETHING YOU CAN TAKE UP WITH THE CIRCUIT. BUT THE LAW OF THE CASE IS ALREADY -- JUDGE DOHERTY HAS ALREADY RULED WHAT LAW APPLIES HERE. SO THAT'S NOT -- YOU'RE ASKING ME TO LET THE JURY NOW MAKE A DECISION BASED UPON -- FOR

THE JURY TO DECIDE WHAT LAW APPLIES. RIGHT?

**MR. SILVERSTEIN:** NO, YOUR HONOR. IS -- I APPRECIATE THE LAW AND I HOPE BY THIS POINT IN TIME I GOT IT, BUT WHO KNOWS. IS THAT IF THE JURY FINDS X, THEN THE CASE IS GOVERNED BY THE OCSLA. IF THE JURY FINDS Y, THE CASE IS DISCOVERED BY LOUISIANA WORKERS' COMPENSATION ACT. SO IT -- ACTUALLY, THE JURY'S FACTUAL FINDING IS GOING TO DICTATE WHETHER STATE LAW APPLIES OR WHETHER FEDERAL LAW APPLIES. THAT'S -- THE FACTUAL FINDING BY THE COURT -- EXCUSE ME, BY THE JURY -- IS GOING TO DICTATE THE CONTROLLING LAW.

AS I APPRECIATE THE COURT'S RULING -- AND MORE PARTICULARLY JUDGE DOHERTY -- SHE HAS FOUND THAT IT'S A FACTUAL DISPUTE THE JURY IS GOING TO DECIDE. IF THE JURY SAYS THERE IS A CONNECTION TO THE SHELF, THEN THE FEDERAL LAW IS GOING TO APPLY VIA OCSLA. IF THE JURY SAYS THERE IS NO CONNECTION, THEN STATE LAW WILL CONTROL AND THIS CASE WILL BE GOVERNED BY LOUISIANA WORKERS' COMPENSATION ACT. SO I'M JUST --

**THE COURT:** AND IF THAT'S THE CASE, THEN THE CASE -- AT LEAST THE FEDERAL -- I GUESS THE FEDERAL CASES -- THIS CASE IS OVER. RIGHT?

**MR. SILVERSTEIN:** YES, SIR. AND I DON'T THINK THERE IS ANY DISPUTE ABOUT THAT.

**THE COURT:** YEAH. IN OTHER WORDS, SO WHAT

YOU'RE ASKING IS THAT -- AND IF WE TURN, FOR INSTANCE, TO QUESTION NO. 1 ON THE VERDICT FORM, IT SIMPLY ASKS IF THERE WAS A CASUAL LINK. SO THE -- SO I WANT TO BE CLEAR. WE'RE NOT GOING TO -- WE'LL GET TO THAT IN A MINUTE.

LET'S SEE. SO WHAT'S YOUR -- SO YOU WANTED TO ADD -- FIRST OF ALL, LET ME JUST TAKE UP THE ISSUE. BECAUSE WE HAVE A LOT GOING ON IN THIS ONE. SO WE'RE GOING TO REMOVE, JORDAN, THE REFERENCES TO THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT AND JUST INSERT THE LANGUAGE "IS COVERED BY PROVISIONS OF FEDERAL LAW AS EXTENDED BY." OKAY?

**MR. REDMON:** YES, SIR.

**THE COURT:** ALL RIGHT. AND MR. MAYS -- I MEAN -- NOT MR. MAYS. MR. MCLAUGHLIN, I UNDERSTAND YOUR POINT WITH RESPECT TO THE USE OF THE CERTAIN WORD OF "DEATH," BUT FRANKLY THAT'S PRECISELY WHAT HAPPENED. MR. MAYS DIED AND HE DIED ON THAT PLATFORM, AND WE'VE GOT TO -- THAT FACILITY THAT -- YOU KNOW. BUT THAT'S WHY WE'RE HERE, SO I DON'T KNOW IF THERE IS ANY NEED TO REALLY DANCE AROUND THE ISSUE. THEY KNOW WHY WE'RE HERE AND WHAT THEY HAVE TO DETERMINE.

AND THEN FINALLY, LET ME GIVE THE PLAINTIFFS AN OPPORTUNITY. DO YOU OBJECT TO ADDING THE LANGUAGE

AS PROPOSED BY MR. SILVERSTEIN?

**MS. PIERCE:** YES.

**THE COURT:** OKAY.

**MS. PIERCE:** AND THEN, JUDGE, THERE IS ONE OTHER THING THAT -- I JUST WENT AND PULLED JUDGE DOHERTY'S ORDER ON THE RECONSIDERATION. AND I THINK EXTRACTIVE -- HER ORDER SAYS, "FOR THE PURPOSES OF EXTRACTING AND TRANSPORTING NATURAL RESOURCES FROM THE SHELF." AND "TRANSPORTING" IS ONE OF THE ACTIVITIES THAT QUALIFIES. SINCE THIS IS CHEVRON PIPE LINE, THERE IS MORE EVIDENCE OF TRANSPORTING THAN REALLY EXTRACTING. I MEAN, IF IT'S COMING FROM THE TWO PLATFORMS, I THINK WE SHOULD SAY "EXTRACTING AND TRANSPORTING NATURAL RESOURCES FROM THE OUTER CONTINENTAL SHELF."

**MR. PAPILLION:** YOUR HONOR, JUST FOR CLARITY, THAT REFERS TO LINE 11 OF PAGE 15 OF THE CURRENT VERSION OF THE CHARGES. AND MS. PIERCE WAS READING FROM PAGE 3 OF DOCUMENT 98.

**THE COURT:** DOCUMENT 98?

**MR. PAPILLION:** JUDGE DOHERTY'S RULING, YOUR HONOR.

**THE COURT:** DO WE HAVE A COPY OF THAT RIGHT NOW?

**MR. REDMON:** I DO.

**MR. MCLAUGHLIN:** YOUR HONOR, WE WOULD OBJECT TO THAT CHANGE, AS WELL AS EVEN THE CHARGE. AGAIN, THE *VALLADOLID* DECISION -- THE LANGUAGE FROM *VALLADOLID* SAYS: "WE ARE CONFIDENT THAT ALJ'S AND COURTS WILL BE ABLE TO DETERMINE WHETHER AN INJURED EMPLOYEE HAS ESTABLISHED A SIGNIFICANT CAUSAL LINK BETWEEN THE INJURY HE SUFFERED AND HIS EMPLOYER'S ON-OCS EXTRACTIVE OPERATIONS."

**MR. PAPILLION:** I KNOW YOUR HONOR IS READING. YOUR HONOR, TO BE CLEAR, THE -- JUDGE DOHERTY USES BOTH PHRASING AND THEN CITES AT PAGE 7 THE *REAGAN* DECISION, THE EASTERN DISTRICT DECISION FROM 1968, WHICH HAS AS A PARENTHETICAL "OR TRANSPORTING BY PIPELINE." OF COURSE YOUR HONOR IS CAPABLE OF READING THAT YOURSELF, BUT I WAS JUST TRYING TO BRING IT TO YOUR ATTENTION.

**THE COURT:** NO, I UNDERSTAND. THE AUTHORITY THAT JUDGE DOHERTY RELIED ON.

ALL RIGHT. WELL, I TELL YOU WHAT I'M GOING TO DO. I'M GOING TO ADD THE LANGUAGE "IN TRANSPORTING" SINCE THIS IS A PIPELINE CASE. DEFENDANTS' OBJECTION IS NOTED, BUT I THINK IT'S FRANKLY APPLICABLE BASED UPON THE RELEVANT AUTHORITY, GIVEN THAT THIS IS A PIPELINE CASE. FOR INSTANCE, WE KNOW IN THE *PETROLEUM HELICOPTERS* CASE THERE WASN'T A

PIPELINE THAT WAS INVOLVED IN THAT CASE. OF COURSE, THAT WAS A SIMILAR CASE. BUT BECAUSE THIS IS A PIPELINE CASE, I WILL INCLUDE THE LANGUAGE "IN TRANSPORTING." I THINK IT WILL BE CLEARER TO THE JURY.

NOW, WITH RESPECT TO THE DEFENSE REQUEST THAT THE ALTERNATIVE LANGUAGE BE OFFERED. SO LET ME UNDERSTAND, ONCE AGAIN, MR. SILVERSTEIN, YOU WOULD ADD THE PHRASE AT THE END OF THE LAST SENTENCE. CORRECT?

**MR. SILVERSTEIN:** YEAH. I THINK WE'RE TELLING THE JURY WHAT THE PLAINTIFFS' CLAIM IS. I THINK THE JURY SHOULD LIKEWISE BE TOLD WHAT THE DEFENSE CLAIM IS. AND IT'D SIMPLY SAY "THE DEFENDANTS CLAIM THAT JAMES MAYS'S ACCIDENT OR DEATH" -- WHATEVER THE COURT DETERMINES IS THE APPROPRIATE LANGUAGE -- "IS COVERED BY EITHER STATE LAW OR THE LOUISIANA WORKERS' COMPENSATION ACT," PERIOD.

**THE COURT:** SO THIS IS WHAT I THINK I'LL DO. I THINK IT IS CERTAINLY APPROPRIATE AND FAIR, MS. PIERCE, THAT AT LEAST THE JURY BE TOLD -- I MEAN, I TOLD THE JURY AT THE VERY BEGINNING OF THE JURY SELECTION PROCESS ESSENTIALLY THAT -- LET ME SEE WHAT I TOLD THEM.

SO WHAT I TOLD THE JURY IS THAT "THE DEFENDANT, CHEVRON PIPE LINE COMPANY, DENIES THE ALLEGATIONS AND ALLEGES THAT THERE WAS NOT A SUBSTANTIAL NEXUS OR SIGNIFICANT CAUSAL LINK BETWEEN MR. MAYS'S DEATH AND DEFENDANT CHEVRON PIPE LINE COMPANY'S EXTRACTIVE OPERATIONS ON THE OUTER CONTINENTAL SHELF." I THEN TOLD THEM THAT "IT WAS THE FAULT OF MR. MAYS AND THAT IT WAS ALSO CAUSED BY FURMANITE FAILURE TO TRAIN, FAILURE TO SUPERVISE ITS CREW, FAILURE TO CONDUCT ANNUAL INSPECTIONS," ET CETERA, ET CETERA.

SO AGAIN, I THINK THAT IT IS -- CERTAINLY THE PLAINTIFF BEARS THE BURDEN OF PROOF. BUT I WILL NONETHELESS ADD A SENTENCE THAT "THE DEFENDANTS SIMPLY DENY THAT THE ACTION OCCURRED WITH" -- BECAUSE WE'VE HAD NO -- THE PROBLEM I'M HAVING, MR. SILVERSTEIN, IS GOING AS FAR AS YOU WOULD LIKE IS THAT WE'VE HAD NO TESTIMONY -- NONE THAT I CAN REMEMBER -- ABOUT LOUISIANA TERRITORIAL WATERS OTHER THAN I THINK THERE WAS SOME MENTION OF IT IN OPENING STATEMENTS. BUT IN TERMS OF THE TESTIMONY OF THE WITNESS --

**MR. SILVERSTEIN:** THERE WAS A STIPULATION, JUDGE, THAT WAS READ TO THE JURY THAT "THIS PLATFORM IS IN LOUISIANA STATE TERRITORIAL WATERS." THAT'S

ONE OF THE STIPULATIONS IN THE PRETRIAL ORDER.

**THE COURT:** WHAT I'LL DO THEN IS I'LL JUST INDICATE THAT THE DEFENDANTS -- JUST SAY THAT "THE DEFENDANTS DENY THAT THIS INCIDENT OCCURRED" -- "THAT THIS INCIDENT WAS" -- "THAT THIS INCIDENT OCCURRED IN CONNECTION WITH EXTRACTIVE AND TRANSPORTING OPERATIONS ON THE OUTER CONTINENTAL SHELF." I'LL JUST LEAVE IT AT THAT.

LET'S SEE. WAS THE STIPULATION REDUCED TO WRITING?

**MR. SILVERSTEIN:** JUDGE, THE STIPULATION WAS IN THE PRETRIAL ORDER, AND I'LL PULL THAT OUT FOR YOU, JUDGE.

**THE COURT:** I'VE GOT IT HERE.

**MR. SILVERSTEIN:** JUDGE, I CAN GET IT TO YOU IN TWO SECONDS. AS PART OF THE PRETRIAL ORDER, THE PARTIES WERE REQUIRED TO GET TOGETHER AND TRY TO CREATE SOME STIPULATIONS. AND IT'S IN SECTION -- IT'S ON PAGE 12 OF THE PRETRIAL ORDER, AND IT'S NO. 4. IT SAYS: "THE INCIDENT IN QUESTION OCCURRED AT THE LIGHTHOUSE POINT PLATFORM, WHICH IS LOCATED IN LOUISIANA'S TERRITORIAL WATERS."

**THE COURT:** WELL, THE PROBLEM THAT I'M HAVING WITH THIS IS THAT IT SUGGESTS THAT IT'S AN EITHER/OR. AND IT'S REALLY NOT AN EITHER/OR. RIGHT?

AND SO IT COULD -- IT COULD BE IN TERRITORIAL -- I MEAN, THERE IS A STIPULATION ABOUT THAT. RIGHT? EVEN THE PLAINTIFFS AGREE TO THAT. RIGHT, MS. PIERCE? DO YOU UNDERSTAND MY POINT?

**MS. PIERCE:** YES, SIR, IT DID OCCUR IN STATE WATERS.

**THE COURT:** BUT YOU -- BUT IT OCCURRED IN STATE WATERS BUT WITH RELATION TO ACTIVITIES THAT OCCURRED FOR POST -- OR OUTER CONTINENTAL SHELF ACT.

**MS. PIERCE:** CORRECT.

**THE COURT:** SO --

**MR. PAPILLION:** I DON'T WANT TO INTERRUPT THE COURT'S DELIBERATIONS, IF IT'S APPROPRIATE TO HAVE BOTH COUNSEL. IF NOT, I'LL BE QUIET, YOUR HONOR.

**THE COURT:** GO AHEAD.

**MR. PAPILLION:** IT SEEMS THAT THE COURT HAD IT CORRECT EARLIER WHEN THE COURT CONCLUDED THAT THIS IS -- THE WHOLE QUESTION IS ACTIVITY IN STATE WATERS; THAT IF THE FACT-FINDER DETERMINES THERE IS A SUBSTANTIAL NEXUS TO EXTRACTION OR TRANSPORTATION OF NATURAL GAS FROM THE SHELF, THEN -- IF THE JURY MAKES THAT FACTUAL DETERMINATION, THEN WE KNOW WHAT LAW APPLIES. AND THE QUESTION -- THERE IS NO QUESTION ABOUT WHERE -- THERE IS NO FACT QUESTION WHERE THIS

DEATH OCCURRED. IT OCCURRED IN STATE WATERS, SO THAT'S ALREADY BEEN DETERMINED.

**THE COURT:** YEAH. SO FOR THAT REASON -- BECAUSE WHAT I DON'T WANT, MR. SILVERSTEIN, IS FOR THE JURY TO BE CONFUSED BY, WAIT, THIS HAPPENED IN THE LOUISIANA TERRITORIAL WATERS; IN OTHER WORDS, IF WE FORM THE QUESTION OR THE INSTRUCTIONS IN AN EITHER/OR TYPE OF WAY. I WILL, HOWEVER, ADD A SENTENCE THAT "THE DEFENDANTS DENY THAT THE INCIDENT OCCURRED DURING" EXTRACTION -- "EXTRACTIVE AND TRANSPORTING OPERATIONS ON THE OUTER CONTINENTAL SHELF."

OKAY. DID YOU GET THAT?

SO THE WHOLE THING WILL READ AS FOLLOWS: "PLAINTIFFS CLAIM THAT JAMES MAYS'S DEATH IS COVERED BY FEDERAL -- BY PROVISIONS OF FEDERAL LAW, AS EXTENDED BY THE OUTER CONTINENTAL SHELF LANDS ACT. TO ESTABLISH THAT JAMES MAYS'S DEATH IS COVERED BY PROVISIONS OF FEDERAL LAW, AS EXTENDED BY THE OUTER CONTINENTAL SHELF LANDS ACT, PLAINTIFFS MUST, PROVE BY A PREPONDERANCE OF THE EVIDENCE, THAT THERE WAS A SUBSTANTIAL NEXUS -- THAT IS, A SIGNIFICANT CAUSAL LINK -- BETWEEN JAMES MAYS'S DEATH AND DEFENDANT CHEVRON PIPE LINE COMPANY'S EXTRACTIVE AND TRANSPORTING OPERATIONS ON THE OUTER CONTINENTAL

SHELF." GOT THAT?

**MR. REDMON:** YES, SIR.

**THE COURT:** NEW PARAGRAPH. IN FACT, ONE SENTENCE. "DEFENDANTS DENY THAT THIS INCIDENT OCCURRED DURING EXTRACTIVE AND TRANSPORTING OPERATIONS ON THE OUTER CONTINENTAL SHELF."

**MR. REDMON:** YES, SIR.

**THE COURT:** OKAY, NEXT. PAGE 16 IS THE ARTICLE -- 2315 ARTICLE. AND IS THIS THE ARTICLE -- AND AGAIN, BOTH SIDES CONFERRED ON THIS?

**MR. PAPILLION:** YOUR HONOR, THE PLAINTIFFS WILL ESSENTIALLY WITHDRAW THE 2317.1 CLAIM. AND TO THE EXTENT THAT THE CHARGES -- I DON'T THINK THE PLAINTIFFS HAVE AN OBJECTION ONE WAY OR THE OTHER WHETHER THE CHARGE CITES 2315 OR WHETHER IT JUST SAYS -- IT CITES THE LAW OF NEGLIGENCE. WHATEVER IS THE COURT'S PREFERENCE ON THAT.

**THE COURT:** OKAY. SO -- WELL, LET'S SEE WHAT WE HAVE HERE. AND I'LL ASK: ARE THERE ANY OBJECTIONS TO THE INSTRUCTIONS ON PAGE 16 BY THE PLAINTIFF?

**MS. PIERCE:** NO, SIR.

**THE COURT:** BY THE DEFENDANT?

**MR. MCLAUGHLIN:** YES, YOUR HONOR. A COUPLE MAYBE MINOR ISSUES. I THINK CLAIM ONE. THERE IS NO

CLAIM TWO BECAUSE NOW WE'RE TAKING OUT 2317.1.

**THE COURT:** YES, THAT WILL BE -- YEAH, WE'LL TAKE THAT OUT.

**MR. MCLAUGHLIN:** SO WE CAN TAKE THAT OFF I THINK. I THINK THE ISSUE THAT WE HAVE, JUDGE, IS THAT, AS YOU KNOW, LOUISIANA NEGLIGENCE UNDER 2315 IS GOVERNED BY DUTY RISK. AND THIS REALLY DOESN'T GO AT ALL INTO THE DUTY-RISK ANALYSIS. OUR PROPOSED CHARGE NO. 3 DOES THAT, YOUR HONOR. AT RECENT DOC -- RECORD DOCUMENT 167 -- IT'S ACTUALLY PAGE 4 -- DEFENDANTS' REQUESTED CHARGE NO. 3: "THE PLAINTIFF MUST PROVE FIVE SEPARATE ELEMENTS IN ORDER TO ESTABLISH LIABILITY:" THE DUTY, WHICH IS NO. 1; NO. 2, FAILING TO CONFORM TO THE APPROPRIATE STANDARD OF CARE; 3, CAUSE-IN-FACT; 4, LEGAL CAUSE; AND 5, ACTUAL DAMAGES.

FAILURE TO PROVE ANY OF THOSE ELEMENTS OF THE DUTY-RISK ANALYSIS RESULTS IN A DETERMINATION OF NO LIABILITY. THAT'S REALLY TEXTBOOK LOUISIANA LAW, I BELIEVE, YOUR HONOR, ON NEGLIGENCE AND DUTY RISK.

**THE COURT:** WELL, YOU KNOW, MR. MCLAUGHLIN, I UNDERSTAND YOUR POINT. BUT AS I MENTIONED BEFORE, AND I'VE ALWAYS MENTIONED, THAT WHAT YOU SEE IN THIS PRESENT DRAFT IS ESSENTIALLY THE CIVIL JURY INSTRUCTIONS FROM WHAT I WOULD, AGAIN, CALL THE H. ALSTON JOHNSON SOURCE. THOSE FIVE ELEMENTS, AS FAR

AS I CAN TELL, ARE NOT THE ELEMENTS. THAT'S NOT THE FORM IN WHICH THESE ARE GIVEN AND, FRANKLY, IN MY COURT HAVE NEVER BEEN GIVEN. THESE ARE THE -- THESE ARE THE ELEMENTS AS I HAVE PRESENTED THEM, AND THOSE ARE THE CHARGES AS THEY ARE PRESENTED IN THE *LOUISIANA CIVIL LAW TREATISE: CIVIL JURY INSTRUCTIONS* BY PROFESSOR JOHNSON. AND SO YOUR REQUEST IS NOTED BUT DENIED.

IS THERE ANYTHING ELSE WITH RESPECT TO -- ANYTHING ELSE ON PAGE 16 FROM THE DEFENSE?

**MR. MCLAUGHLIN:** YES, YOUR HONOR. AND I UNDERSTAND YOUR RULING AND I RESPECT IT. I GUESS -- AND I DON'T KNOW HOW YOUR HONOR WANTS TO DO IT, BUT WE ALSO SUBMIT THAT I GUESS INCORPORATED WITHIN THIS CHARGE OR PERHAPS A SEPARATE CHARGE ARE OTHER CHARGES FROM JOHNSON CIVIL LAW TREATISE, YOU KNOW, TALKING ABOUT SOLE NEGLIGENCE OF THE PLAINTIFF. THAT WAS NOT INCLUDED, YOUR HONOR. AND ALSO REALLY CIVIL CHARGE NO. 7, THE CONSIDERATION OF HIS OWN KNOWLEDGE OF THE DANGER, THE EXTENT OF CONTROL HE HAD OVER THE SITUATION. THAT'S JOHNSON CIVIL TRIAL TREATISE 5.9.

I'M NOT SURE HOW YOUR HONOR WOULD LIKE TO DO IT. BUT IF THE CONTENT OF THOSE CHARGES I THINK HAS PARTICULAR IMPLICATION TO THIS CASE BECAUSE THE ALLEGATION OF THE DEFENSE IS THAT MR. MAYS WAS AN

EXPERIENCED OBVIOUSLY LEVEL 3 VALVE TECHNICIAN -- I KNOW YOU'RE PROBABLY TIRED OF HEARING THAT TERM -- BUT THAT IS OUR ALLEGATION; THAT HE HAD CONTROL OF THE SITUATION. SO I THINK THOSE CHARGES ARE VERY APPROPRIATE HERE. AND I THINK YOU COULD EITHER DO THEM SEPARATELY OR AS A PART OF THIS. THEY'RE JUST NOT CONTAINED ANYWHERE WITHIN THESE PROPOSED INSTRUCTIONS, YOUR HONOR.

**THE COURT:** OKAY. WE'LL TAKE THAT UP IN --

**MR. PAPILLION:** YOUR HONOR, IF I MIGHT. IT IS COVERED. IT'S AT PAGES 25 THROUGH 27 OF THE COURT'S CHARGE, IN A LOT OF DETAIL, ACTUALLY.

**THE COURT:** AND AGAIN, THAT'S WHY I SAY LET'S -- WE'LL GET TO THAT IN JUST A MINUTE. LET'S JUST COMPLETE THIS PROCESS AND THEN WE CAN TALK ABOUT THAT.

ALL RIGHT. LET'S MOVE ON NOW TO PAGE 17. ANY OBJECTION BY THE -- ANY OBJECTION BY THE -- WAIT JUST A MOMENT. OKAY. AGAIN, PAGE 17, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO, SIR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** PAGE 18, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO, SIR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** JUDGE, I JUST THINK PART OF THE LANGUAGE ON CAUSATION IS JUST A LITTLE CONFUSING. THAT THAT LAST SENTENCE ON CAUSATION: YOU HAVE TO DECIDE WHETHER JAMES MAYS PROBABLY WOULD NOT HAVE SUFFERED A FATAL INJURY IN THE ABSENCE OF DEFENDANT CHEVRON PIPE LINE COMPANY'S CONDUCT. I'M NOT SURE THAT THAT'S AN ACCURATE STATEMENT OF THE LAW, YOUR HONOR. IT'S ALMOST LIKE THE INVERSE.

**THE COURT:** WHAT WOULD YOU SUGGEST?

**MR. MCLAUGHLIN:** I THINK WE HAVE A PROPOSED CHARGE ON CAUSATION, YOUR HONOR. YOU KNOW, I'M JUST THINKING OUT LOUD HERE. SOMETHING TO THE EFFECT THAT "THE PLAINTIFFS BEAR THE BURDEN OF PROOF, BY A PREPONDERANCE OF EVIDENCE, THAT THE NEGLIGENCE OF CHEVRON PIPE LINE COMPANY CAUSED HIS ACCIDENT." I MEAN, IT'S -- THIS IS ALMOST LIKE "BUT FOR." IT'S JUST FLIPPED, YOUR HONOR. IT JUST STRUCK ME AS CONFUSING WHEN I READ IT. AND I COULDN'T FIND ANY AUTHORITY FOR THAT LANGUAGE.

**THE COURT:** SO AGAIN, WHAT WOULD YOU -- HOW WOULD YOU EDIT THIS? WOULD YOU SAY THAT -- YOU'RE NOT SUGGESTING, FOR INSTANCE, THAT WE REMOVE THE WORD "PROBABLY," OR ARE YOU? MAYBE YOU ARE. OF COURSE,

YOU WOULD HAVE TO -- IN ORDER FOR THIS TO BE GRAMMATICALLY CORRECT AND EASY TO UNDERSTAND, WE'D HAVE TO CHANGE QUITE A BIT OF THIS SENTENCE.

I MEAN, WHAT WE'RE ATTEMPTING TO CONVEY HERE IS THAT THE JURY HAS TO DECIDE WHETHER IT IS PROBABLE THAT THE DECEDENT WOULD NOT HAVE SUFFERED DEATH OF THIS FATAL INJURY, I GUESS -- I DON'T WANT TO USE THE WORD "BUT FOR CHEVRON'S CONDUCT," BUT THAT'S ESSENTIALLY WHAT WE'RE TRYING TO CONVEY. NOW, WE CAN MOVE THINGS AROUND, YOU KNOW, IN TERMS OF THE STYLE AND GRAMMAR, BUT --

**MR. PAPILLION:** IT'S STANDARD LANGUAGE.

**MR. SILVERSTEIN:** JUDGE, WHAT ABOUT "MR. MAYS" -- "YOU HAVE TO DECIDE WHETHER MR. MAYS WOULD HAVE LIKELY SUFFERED THE INJURY OR DEATH." DOES THAT WORK?

**THE COURT:** DO YOU HAVE A PROBLEM WITH THAT, MR. PAPILLION?

**MR. SILVERSTEIN:** THAT DOESN'T WORK.

**MR. PAPILLION:** I'M JUST SEEING THAT THE LANGUAGE AS WRITTEN IS A CLEAR STATEMENT OF LAW, IT'S A STANDARD CHARGE. THE COURT IS CORRECT, THE WORDS "BUT FOR" OR PERHAPS "WITHOUT" COULD BE SUBSTITUTED, BUT IT'S CLEAR AS IT IS TO ME.

**THE COURT:** THIS IS PRETTY STANDARD STUFF

HERE. I MEAN, THIS IS -- IT'S NOT LIKE WE'RE REINVENTING THE WHEEL HERE. WE'VE USED THIS IN OTHER CASES. BUT --

**MR. PAPILLION:** I DON'T UNDERSTAND EXACTLY WHAT THE CONFUSION IS. WE CAN COMPROMISE, BUT I DON'T KNOW WHAT'S WRONG WITH IT. IS IT THE WORD -- IS IT "IN THE ABSENCE OF"? IS IT "PROBABLY"? I JUST DIDN'T KNOW WHAT THE CONFUSION WAS.

**THE COURT:** MR. MCLAUGHLIN?

**MR. MCLAUGHLIN:** I THINK, JUDGE, IT'S JUST "IN THE ABSENCE OF." I JUST -- WHEN I WAS READING IT, IT JUST --

**THE COURT:** DO YOU WANT TO JUST INSERT "BUT FOR"? "WOULD HAVE SUFFERED THE FATAL INJURY BUT FOR"? "WOULD NOT HAVE SUFFERED THE FATAL INJURY BUT FOR"? YOU CAN SUBSTITUTE THAT --

**MR. PAPILLION:** OR "WITHOUT." "BUT FOR" OR "WITHOUT." IT SEEMS LIKE THAT'S THE LANGUAGE FROM CHARGES THAT WE'VE ALL SEEN.

**MR. MCLAUGHLIN:** RIGHT. IF IT'S THE STANDARD -- I MEAN, JUDGE, IT JUST MAY BE A LITTLE CONFUSING. IF THAT'S THE STANDARD CHARGE --

**THE COURT:** AND I UNDERSTAND YOUR POINT, BUT THIS IS PRETTY STANDARD, THE WAY IT IS NOW.

ALL RIGHT. ANYTHING ELSE ON PAGE 18 FROM

THE DEFENSE?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** PAGE 19, ANY OBJECTION BY THE PLAINTIFFS?

**MS. PIERCE:** NO, SIR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO YOUR HONOR.

**THE COURT:** PAGE 20, ANY OBJECTION BY THE PLAINTIFF?

**MS. PIERCE:** NO, SIR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** OKAY. NOW WE GO INTO DAMAGES. ANY OBJECTION BY THE PLAINTIFFS ON PAGE 21?

**MS. PIERCE:** NO, SIR.

**THE COURT:** BY THE DEFENSE?

**MR. SILVERSTEIN:** JUDGE, THIS IS A -- MAYBE I'M -- I GUESS WE'LL GET TO IT WHEN WE GET THERE. I MEAN, I DON'T WANT TO DISTRACT THE COURT.

**THE COURT:** OKAY. SO I TAKE IT THEN THAT THERE IS NO OBJECTION TO 21?

**MR. SILVERSTEIN:** NO, JUDGE.

**THE COURT:** ANY OBJECTION TO PAGE 22?

**MR. PAPILLION:** YOUR HONOR, IF THE COURT, WE WOULD -- AT LINE 7 AND 8 --

**THE COURT:** YEAH, WE HAVE LOSS OF SUPPORT -- "LOSS OF SERVICES," THAT COMES OUT. I'M SORRY TO CUT YOU OFF THERE, MR. PAPILLION.

**MR. PAPILLION:** NO, THAT'S OKAY. JUST THE -- SORRY. THE "SERVICES" NEEDS TO COME OUT. BUT IF WE PERHAPS ADD TO MAKE CLEAR AT NO. 1 "PAST AND FUTURE ECONOMIC SUPPORT."

**MS. PIERCE:** OR JUST "LOSS OF ECONOMIC SUPPORT."

**MR. PAPILLION:** OR LOSS OF -- IT SAYS "FUTURE" ONLY, SO MAYBE WE CAN TAKE OUT --

**THE COURT:** LET'S JUST TAKE OUT "OF FUTURE." YOU'RE OKAY WITH THAT, MR. MCLAUGHLIN?

**MR. MCLAUGHLIN:** YES, YOUR HONOR, I THINK THAT CLEARS IT UP.

**THE COURT:** VERY WELL. SO WE'LL TAKE THAT OUT. WE'LL TAKE OUT NO. 2. SO LOVE -- "LOSS OF THE LOVE, AFFECTION, AND COMPANIONSHIP OF JAMES MAYS" WILL BE NO. 2; "FUNERAL EXPENSES" WILL BE NO. 3.

ANYTHING ELSE BY THE PLAINTIFF ON PAGE 22?

**MR. PAPILLION:** NO, YOUR HONOR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** ALL RIGHT. ANY OBJECTION TO THE INFORMATION ON PAGE 22 BY THE PLAINTIFF?

**MS. PIERCE:** NO, SIR.

**MR. PAPILLION:** 23.

**THE COURT:** I'M SORRY, PAGE 23. WE'RE GOING TO MAKE A CHANGE ON LINE 13. WE'RE GOING TO REMOVE THE WORD "SERVICE." BUT WITH THAT EDIT, ANY OTHER CHANGES BY THE PLAINTIFFS ON PAGE 23?

**MR. PAPILLION:** NO, YOUR HONOR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** PAGE 24.

**MR. PAPILLION:** THERE IS A REFERENCE AT LINE 4 TO "SERVICES" AGAIN, YOUR HONOR.

**THE COURT:** CORRECT. SO WE'LL TAKE OUT WHERE IT SAYS -- BEGIN ON LINE 3 WITH "AND." AND THE ENTIRETY OF LINE 4 WILL BE DELETED.

**MR. SILVERSTEIN:** JUDGE, I WOULD SUGGEST -- THERE IS A COMMENT IN THERE ABOUT DECREASED SEXUAL RELATIONS. I DON'T THINK THAT WAS ADDRESSED AT ALL DURING THE TRIAL.

**THE COURT:** I THINK THAT'S -- I THINK THAT'S RIGHT. I DON'T KNOW IF WE NEED TO INCLUDE THAT. PLAINTIFFS?

**MS. PIERCE:** WELL, FOR MRS. MAYS --

**THE COURT:** IT'S NOT JUST DECREASED. IT'S --

**MS. PIERCE:** IT'S LOSS OF? IT'S PART OF HER CLAIM.

**THE COURT:** CERTAINLY I THINK THAT'S THE CASE. I THINK WHAT MR. SILVERSTEIN IS ASKING IS -- YOU KNOW, WHETHER THERE WAS EVIDENCE OF THAT, BUT HOW DO YOU ASK? YOU KNOW, YOU --

**MR. SILVERSTEIN:** JUDGE, I MEAN, IT'S --

**MS. PIERCE:** HE'S DECEASED. IT'S NOT LIKE IT'S DECREASED. IT'S GONE.

**MR. SILVERSTEIN:** IT'S, YOU KNOW -- I MEAN, IT'S KIND OF LIKE THE LOSS OF HOUSEHOLD SERVICES. THE JURY CAN ONLY CONSIDER WHAT'S IN THE RECORD. AND --

**THE COURT:** RIGHT.

**MR. SILVERSTEIN:** AND IF THERE IS SUCH A CLAIM OR THAT IS, YOU KNOW -- WITH ALL DUE RESPECT, I DON'T KNOW ANYTHING ABOUT THE MAYSES' PRIVATE LIFE AND -- BUT THERE ISN'T ANY EVIDENCE ABOUT THAT, AND THAT'S MY POINT. IS IT -- THAT WAS AN AREA THAT WASN'T GONE INTO, AND I JUST -- I WOULD SUGGEST THAT IT SHOULD BE REMOVED BECAUSE THERE IS NO EVIDENCE ON THAT ISSUE.

**THE COURT:** THIS IS ALWAYS A TOUCHY SUBJECT, MS. PIERCE. I THINK MR. SILVERSTEIN IS FACTUALLY RIGHT; THERE WAS NOTHING ON IT. WE HAVE LOSS OF LOVE

AND AFFECTION, LOSS OF COMPANIONSHIP AND MORAL SUPPORT. I DON'T KNOW HOW CRITICAL THAT'S GOING TO BE FOR THE JURY. MY INCLINATION WOULD BE TO TAKE IT OUT SINCE WE DIDN'T HAVE ANY EVIDENCE ON IT. AND I UNDERSTAND WHY THERE IS NO EVIDENCE.

**MS. PIERCE:** WELL, YOUR HONOR, WHATEVER YOU BELIEVE IS APPROPRIATE. I BELIEVE THAT IS A SEPARATE ELEMENT OF DAMAGES FOR MRS. MAYS, AND, YOU KNOW, IT'S NOT DECREASED, IT'S JUST GONE, SO --

**THE COURT:** CORRECT. I MEAN, IT CERTAINLY ISN'T IMPLYING THAT THE "DECREASED" PART OF IT DOES NOT APPLY, BUT LET'S GO ON AND TAKE THAT OUT. I THINK IT'S SUFFICIENTLY COVERED WITH THE LOSS OF LOVE AND AFFECTION, ET CETERA, ET CETERA.

ALL RIGHT. ANYTHING ELSE WITH RESPECT TO THE BALANCE OF PAGE 24 BY DEFENSE?

**MR. SILVERSTEIN:** JUDGE, WE -- IF I COULD JUST MAYBE RESERVE WITH COMMENT ON LOSS OF CONSORTIUM. I'M NOT -- I'D LIKE TO JUST TAKE A LOOK TO SEE WHAT THAT INCLUDES UNDER THE LAW. I KNOW THAT THERE IS A SEXUAL COMPONENT TO LOSS OF CONSORTIUM, WHICH IS IN THE NEXT -- BUT I DON'T KNOW IF THAT INCLUDES -- IF THAT TERM ENCOMPASSES ANY MORE THAN THAT. AND IT MAY BE -- WE MAY HAVE THE SAME OBJECTION THAT WE JUST PREVIOUSLY MADE.

**THE COURT:** OKAY. I UNDERSTAND YOUR POINT.

**MR. SILVERSTEIN:** YEAH, I MEAN, THAT'S MY INTERPRETATION. I MEAN, I -- AND MAYBE MR. PAPILLION WILL CORRECT ME. THE LOSS OF CONSORTIUM REFERS TO THE LOSS --

**MR. PAPILLION:** LOSS OF SOCIETY, SERVICES AND SEX. BUT ON WRONGFUL DEATH --

**THE COURT:** WAS WHAT, NOW?

**MR. PAPILLION:** SOCIETY, SERVICES AND SEX. BUT THE ELEMENTS ARE DIFFERENT IN A WRONGFUL DEATH CLAIM, SO --

**MR. SILVERSTEIN:** I WOULD JUST NOTE MY OBJECTION.

**THE COURT:** AND IT'S NOTED.

ALL RIGHT. LET'S MOVE ON NOW TO PAGE 25, "COMPARATIVE FAULT OF JAMES MAYS." ANY OBJECTION BY THE PLAINTIFF?

**MR. PAPILLION:** YES, YOUR HONOR. IT'S NOT SO MUCH AN OBJECTION; ALTHOUGH I GUESS TECHNICALLY IT IS. AND I DON'T WANT TO GET AHEAD OF OURSELVES. IT WOULD RELATE ALSO PERHAPS TO THE VERDICT FORM.

WITH RESPECT TO THE COMPARATIVE FAULT OF MR. MAYS, THE JURY OF COURSE HEARD -- REALLY I GUESS BEGINNING WITH OPENING STATEMENTS BY CHEVRON -- THAT EVERYONE MAY HAVE MADE MISTAKES. AND THERE HAS BEEN

A LOT OF TESTIMONY ABOUT POTENTIAL FAULT OF MR. MAYS AND FAULT OF CHEVRON. THE ISSUE IS THE SEPARATE FAULT OF FURMANITE SEPARATED FROM MAYS.

AND THE PLAINTIFFS WOULD SUBMIT THAT, AT A MINIMUM, WHILE CERTAINLY THE FAULT OF MR. MAYS -- THERE IS EVIDENCE OF IT -- IS THE QUESTION IS SHOULD THE FAULT OF MAYS BE SEPARATED FROM THE FAULT OF FURMANITE. IS THERE EVIDENCE IN THE RECORD OF SEPARATE, INDEPENDENT FAULT BY FURMANITE THAT WOULD BE DISTINGUISHABLE FROM THE FAULT OF MAYS, A FURMANITE EMPLOYEE WORKING OF COURSE IN THE SCOPE OF HIS EMPLOYMENT FOR FURMANITE.

IN OTHER WORDS, DID HE DO ANYTHING THAT WAS SEPARATE FROM HIS OBLIGATIONS AS A FURMANITE EMPLOYEE TO WHERE ESSENTIALLY THE DEFENDANTS GET THREE OPPORTUNITIES OR THREE BLANKS. THERE IS CHEVRON, FURMANITE AND MAYS. WE WOULD SUBMIT THAT FURMANITE AND MAYS SHOULD BE COMBINED BOTH IN THE CHARGE AND ON THE VERDICT FORM.

**THE COURT:** OKAY. MR. SILVERSTEIN?

**MR. SILVERSTEIN:** JUDGE --

**THE COURT:** I SUSPECT THAT YOU STRENUOUSLY OPPOSE THAT.

**MR. SILVERSTEIN:** JUDGE, I'M GOING TO ALSO ADDRESS SOMETHING THAT WE WERE GOING TO BRING UP

LATER. NOT ONLY DOES FURMANITE HAVE TO BE ON THE VERDICT FORM, SO DOES ACADIAN AND TRENT VICE. WE ARE WILLING TO CITE THE COURT TO THE DEPOSITION TESTIMONY OF THE PLAINTIFFS' OWN EXPERT WHO FAULTED MR. VICE FOR FAILING TO STOP THE OPERATION.

**THE COURT:** OKAY. SO --

**MR. SILVERSTEIN:** BUT I'LL GO TO FURMANITE.

**THE COURT:** YES.

**MR. SILVERSTEIN:** AND, JUDGE, I'LL START -- I'LL MAKE A NUMBER OF ELEMENTS OF FURMANITE'S INDEPENDENT NEGLIGENCE STARTING WITH NORMAN THOMAS.

NORMAN THOMAS WENT OUT THERE AND IDENTIFIED THAT VALVE BY SIGHT AS A WKM. HE WAS WRONG. HE SHOULD HAVE IDENTIFIED THE VALVE, GOTTEN THE DRAWINGS AND SPECIFICATIONS. SHANE WILLIAMS, WHO WAS THE FURMANITE MANAGER, UNDER SECTION 2.2, WAS REQUIRED TO GET THE DRAWINGS AND SPECIFICATIONS BEFORE THEY EVER WENT OUT THERE. DAVID JARRELL, WHO WAS FURMANITE'S OTHER TECHNICIAN, ALLOWED MR. MAYS, WITHOUT OBJECTION, TO REMOVE THE BONNET COVER WHICH WAS A PRESSURE-CONTAINING DEVICE. NORMAN THOMAS SAID HE HAD NOT BEEN PROPERLY TRAINED IN THIS MANUAL. THERE ARE -- THERE IS NUMEROUS EVIDENCE AS OF FURMANITE'S INDEPENDENT NEGLIGENCE SEPARATE AND DISTINCT FROM MR. MAYS. AND I AM GOING TO ITEMIZE THOSE

ELEMENTS --

**THE COURT:** LET ME JUST SAY THAT, MR. PAPILLION, I THINK FOR THE REASONS THAT MR. SILVERSTEIN HAS MENTIONED, I THINK FURMANITE HAS TO STAY.

THE OTHER THING IS MR. SAWYER, PLAINTIFFS' EXPERT, MADE A STATEMENT YESTERDAY AND THAT SUGGESTED TO ME THAT THERE WAS -- AND I DON'T HAVE THAT SPECIFIC STATEMENT, BUT I REMEMBER I KIND OF PERKED UP WHEN HE SAID IT -- TO THE EFFECT THAT -- AND I THINK IT HAD TO DO WITH THE DRAWINGS THAT WERE PROVIDED OR NOT PROVIDED BEFORE THEY WENT OUT THERE THAT -- I BELIEVE IT WAS HIS TESTIMONY -- I'M ALMOST CERTAIN HIS TESTIMONY WAS -- AND I KNOW JORDAN IS TAKING A LOOK AT IT -- THAT FURMANITE AND CHEVRON SHOULD HAVE PROVIDED DRAWINGS. AM I RIGHT ABOUT THAT, JORDAN?

**MR. REDMON:** HIS TESTIMONY WAS THAT UNDER SECTION 2.2, THE FACILITY MANAGER WAS RESPONSIBLE FOR OBTAINING THE DRAWINGS. AND THERE WAS NO TESTIMONY AS TO WHO THE FACILITY MANAGER WAS.

**THE COURT:** BUT I THOUGHT IT WAS -- MY TAKE ON IT WAS THAT -- WELL, I GUESS IT WAS MR. WILLIAMS.

**MR. SILVERSTEIN:** HE WAS THE -- THAT'S WHY WE CALLED HIM. HE WAS THE FURMANITE FACILITY

MANAGER.

**THE COURT:** YOU DID ASK HIM TODAY AND -- ABOUT -- AND I CAN'T REMEMBER. AGAIN, I DON'T HAVE A TRANSCRIPT BEFORE ME. BUT THE GIST OF IT TO ME WAS -- AND HE REALLY DIDN'T ANSWER IT. THAT HE WAS THE MANAGER; WASN'T IT -- WASN'T SOMEBODY RESPONSIBLE FOR PROVIDING THE DRAWINGS. AND HE REACTED IN MORE OF A DEFENSIVE WAY.

AND SO I GUESS, MR. PAPILLION, MY POINT TO YOU IS THAT I THINK THERE IS ENOUGH EVIDENCE FOR THE JURY TO EVALUATE WHETHER -- OVER AND ABOVE MR. MAYS'S CONDUCT -- WHETHER SOMEONE ELSE AT FURMANITE, WHETHER IT WAS MR. JARRELL, WHETHER IT WAS THE OPERATIONS MANAGER, MAY NOT HAVE ABIDED BY THEIR OBLIGATIONS UNDER THESE CIRCUMSTANCES AND UNDER THE POLICIES.

AND SO FOR THAT REASON, THERE WILL BE A SEPARATE LINE ON THE VERDICT FORM, WHICH WE'LL GET TO IN A MINUTE, THAT WILL REQUIRE THE JURY TO -- THE JURY COULD APPORTION SOME FAULT TO FURMANITE SEPARATE AND APART FROM MR. MAYS, BECAUSE I THINK THERE IS ENOUGH EVIDENCE IN THE RECORD FOR ALLOWING THEM TO DO SO IF THEY WISH TO DO IT.

**MR. PAPILLION:** AND ALL THAT'S WELL TAKEN, YOUR HONOR. IF WE MIGHT JUST OBVIOUSLY OBJECT FOR THE RECORD.

BUT I GUESS TO TAKE ONE MORE OPPORTUNITY, THE ISSUE WOULD BE IF MR. MAYS -- AND YOU HEARD THE TESTIMONY REPEATEDLY. AND HE WAS THE BEST LEVEL 3 VALVE TECHNICIAN --

**THE COURT:** SO WAIT. LET ME JUST STOP YOU RIGHT THERE. I APOLOGIZE. IF YOUR CONCERN IS -- IS YOUR CONCERN THAT IF THE JURY CONCLUDES THAT MR. MAYS ACTED IMPROPERLY AND THEY INDICATE THAT ON THE VERDICT FORM, LET'S SAY, 20 PERCENT --

**MR. PAPILLION:** CORRECT.

**THE COURT:** -- YOU DON'T WANT THEM TO ASSUME, WELL, BECAUSE MR. MAYS WAS A FURMANITE EMPLOYEE, WE'RE GOING TO APPORTION 20 PERCENT TO FURMANITE?

**MR. PAPILLION:** THAT'S PART OF IT. IT'S A COMBINATION OF THOSE THINGS. IT WOULD BE THAT, FOR EXAMPLE, MR. MAYS WAS ALWAYS OPERATING UNDER THE COURSE AND SCOPE OF HIS EMPLOYMENT WITH FURMANITE. HE WAS JUST LIKE EVERY OTHER FURMANITE PERSON WHO WAS RESPONSIBLE FOR ANY FAILURES THAT FURMANITE MIGHT HAVE DONE; WHETHER IT WAS -- ANYTHING THAT FURMANITE FAILED TO DO, HE IS RIDING WITH FURMANITE.

IT'S THE SEPARATING OF HIM BECAUSE -- AND THEN THAT'S WHY WE WERE SUGGESTING SORT OF THE "OR." BECAUSE IT'S JAMES MAYS OR FURMANITE, AND THEY'RE

INVITED TO PUT A PERCENTAGE. AND SO THEY CAN PUT A PERCENTAGE -- AND THAT WAS THE POINT. BECAUSE HERE'S THE ISSUE OR THE CONCERN.

IF THE SHOE WERE ON THE OTHER FOOT, SO TO SPEAK, I DON'T BELIEVE THERE HAS BEEN ANY EVIDENCE THAT ANYTHING JAMES MAYS DID OR FAILED TO DO WOULD HAVE PUT HIM OUTSIDE THE COURSE AND SCOPE OF HIS EMPLOYMENT, SUCH THAT IF HE WERE BEING SUED, THAT FURMANITE COULDN'T BE HELD LIABLE FOR IT. IN OTHER WORDS -- AND SO THAT'S WHY I WAS TRYING TO HAVE THE COURT CONNECT THEM SO THAT IF IT'S MAYS OR FURMANITE, THAT'S ONE BLANK, AND CHEVRON IS ANOTHER BLANK.

BECAUSE TO SEPARATE MAYS, WHO AT ALL TIMES WAS OPERATING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, SEEMS TO UNFAIRLY -- I THINK JUST UNFAIRLY PREJUDICE HIM AND GIVES CHEVRON -- AND I MEAN THIS VERY RESPECTFULLY -- JUST GIVES CHEVRON TWO ADDITIONAL WAYS TO REDUCE ITS POTENTIAL LIABILITY. IF THE JURY -- IF THE JURY -- IF THE JURY MERGES MAYS WITH FURMANITE, THE POSSIBILITY OF THAT CONFUSION SEEMS TO BE LESSENED.

**THE COURT:** SO ARE YOU TELLING ME THAT YOU WOULD LIKE TO DO --

**MR. PAPILLION:** "MAYS OR FURMANITE." IN OTHER WORDS, ANYWHERE -- AND WHEN WE'RE TALKING ABOUT

COMPARATIVE FAULT, THAT IF YOU FIND MAYS OR -- IN OTHER WORDS, WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE GANDER. IF FURMANITE WAS AT FAULT, JAMES MAYS WILL PAY FOR IT. HE HAS TO UNDER THE LAW ANYWAY. IF JAMES MAYS WAS AT FAULT, FURMANITE PAYS FOR IT IN TERMS OF --

**THE COURT:** BUT THEN YOU WOULD HAVE TO HAVE A SEPARATE LINE THAT WOULD ACCOUNT FOR ANY OTHER FURMANITE EMPLOYEE OR THE COMPANY ITSELF.

**MR. PAPILLION:** I GUESS OUR SUBMISSION THERE -- I FEEL -- IF HE STANDS, I FEEL LIKE I NEED TO STAND -- WOULD BE THAT WE WOULD JUST HAVE THAT IN THE SAME PROPORTION. IF YOU FIND WHATEVER FAULT JAMES MAYS OR FURMANITE HAD, ALLOCATE THAT AS A PERCENTAGE.

**MR. SILVERSTEIN:** JUDGE, IT'S -- FIRST OF ALL, I THINK MR. PAPILLION IS SORT OF ARGUING A SUMMARY JUDGMENT TYPE ISSUE. THERE IS CERTAINLY A PLETHORA OF EVIDENCE IN THIS RECORD OF FURMANITE'S FAULT. IT IS BLACK LETTER LAW UNDER LOUISIANA LAW THAT IN A TORT SUIT YOU -- IF THERE IS EVIDENCE OF AN EMPLOYER'S FAULT THAT IS QUANTIFIED, AND IT REDUCES THE PLAINTIFFS' RECOVERY. THERE IS INDEPENDENT ACTS OF NEGLIGENCE BY FURMANITE. THERE ALWAYS HAS BEEN. AND NORMAN THOMAS ARGUABLY DID SOME --

**THE COURT:** AND I DON'T THINK THAT'S -- WELL, IT MAY BE IN DISPUTE. BUT I CAN TELL YOU RIGHT NOW, IN MY MIND, THERE IS NO DISPUTE AND NO QUESTION THAT THERE AT LEAST IS EVIDENCE THAT THE FINDER OF FACT CAN EVALUATE TO MAKE THOSE CONCLUSIONS.

BUT THE QUESTION IS, AS MR. PAPILLION HAS PUT IT, AS I APPRECIATE IT, IF WE JUST HAVE MR. MAYS, FURMANITE, CHEVRON AT THIS POINT, AND MAYBE -- I DON'T KNOW. MAYBE WE'LL HAVE ACADIAN. WE'LL TALK ABOUT THAT LATER -- DOES THAT ALLOW TOO BIG A BITE IF THEY FIND THAT MR. MAYS -- SO I GUESS WHAT YOU'RE SAYING, THOUGH, MR. PAPILLION, IS THAT WHATEVER DEFICIENT CONDUCT ON MR. MAYS'S PART THAT THEY MAY FIND, THAT --

**MR. PAPILLION:** MR. MAYS WILL ACCEPT -- I MEAN HE'LL PAY FOR ON THE VERDICT FORM.

**THE COURT:** HE'LL ACCEPT SEPARATE AND APART FROM THAT OF --

**MR. PAPILLION:** WELL, OF CHEVRON. BECAUSE IF IT'S FURMANITE, HE'LL PAY FOR IT, TOO, BECAUSE IF THE JURY IS FACED WITH THE QUESTION, IT'S THE WORD "OR"; "FURMANITE OR MAYS." YES, WE FIND THEY WERE AT FAULT. WHETHER IT WAS -- MAYBE THEY DON'T FIND MAYS AT FAULT AT ALL BUT THEY FIND THOMAS AT FAULT, WHICH -- BE THAT AS IT MAY, AND THAT'S A CHECK. AND

THEN: WELL, WHAT PERCENTAGE OF FAULT? THAT'S A NUMBER. AND IT OPERATES -- IT PUNISHES -- AND "PUNISHMENT" ISN'T THE RIGHT WORD, BUT LET'S -- I'LL USE IT. IT PUNISHES MAYS APPROPRIATELY BECAUSE IT'S HIM OR HIS EMPLOYER. IF YOU PUT "FURMANITE AND MAYS," THE JURY HAS TO: OKAY. WELL --

**THE COURT:** BUT WON'T THE JURY ASSUME THAT HE -- MR. MAYS WAS OUT THERE IN HIS CAPACITY AS A FURMANITE EMPLOYEE AND THAT HE MAY HAVE BEEN RESPONSIBLE? BUT BEYOND HIS -- THE THINGS HE DID, THERE WERE ALSO THINGS THAT OTHERS IN THE COMPANY DID. SEE, THAT'S WHAT I HAVE ISSUES WITH HERE; THAT IF WE DO IT THE WAY YOU'RE SUGGESTING, IT MAY NOT CAPTURE THE FULL RANGE OF CULPABLE CONDUCT IN ALL PARTIES. IT MIGHT LET, IN OTHER WORDS, FURMANITE GET AWAY BY COMING IN UNDER MR. MAYS WHEN, IN FACT, THERE WERE -- VERSUS OTHER THAN MR. MAYS ASSOCIATED WITH FURMANITE WHO CONTRIBUTED TO THIS ACCIDENT. AND SO THEN HOW DO WE ACCOUNT FOR THAT? MR. MCLAUGHLIN?

**MR. MCLAUGHLIN:** IF I MAY, YOUR HONOR. I THINK ARTICLE 2323 OF THE CIVIL CODE -- OBVIOUSLY IT'S COMPARATIVE FAULT; THAT THE LAST -- TOWARDS THE END OF PARAGRAPH A ADDRESSES I THINK BASICALLY THE SITUATION: "IF A PERSON SUFFERS INJURY, DEATH, OR LOSS AS THE RESULT PARTLY OF HIS OWN NEGLIGENCE AND

PARTLY AS A RESULT OF THE FAULT OF ANOTHER PERSON OR PERSONS" -- SUCH AS FURMANITE, MR. THOMAS, ET CETERA -- "THE AMOUNT OF DAMAGES RECOVERABLE SHALL BE REDUCED IN PROPORTION TO THE DEGREE OR PERCENTAGE OF NEGLIGENCE ATTRIBUTABLE TO THE PERSON SUFFERING THE INJURY, DEATH, OR LOSS." I SUBMIT THAT CLEARLY REQUIRES SEPARATE LINES FOR MR. MAYS AND FURMANITE.

**THE COURT:** IT'S UNFAIR FOR YOU TO PULL OUT THE LAWBOOK THERE, MR. MCLAUGHLIN. I'M KIDDING, OF COURSE.

**MR. PAPILLION:** IT DOESN'T SAY -- HE SAYS "SUCH AS," AND IT DOESN'T SAY THAT.

**THE COURT:** NO, BUT I UNDERSTAND THE POINT. SO, MR. PAPILLION, I UNDERSTAND YOUR ARGUMENT, BUT THAT IS MY CONCERN HERE; THAT IF THE JURY FINDS THAT THERE WAS SOME CULPABILITY, SOME COMPARATIVE FAULT ON THE PART OF MR. MAYS, THAT THAT'S HOW THEY'LL ACCOUNT FOR ANY LIABILITY TO FURMANITE. SO FOR THAT REASON THERE WILL BE A SEPARATE LINE ITEM, IF YOU WILL, ON THE VERDICT FORM THAT WILL COVER FURMANITE.

NOW, HAVING SO RULED, LET ME GO BACK TO PAGE 25. ANY OBJECTION BY THE PLAINTIFF TO THE --

**MR. PAPILLION:** YES, YOUR HONOR. WE WOULD OBJECT TO --

**THE COURT:** YOU DON'T HAVE TO -- PLEASE.

**MR. PAPILLION:** SORRY. WE WOULD OBJECT -- TO JUST AVOID HAVING TO SAY IT OVER AND OVER, WE OBJECT TO THE SEPARATION OF COMPARATIVE FAULT OF MAYS FROM HIS EMPLOYER. BUT AS WRITTEN AS TO -- AS TO MAYS, IT'S FINE. IT IS -- THE PHRASING OF IT IS FINE BUT FOR THE FACT THAT PLAINTIFFS WOULD HAVE REQUESTED THAT IT BE THE "COMPARATIVE FAULT OF JAMES MAYS OR FURMANITE."

**THE COURT:** CORRECT. SO YOU WOULD, IN OTHER WORDS -- JUST SO THAT THE RECORD IS CLEAR, THAT YOU URGE THAT THERE OUGHT TO BE THE LANGUAGE ADDED TO INCLUDE "OR FURMANITE"?

**MR. PAPILLION:** "OR FURMANITE."

**THE COURT:** THE PHRASE.

**MR. PAPILLION:** AND THAT THEY'RE NOT DESCRIBED SEPARATELY AND, MORE PARTICULARLY, WHEN WE GET TO THE FORM, TO THE FORM ITSELF. THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. ON THE PART OF THE DEFENSE, ANY OBJECTION?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** PAGE 26, ANY OBJECTION -- ANY ADDITIONAL OBJECTIONS BY THE PLAINTIFF?

**MR. PAPILLION:** JUST THE SAME OBJECTION, YOUR HONOR.

**THE COURT:** AND BY THE DEFENSE?

**MR. MCLAUGHLIN:** YOUR HONOR, A FEW POINTS ON THIS, AND PERHAPS THEY'RE OBJECTIONS. YOU KNOW, I DON'T KNOW IF YOU -- WHEN YOUR HONOR WANTS TO TAKE IT UP, BUT WE DO REQUEST SPECIFIC LANGUAGE REGARDING WHETHER THE JURY CAN CONSIDER HIS -- MR. MAYS'S SPECIFIC TRAINING AND SKILL. IN THIS AREA WE HAVE SOME OF THOSE CHARGES ON THAT. THAT'S POINT ONE. POINT TWO --

**THE COURT:** LET'S DEAL WITH THAT POINT BY POINT SO WE CAN DEAL WITH EVERYTHING. WHAT WOULD YOU LIKE TO ADD AND WHERE WOULD YOU INSERT IT? I WANT TO GIVE YOU A FULL OPPORTUNITY ON THE RECORD TO PROVIDE THAT.

**MR. MCLAUGHLIN:** THANK YOU, YOUR HONOR. DEFENDANTS' REQUESTED JURY CHARGE NO. 5, WHICH WAS OUR REQUESTED CHARGE ON CONTRIBUTORY NEGLIGENCE, I THINK THE LANGUAGE THAT WE COULD INSERT WOULD BE "IN DETERMINING WHETHER MR. MAYS ACTED REASONABLY OR WITH ORDINARY CARE, YOU MAY CONSIDER JAMES MAYS'S BACKGROUND AND EXPERIENCE IN THE VALVE REPAIR INDUSTRY AND PARTICULARLY THE TRAINING FURMANITE AMERICA PROVIDED TO HIM AND JAMES MAYS'S EXPERIENCE WITH AND KNOWLEDGE REGARDING VALVE OPERATIONS."

**THE COURT:** OKAY. AGAIN, WHERE WOULD YOU

INSERT THAT LANGUAGE?

**MR. MCLAUGHLIN:** THAT'S REQUESTED JURY CHARGE NO. 5 FOR US. I THINK, YOUR HONOR, THAT MAY BE APPROPRIATE AFTER LINE 13 ON PAGE 26, YOUR HONOR, AS A NEW PARAGRAPH; A SEPARATE PARAGRAPH.

**MR. PAPILLION:** WAIT, YOUR HONOR. IF YOU LOOK UP AT LINE 7, IT TALKS ABOUT HIS KNOWLEDGE.

**MR. MCLAUGHLIN:** IT DOES NOT MENTION AT ALL HIS TRAINING AND EXPERIENCE REGARDING THIS SPECIFIC ISSUE WITH VALVES, YOUR HONOR. I THINK HIS KNOWLEDGE -- I MEAN, THAT COULD BE ANYBODY OUT THERE, YOUR HONOR. IT DOESN'T GO TO THE FACT THAT THE JURY CAN AND SHOULD UNDER THE LAW CONSIDER THAT HE WAS HIRED ACTUALLY TO GO OUT THERE AND REPAIR THIS EXACT DEVICE. THAT'S A REPAIRMAN CHARGE, TOO, JUDGE. THAT IS -- WE HAD SOME LANGUAGE ON THAT, YOUR HONOR, I THINK IN YOUR -- THE 2317.1 CHARGE THAT YOU REMOVED, BECAUSE THAT CLAIM IS NO LONGER BEFORE US. BUT HE WAS THE REPAIRMAN ESSENTIALLY.

**MR. PAPILLION:** YOUR HONOR, WE WON'T OBJECT TO THAT.

**THE COURT:** OKAY. SO GIVE ME THE LANGUAGE AGAIN. IF THERE IS NO OBJECTION, WHAT -- AND LET'S BE CLEAR. BECAUSE I'M NOT -- WAIT. I THINK YOUR OBJECTION -- YOU DON'T OBJECT TO THE COURT ADOPTING

DEFENSE -- PROPOSED DEFENSE INSTRUCTION NO. 5 IN ITS ENTIRETY?

**MR. PAPILLION:** WELL, LET'S HEAR IT. BUT WHERE HE WAS TALKING ABOUT HIS PARTICULAR SKILL WITH RESPECT TO VALVES, WE WOULDN'T OBJECT TO THAT.

**THE COURT:** READ THAT AGAIN.

**MR. MCLAUGHLIN:** YES, YOUR HONOR.

**THE COURT:** SO LET ME JUST TELL YOU, I'M GOING TO LEAVE 26 AS IT IS. I'M NOT ADOPTING NUMBER -- YOUR PROPOSED NO. 5 IN ITS ENTIRETY. AS I'VE SAID FROM DAY ONE WHEN I MET WITH THE LAWYERS IN THIS CASE AND IN EVERY CASE, I DO NOT LIKE ONE-OFF -- I JUST DON'T FOR A LOT OF DIFFERENT REASONS. I MEAN -- AND I THINK ALSTON JOHNSON DOES A FINE JOB. HE SPENT YEARS PROPOSING THAT. WE HAVE A 1978 CASE AND A 1997 CASE. NOTHING NEW. SO THESE ARE GOOD INSTRUCTIONS THAT HAVE BEEN SANCTIONED BY THE LOUISIANA SUPREME COURT AND THE FIFTH CIRCUIT ON STATE -- LOUISIANA STATE CASES. HOWEVER, I WILL -- I AM WILLING TO ADD OTHER CONSIDERATIONS IN THE PARAGRAPH THAT BEGINS AT LINE 7 ON 26.

SO WHAT IS IT THAT YOU WOULD LIKE ME TO ADD, MR. MCLAUGHLIN, TO THE SECOND FULL PARAGRAPH OF PAGE 26?

**MR. MCLAUGHLIN:** "IN DETERMINING WHETHER

PLAINTIFF ACTED REASONABLY OR WITH ORDINARY CARE, YOU MAY CONSIDER JAMES MAYS'S BACKGROUND AND EXPERIENCE WITH VALVES, IN PARTICULAR THE TRAINING THAT HIS EMPLOYER FURMANITE PROVIDED TO HIM."

**THE COURT:** SO IN OTHER WORDS, YOU WANT ME TO ADD THAT -- YOU'RE SUGGESTING THAT WE ADD THAT PARAGRAPH?

**MR. MCLAUGHLIN:** YES, YOUR HONOR.

**THE COURT:** OKAY.

**MR. PAPILLION:** SO, YOUR HONOR --

**THE COURT:** WAIT. I'M SORRY. JUST A MOMENT. I HAVE A CALL FROM MY COLLEAGUE HERE THAT I MAY HAVE TO TAKE. BECAUSE IT MAY BE RELATED TO A CASE.

ALL RIGHT.

**MR. MCLAUGHLIN:** YOUR HONOR, WE COULD ALSO ALTERNATIVELY USE THE PARAGRAPH FROM YOUR CHARGE ON 2317.1: "BECAUSE JAMES MAYS WAS A PERSON ENGAGED TO REPAIR THE PROBLEM, YOU MAY ALSO CONSIDER IN YOUR DETERMINATION OF WHETHER THE RISK PRESENTED WAS UNREASONABLE SOME FACTORS PARTICULARLY PERTINENT TO HIS STATUS AND HIS WORK, SUCH AS THE KNOWLEDGE THAT HE HAD ABOUT THE PROBLEM, HOW REASONABLE IT WAS," ET CETERA.

**MR. PAPILLION:** YOUR HONOR, IN AN EFFORT TO

BE COOPERATIVE, WE WERE -- WE WOULD AGREE TO GIVE THEM HALF OF THE FIRST PART THAT HE READ. BUT WHEN HE STARTS GETTING INTO "TRAINING BY THE EMPLOYER" AND ALL OF THAT, WE -- THE ORIGINAL OBJECTION WE UNDERSTOOD WAS THAT IT WASN'T SPECIFIC ENOUGH TO HIS EXPERTISE AS A VALVE TECHNICIAN, AND SO WE WERE OKAY WITH THAT. BUT THEN ONCE HE GETS INTO --

**THE COURT:** RIGHT. SO WHY DON'T WE DO THIS. SINCE THERE IS NO OBJECTION BY THE PLAINTIFF TO THE LANGUAGE IN DEFENSE REQUESTED JURY CHARGE NO. 5, WE WILL ADD THAT PARAGRAPH -- LET'S SEE.

**MR. PAPILLION:** THAT'S IT, YOUR HONOR. I HATE TO GIVE YOU TROUBLE, BUT WE DO -- ONCE HE GETS INTO "TRAINING BY HIS EMPLOYER FURMANITE" -- WE WERE GOING TO GIVE THEM THE PART ABOUT "AS A VALVE TECHNICIAN," TO HELP THE JURY UNDERSTAND THAT.

**MR. MCLAUGHLIN:** YOU'RE OKAY WITH THE FIRST SENTENCE ESSENTIALLY, LIKE I THINK -- JUST LET ME PHRASE IT. I THINK -- SO I UNDERSTAND WHAT YOU'RE SAYING.

**MR. PAPILLION:** STOP AT "AND TRAINING."

**MR. MCLAUGHLIN:** SO HOW ABOUT THIS? HOW ABOUT WE INSERT "IN DETERMINING WHETHER MR. MAYS" -- OR I GUESS YOU'RE USING "JAMES MAYS."

"IN DETERMINING WHETHER JAMES MAYS ACTED

REASONABLY OR WITH ORDINARY CARE, YOU MAY CONSIDER JAMES MAYS'S BACKGROUND AND EXPERIENCE WITH VALVES"?

**MR. PAPILLION:** YEAH.

**MR. MCLAUGHLIN:** PERIOD?

**MR. PAPILLION:** YEAH.

**MR. MCLAUGHLIN:** IS THAT --

**THE COURT:** VERY WELL. WE CAN ADD THAT. THAT WILL BE THE FIRST SENTENCE OF THE SECOND PARAGRAPH, JORDAN. AND THEN WE'LL SAY "YOU MAY ALSO CONSIDER," ET CETERA, ET CETERA. OKAY?

**MR. REDMON:** YES, SIR.

**MR. MCLAUGHLIN:** THANK YOU, YOUR HONOR.

**THE COURT:** THANK YOU, GENTLEMEN.

GOT THAT, JORDAN?

**MR. REDMON:** YES, SIR, I GOT IT.

**THE COURT:** I'M SURE KEVIN WOULD HAVE HAD IT DOWN BY NOW. DEVIKA DEFINITELY WOULD HAVE HAD IT. I'M SO GLAD JORDAN HAS A GOOD SENSE OF HUMOR. ONE OF THESE DAYS WHEN HE'S ON THE FIFTH CIRCUIT, I KNOW HE'S GOING TO GET HIS REVENGE.

ALL RIGHT. LET'S MOVE ON NOW TO PAGE 27.

**MR. SILVERSTEIN:** JUDGE, I THINK WE HAD ONE OTHER CHANGE ON PAGE 26.

**THE COURT:** WHAT IS THAT?

**MR. MCLAUGHLIN:** IT'S AT THE VERY BOTTOM,

JUDGE. IT'S LINE 18, THE ONE THAT SAYS "IF YOU CONCLUDE THAT BOTH DEFENDANTS, CHEVRON PIPE LINE AND JAMES MAYS, WERE NEGLIGENT." AS WE DISCUSSED BEFORE, IT SEEMS THAT THIS CHARGE, IF YOU CONTINUE --

**THE COURT:** AGAIN, I HATE TO CUT YOU OFF, BUT I UNDERSTAND WHAT YOU'RE SAYING. SO YOU'RE SUGGESTING THAT WE ADD "FURMANITE"?

**MR. MCLAUGHLIN:** AND ALSO ACADIAN, YOUR HONOR.

**THE COURT:** WHICH WE'LL GET TO IN A MINUTE.

**MR. MCLAUGHLIN:** THANK YOU, YOUR HONOR.

**THE COURT:** GOT IT. AND YOU'RE ABSOLUTELY RIGHT, BECAUSE FURMANITE CERTAINLY WILL BE ADDED HERE. AND WE'LL GIVE JAMES A CHANCE TO GO ON AND CAPTURE THAT. LET US KNOW WHEN YOU'RE READY TO GO JAMES -- JORDAN. I DON'T KNOW WHY I CALLED YOU JAMES.

**MR. REDMON:** GOT IT.

**THE COURT:** ALL RIGHT. OKAY. PAGE 27, ANY OBJECTIONS BY THE PLAINTIFF?

**MR. PAPILLION:** ONLY THE -- TO THE EXTENT THAT AS WRITTEN IT WOULD INCLUDE BOTH FURMANITE AND MAYS SEPARATELY.

**THE COURT:** SO WHAT WE'LL DO THERE AND ON LINE 2 -- WAIT NOW. I'M SORRY. AGAIN,

MR. PAPILLION?

**MR. PAPILLION:** AS WRITTEN I THINK IT'S FINE, YOUR HONOR. JUST TO MAKE SURE SOMEHOW WE DON'T -- IF THE COURT WILL DECLARE THAT WE'RE NOT WAIVING THAT OBJECTION WITH THE INCLUSION OF FURMANITE, I CAN BE A LITTLE MORE QUIET. THE FAILURE OF A TIMELY OBJECTION.

**THE COURT**: NO, THAT'S ALL RIGHT. DON'T FEEL OBLIGATED TO BE QUIET.

**MR. PAPILLION:** MR. SILVERSTEIN POINTED OUT TO THE JUDGES ON CAMP STREET, I ASSURE YOU.

**THE COURT:** THE JUDGES ON CAMP STREET. SOME OF MY DEAR FRIENDS WHO ACTUALLY COME HERE A LOT, I UNDERSTAND, TO HANDLE MATTERS.

OKAY. SO ANY OBJECTION BY THE DEFENSE TO PAGES -- TO THE INSTRUCTIONS ON PAGE 27?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** ALL RIGHT. OKAY. LET'S MOVE ON NOW TO THE INSTRUCTION ON PAGE 28. MR. PAPILLION, ANY -- OR MS. PIERCE -- ANY OBJECTION? THE COURT HAS ALREADY RULED THAT THERE WILL BE AN OPPORTUNITY FOR THE JURY TO CONSIDER CULPABILITY ON THE PART OF FURMANITE. THAT BEING THE CASE, ANY OBJECTION TO THE INSTRUCTION ON PAGE 28?

**MR. PAPILLION:** JUST THE SAME OBJECTION,

YOUR HONOR.

**THE COURT:** ANYTHING FROM THE DEFENSE?

**MR. MCLAUGHLIN:** AND, YOUR HONOR, THE LANGUAGE OF THIS CHARGE IS FINE EXCEPT THAT I FEEL LIKE IT'S APPROPRIATE NOW THAT CHEVRON SUBMITS THAT THE JURY WILL ALSO NEED TO BE ALLOCATED FAULT TO ACADIAN. WE HAD TESTIMONY AT TRIAL REGARDING THE PRESENCE OF MR. TRENT VICE AS PART OF THE WORK TEAM ON THE DATE OF THE ACCIDENT. THERE IS TESTIMONY THAT HE HAD STOP WORK AUTHORITY AND HE FAILED TO DO SO.

THERE IS SPECIFIC TESTIMONY FROM PLAINTIFFS' EXPERT. AND I'LL READ IT, JUDGE. "AND AM I CORRECT THAT IT'S YOUR OPINION THAT THIS ACCIDENT RESULTED FROM THE WORK TEAM INCLUDING MAYS, MOTTY, TRENT VICE, THEIR FAILURE TO FOLLOW BOTH THE CHEVRON PROCEDURES AND THE FURMANITE PROCEDURES?

"ANSWER: I AGREE."

SO, YOUR HONOR, I SUBMIT THAT THERE IS EVIDENCE IN THE RECORD THAT SUPPORTS ACADIAN, WHICH IS TRENT VICE'S EMPLOYER, BEING PRESENT ON THE VERDICT FORM. AND I FEEL LIKE ANY ATTEMPT TO PRECLUDE THEM FROM GOING ON THE VERDICT FORM IS IMPROPER BECAUSE ESSENTIALLY IT'S A SUMMARY JUDGMENT STANDARD. THE PLAINTIFFS WOULD HAVE TO PROVE THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT MR. VICE

AND ACADIAN CONTRIBUTED TO THE ACCIDENT. THERE IS EVIDENCE IN THE RECORD OF THAT, YOUR HONOR, SO WE SUBMIT THAT --

**THE COURT:** WELL, I WAS PREPARED, MR. MCLAUGHLIN, TO TELL YOU THAT THERE HAS BEEN NO EVIDENCE THAT MR. VICE HAD ANY AUTHORITY TO SHUT THAT DOWN. WE'VE NOT HEARD FROM HIM OR FROM ANYONE WITH ACADIAN. RIGHT? WE NEVER HEARD -- NO CORPORATE WITNESSES HAVE COME FORWARD OR WERE CALLED FROM ACADIAN. CORRECT?

**MR. MCLAUGHLIN:** NO WITNESSES TESTIFIED FROM ACADIAN, YOUR HONOR. BUT I THINK THERE IS TESTIMONY IN THE RECORD BY SEVERAL WITNESSES THAT EVERYONE OUT THERE -- IT WAS HEARD FROM SEVERAL WITNESSES -- EVERYONE OUT THERE HAD STOP WORK AUTHORITY. EVERYONE MESSED UP --

**THE COURT:** THAT TESTIMONY -- AGAIN, THAT TESTIMONY WAS I BELIEVE FROM THE PLAINTIFFS' EXPERT WITNESS. WAS THAT MR. SAWYER?

**MR. MCLAUGHLIN:** THIS PARTICULAR -- I MEAN, I DON'T WANT TO MISSPEAK, YOUR HONOR. I KNOW IT CAME FROM MR. AAKER BECAUSE THAT'S THE ONE WE READ IN THE DEPOSITION, SO I CAN HAVE HIS DEPOSITION RIGHT IN FRONT OF ME WHERE HE SPECIFICALLY REFERRED TO TRENT VICE AS --

**THE COURT:** SO -- AND I KNOW THERE HAVE BEEN SOME REQUESTS FOR TRANSCRIPTS AT THE END OF THE DAY. DO YOU RECALL IF MR. SAWYER OPINED ON MR. VICE'S ROLE OUT THERE AND THE EXTENT OF HIS RESPONSIBILITY OR AUTHORITY?

**MR. MCLAUGHLIN:** I BELIEVE, YOUR HONOR, THAT IF MR. SAWYER DID, HE MAY NOT HAVE SPECIFICALLY REFERRED TO TRENT VICE. HE MAY -- I DON'T RECOLLECT. I'M FAIRLY CERTAIN HE SAID EVERYONE OUT THERE, WHICH I WOULD INCLUDE MR. VICE. SO I THINK THAT WOULD BE -- I THINK THERE IS EVIDENCE FROM NOT JUST THE EXPERTS, YOUR HONOR, BUT ALSO I BELIEVE FROM THE OTHER WITNESSES OUT THERE TALKING ABOUT STOP WORK AUTHORITY, EVERYONE HAS IT; THINGS OF THAT NATURE. WE HAVE INTRODUCED INTO EVIDENCE THE ACADIAN JOB SAFETY ANALYSIS. THAT IS IN EVIDENCE.

**THE COURT:** IS IT? AND IS IT RELEVANT TO THIS ISSUE?

**MR. MCLAUGHLIN:** I BELIEVE -- I DON'T WANT TO MISSPEAK, YOUR HONOR, BUT LET ME LOOK. I THINK IT TALKS ABOUT HIM HAVING STOP WORK AUTHORITY.

**MR. SILVERSTEIN:** I MAY BE ABLE TO HELP OUT, JUDGE.

**THE COURT:** WAIT JUST ONE MINUTE.

**MR. SILVERSTEIN:** IN FAIRNESS TO THE COURT,

I DON'T BELIEVE -- AND I'M SPEAKING FROM MEMORY. I DON'T BELIEVE I SPECIFICALLY -- I'M GOING BY MY RECOLLECTION. I DON'T THINK THE QUESTION THAT I PROPOSED TO MR. SAWYER SPECIFICALLY INCLUDED TRENT VICE. I THINK, JUDGE, I SPOKE IN TERMS OF THE WORK TEAM.

BUT ONE OF THE REASONS WE INTRODUCED THIS MORNING AS OUR SECOND WITNESS, MR. AAKER'S DEPOSITION AND SELECTED THE QUESTIONING WE DID, WAS BECAUSE HE SPECIFICALLY OPINED AS AN EXPERT ON MR. VICE'S CULPABILITY. AND, JUDGE, I THINK WE SUBMIT THAT THAT'S CERTAINLY AMPLE EVIDENCE FOR THE JURY TO REACH A FACTUAL FINDING ON ACADIAN'S FAULT.

**THE COURT:** ALL RIGHT. THANK YOU.

**MR. MCLAUGHLIN:** AND, YOUR HONOR, ON THIS POINT, THE JSA FROM ACADIAN, WHICH IS IN THE RECORD AS JOINT EXHIBIT 8, AND ON PAGE 3, YOUR HONOR, OF THAT, "POTENTIAL HAZARDS," IT LISTS A BUNCH. TOWARDS THE BOTTOM I SEE "EQUIPMENT NOISE"; "HIGH PRESSURE RELEASE" --

**THE COURT:** WAIT JUST ONE MINUTE.

JUST BEAR WITH US, LADIES AND GENTLEMEN. OBVIOUSLY I WANT TO GET THIS RIGHT, AND SOMETIMES WE'VE GOT TO TAKE A LOOK AT SOME --

**MR. SILVERSTEIN:** JUDGE, WE CAN PRESENT THE

COURT WITH MR. AAKER'S DEPOSITION WHICH WAS READ THIS MORNING, IF THAT WOULD BE HELPFUL.

**THE COURT:** NO, NO, THAT'S NOT -- I MEAN, I RECALL THE DEPOSITION TESTIMONY, AND THAT'S -- AND I HAVE -- I THINK YOU'RE RIGHT ABOUT THAT. BUT THAT'S NOT MY ISSUE RIGHT NOW.

ALL RIGHT. WOULD THE PLAINTIFF LIKE TO BE HEARD ON THE REQUEST?

**MS. PIERCE:** YES, PLEASE, YOUR HONOR. YOUR HONOR, THERE IS NO EVIDENCE ABOUT TRENT VICE'S EXPERIENCE OR TRAINING THAT WOULD HAVE ALLOWED HIM TO EVEN RECOGNIZE THAT THERE WAS A HAZARD IN VALVE WORK. I BELIEVE HE WAS OUT THERE AS A FIRE WATCH, WAS THE TESTIMONY. AND IT ALSO HAS THE POTENTIAL FOR GREAT CONFUSION TO THE JURY BECAUSE ACADIAN WAS MR. MOTTY'S EMPLOYER WHEN MR. MOTTY WAS THE SUPERVISOR OF THE JOB WHERE THEY PAINTED AND WRAPPED THE VALVES FOR CHEVRON, INCLUDING THIS VERY SPECIFIC VALVE.

SO BECAUSE THERE IS HARDLY ANY EVIDENCE AT ALL ABOUT MR. VICE'S BACKGROUND OR KNOWLEDGE OR TRAINING, BUT THERE IS A LOT OF TESTIMONY ABOUT ACADIAN WITH REGARD TO THE JOB THAT WAS DONE -- WHICH WE'VE EVEN DESCRIBED AT THAT POINT THAT WAS CHEVRON'S LAST BEST EFFORT TO MAKE SURE THAT VALVE WAS PROPERLY IDENTIFIED -- JUST CREATES TOO GREAT OF A RISK OF

CONFUSION FOR THE JURY. FURTHER --

**THE COURT:** I'M LISTENING.

**MS. PIERCE:** FURTHER, WHEN WE SENT DISCOVERY TO CHEVRON IN THIS CASE, WE SPECIFICALLY ASKED: IF YOU'RE GOING TO CONTEND THAT A THIRD PARTY WAS NEGLIGENT IN CAUSING THE INJURIES TO PLAINTIFFS' DECEDENT, JAMES MAYS, PLEASE STATE THE MATERIAL FACTS SUPPORTING THAT CONTENTION. THEY ANSWERED: FURMANITE AND THEIR CONTENTIONS AGAINST FURMANITE BUT NEVER ANYTHING ABOUT ACADIAN.

**THE COURT:** SOUNDS TO ME, MR. SILVERSTEIN, THAT YOU'VE KIND OF, IF I CAN USE ONE OF JUDGE JOHN D. PARKER'S TERMS, "HOISTED ON YOUR OWN PETARD," IF THAT'S TRUE, IF YOU REPRESENTED IN DISCOVERY THAT IT WAS NEVER PART OF THE DEFENSE STRATEGY TO INCLUDE ACADIAN.

**MR. SILVERSTEIN:** JUDGE, I'M -- I BELIEVE IT'S IN THE PRETRIAL ORDER. AND BEAR WITH ME ONE SECOND. ALSO, JUDGE, THE PLAINTIFFS' OWN HIRED EXPERT OPINED THAT TRENT VICE WAS AT FAULT.

AND THE COURT MAY NOT BE IMPRESSED WITH THE EVIDENCE, BUT IF WE WERE ARGUING FOR SUMMARY JUDGMENT AND WE WERE SAYING TRENT VICE SHOULD BE DISMISSED AND THERE IS AN EXPERT SAYING HE WAS AT FAULT, I SUBMIT THAT SUMMARY JUDGMENT WOULD BE GRANTED.

**THE COURT:** I'M LESS CONCERNED ABOUT THAT. I'M LESS CONCERNED ABOUT THAT AND MORE CONCERNED THAT --

**MR. SILVERSTEIN:** HERE IT IS, JUDGE. BEAR WITH ME ONE SECOND. HERE IT IS, JUDGE. NO. 10, PRETRIAL ORDER. "THE ACCIDENT WAS CAUSED BY THE FAULT AND NEGLECT OF PARTIES FOR WHOM CPL IS NOT LEGALLY RESPONSIBLE, INCLUDING FURMANITE AND/OR ACADIAN CONTRACTORS. THE DEFENDANT AVERS THAT" -- AND THEN I GO ON TO SAY, "ACADIAN'S EMPLOYEE (TRENT VICE), IN TURN, FAILED TO EXERCISE STOP WORK AUTHORITY WHEN MAYS NEGLIGENTLY EXCEEDED THE PERMIT TO WORK AND JSA AND WHEN HE REMOVED A PRESSURE CONTAINING DEVICE WHILE THE VALVE WAS UNDER PRESSURE." THAT'S IN THE PRETRIAL ORDER, WHICH I BELIEVE IS CONTROLLING IN THIS CASE.

**THE COURT:** YOUR POINT IS THAT THERE IS NO SURPRISE HERE?

**MR. SILVERSTEIN:** ABSOLUTELY NOT, JUDGE. IT WAS FROM THE PLAINTIFFS' OWN EXPERT, WHICH WAS TAKEN -- WHAT WAS THE DATE OF IT? IT WAS TAKEN YEARS AGO WHEN HE GAVE THAT TESTIMONY THAT MR. VICE WAS AT FAULT.

**THE COURT**: SO YOUR POINT, JUST SO THAT I UNDERSTAND THE SEQUENCE OF EVENTS HERE, THAT YOUR

REPRESENTATION TO PLAINTIFFS THAT YOU DO NOT SEEK TO ASCRIBE ANY FAULT TO ACADIAN OCCURRED PRIOR TO THE DISCOVERY -- AT LEAST THE DISCOVERY PROVIDED BY THE PLAINTIFFS' EXPERT?

**MR. SILVERSTEIN:** JUDGE, I CAN EVEN GO BACK AND LOOK AT --

**THE COURT:** AM I CORRECT ON THAT SEQUENCE OF EVENTS?

**MR. SILVERSTEIN:** I DON'T WANT TO MISREPRESENT SOMETHING TO THE COURT UNLESS I LOOK AT IT.

**THE COURT:** SO YOU DON'T RECALL?

**MR. SILVERSTEIN:** I DON'T -- YEAH, I DON'T WANT TO ANSWER THAT QUESTION WHEN I DON'T KNOW THE ANSWER TO THAT. BUT I AM REASONABLY CONFIDENT, WITHOUT HAVING LOOKED, IT WAS IN THE EARLIER PRETRIAL ORDERS WHICH WERE SUBMITTED IN THIS CASE YEARS AGO.

**THE COURT:** LET ME TELL YOU HOW I'M GOING TO RULE ON THIS. OVER THE PLAINTIFFS' OBJECTION IT WILL BE ADDED. THE FIFTH CIRCUIT HAS COUNSELED THAT UNDER RULE 49, A DISTRICT COURT MUST SUBMIT -- MUST; IT'S MANDATORY, IN OTHER WORDS, AS I APPRECIATE IT -- MUST SUBMIT TO THE JURY ALL MATERIAL ISSUES RAISED BY THE PLEADINGS AND THE EVIDENCE. AND BECAUSE WE HAVE AT LEAST DURING THE COURSE OF THE TRIAL EVIDENCE FROM

THE DEPOSITION TESTIMONY OF A PLAINTIFFS' EXPERT THAT THERE COULD HAVE BEEN SOME ACT TAKEN OR PERHAPS THAT MAY HAVE -- BE RELATED TO THIS INCIDENT, WE WILL GO ON AND INCLUDE ON THE VERDICT FORM AND IN THE INSTRUCTIONS A COMPARATIVE FAULT INSTRUCTION WITH RESPECT TO ACADIAN CONTRACTORS, INC.

BUT TO BE SURE, LET ME TELL YOU THAT WE'RE GOING TO TAKE A HARD LOOK AT THAT OVER THE -- IN THE OVERNIGHT HOURS. WE'RE GOING TO DO SOME RESEARCH ON IT, JUST SEE IF WE CAN FIND ANY ADDITIONAL GUIDANCE FROM THE CIRCUIT ON THAT POINT. BUT HAVING SAID THAT, I WILL CAUTION BOTH SIDES TO ASSUME THAT IT WILL BE IN THE INSTRUCTIONS PROVIDED TO THE JURY TOMORROW AND THE -- THERE WILL BE SOME INDICATION ON THE VERDICT FORM FOR THE -- OR AN OPPORTUNITY ON THE VERDICT FORM FOR THE JURY TO ASSIGN SOME FAULT TO ACADIAN AMERICA -- I'M SORRY -- ACADIAN CONTRACTORS.

MOVING ON NOW, ANY OTHER DEFENSE OBJECTIONS TO PAGE 28?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** PAGE 29, ANYTHING BY -- ANY OBJECTIONS BY THE PLAINTIFFS?

**MR. PAPILLION:** NO, YOUR HONOR.

**THE COURT:** BY THE DEFENDANTS?

**MR. MCLAUGHLIN:** ON PAGE 29?

THE COURT: YES.

MR. MCLAUGHLIN: NO, YOUR HONOR.

THE COURT: PAGE 30, ANY OBJECTION BY THE PLAINTIFFS?

MR. PAPILLION: NO, YOUR HONOR.

THE COURT: BY THE DEFENSE?

MR. MCLAUGHLIN: NO, YOUR HONOR.

THE COURT: PAGE 31, ANY OBJECTION BY THE PLAINTIFF?

MR. PAPILLION: BEAR WITH US. NO, YOUR HONOR.

THE COURT: BY THE DEFENSE?

MR. MCLAUGHLIN: NO, YOUR HONOR.

THE COURT: ALL RIGHT. I THINK THAT DOES IT. LET'S NOW TURN TO THE VERDICT FORM. OKAY. ANY OBJECTION TO QUESTION 1 ON PAGE 1 BY THE PLAINTIFF?

MS. PIERCE: WE WOULD ASK THAT IT BE CONSISTENT WITH THE --

THE COURT: IN OTHER WORDS, ADD THE LANGUAGE "AND TRANSPORTATION"?

MS. PIERCE: YES, SIR.

THE COURT: THAT'S REASONABLE. I'LL BE HAPPY TO DO THAT. ANYTHING ELSE FROM THE PLAINTIFF?

MS. PIERCE: NO, SIR.

THE COURT: ALL RIGHT. ANY OBJECTION BY THE

-- OTHER THAN -- OVER AND ABOVE THE OBJECTIONS YOU'VE ALREADY OFFERED, MR. MCLAUGHLIN AND MR. SILVERSTEIN?

**MR. MCLAUGHLIN:** YES, YOUR HONOR. JUST FOR THE RECORD, WE DO REURGE OUR OBJECTION WITH REGARDS TO THE *VALLADOLID* ISSUE WITH REGARDS TO VERDICT -- VERDICT FORM NO. 1, EVERYTHING WE JUST DISCUSSED WITH THE JURY CHARGES.

**THE COURT:** THANK YOU. YOUR OBJECTION IS NOTED.

ANY OBJECTION TO QUESTIONS 2 OR 3 ON PAGE 2 BY THE PLAINTIFF?

**MR. PAPILLION:** YOUR HONOR, JUST THAT QUESTION 3 WE WOULD -- AS WE ARGUED EARLIER, WE WOULD SUBMIT THAT THE FAULT OF JAMES MAYS SHOULD BE COMBINED WITH THAT OF FURMANITE IN A SINGLE QUESTION. SO WE WOULD OBJECT TO 3 AND 4 ON THE CURRENT VERSION OF THE VERDICT FORM.

**THE COURT:** ALL RIGHT. YOUR OBJECTION IS NOTED.

FOR THE DEFENSE, OF COURSE WE'D HAVE TO ADD -- WE WOULD HAVE TO ADD ACADIAN CONTRACTORS THERE.

NOW, LET'S FIRST TAKE UP THE INSTRUCTIONS ON PAGE 2.

ON THE DEFENSE SIDE, ANY OBJECTION TO

QUESTION 2?

**MR. SILVERSTEIN:** YES, JUDGE. I JUST WANT TO MAKE SURE THAT WE ARE FULLY PROTECTED, AND I'M SURE WE ARE. BUT IN AN ABUNDANCE OF CAUTION, I WANT TO MAKE SURE THAT WE OBJECT TO NO. 1 BECAUSE IT DOESN'T TRACK THE LANGUAGE FROM THE *VALLADOLID* CASE. AND WE BELIEVE THAT IS AN INCORRECT SUMMARY OF THE LAW AND THE QUESTION THAT SHOULD BE POSED TO THE JURY.

HAVING SAID THAT, JUDGE, I HAVE TWO PROPOSED CHANGES TO NO. 2. ONE IS: I THINK WE CAN PROBABLY GET RID OF ARTICLE 2315 AND JUST ASK WHETHER THE DEFENDANT WAS NEGLIGENT. I DON'T KNOW IF THE JURY IS -- IF THAT'S GOING TO MEAN ANYTHING, ARTICLE 2315, TO THEM.

**THE COURT:** WELL, WE'RE -- I'M PROVIDING THEM INSTRUCTIONS ON ARTICLE 2315. THEY CAN ALWAYS -- AND ALSO, I WILL TELL YOU RIGHT NOW, THAT THE JURY WILL HAVE A COPY OF THE INSTRUCTIONS IN THE JURY ROOM, SO THEY WILL BE ABLE TO REFER BACK TO THE INSTRUCTIONS.

HAVING SAID THAT, IF BOTH SIDES AGREE THAT 2315 SHOULD COME OUT, I'M HAPPY TO KEEP IT OUT. MR. PAPILLION, MS. PIERCE, DO YOU ALL HAVE AN OPINION ABOUT THAT?

**MR. PAPILLION:** YOUR HONOR, WE DON'T. IF THE COURT WERE TO REMOVE ARTICLE 2315 AND SIMPLY SAY "NEGLIGENCE," FINE I THINK.

**THE COURT:** "WAS NEGLIGENT AND THAT DEFENDANT CHEVRON PIPE LINE COMPANY'S NEGLIGENCE CAUSED JAMES MAYS'S DEATH." CORRECT?

**MR. SILVERSTEIN:** JUDGE, THE SECOND OBJECTION I HAD --

**THE COURT:** LET ME JUST MAKE SURE. DO WE HAVE THAT, JORDAN?

**MR. REDMON:** YES, SIR.

**MR. SILVERSTEIN:** AND I'M GOING TO ADMIT TO THE COURT OR ADVISE THE COURT THAT I SUBMITTED MULTIPLE VERDICT FORMS. I GUESS I KIND OF LOOKED AT IT AND I KIND OF THOUGHT DIFFERENTLY.

I THINK ON MY LATEST WHAT I PROPOSE IS THAT WE BREAK OUT THE QUESTIONS BETWEEN NEGLIGENCE AND CAUSATION AND THEY BE SUBMITTED SEPARATELY. NOW, I'VE CERTAINLY SEEN IT DONE BOTH WAYS. I'VE SEEN IT COMBINED THE WAY THIS COURT'S DONE IT AND I'VE SEEN THEM BROKEN OUT. AND I GUESS I'M THINKING MAYBE A BREAK-OUT BECAUSE -- LET ME JUST -- I'M THINKING OUT LOUD. LIKE ON THE VALVE INSPECTION REPORTS, CLEARLY CHEVRON MISIDENTIFIED THE VALVE. BUT I'M GOING TO ARGUE NOBODY EVER SAW IT AND IT DIDN'T PROVIDE ENOUGH

INFORMATION. SO I DON'T THINK THAT CAUSED -- THAT MAY HAVE BEEN A MISTAKE, BUT THAT WASN'T THE CAUSE OF THE INJURY.

AND I WOULD PROPOSE AND SUGGEST TO THE COURT THAT WE BREAK NO. 2 AND THE OTHER FAULT QUESTIONS INTO: WAS THERE NEGLIGENCE? AND THEN A SEPARATE QUESTION: WAS THERE CAUSATION? THAT'S THE FIRST POINT.

THE SECOND POINT IS --

**THE COURT:** HOLD ON. LET ME ADDRESS THAT. AND YOU'RE RIGHT. THAT IS A -- SOME COURTS DO IT THAT WAY. I'VE DONE IT THAT WAY DEPENDING ON THE FACTS OF THE CASE. BUT LET ME ASK MR. PAPILLION.

**MR. PAPILLION:** YOUR HONOR, WE WOULD BELIEVE THAT -- OR SUBMIT THAT IT'S FINE AS IS AND THAT IT'S ENGLISH AND "AND" MEANS "AND" AND THAT THE ADDITION OF EXTRA BLANKS SIMPLY ADDS FOR THE POTENTIAL OF CONFUSION TO THE JURY.

**THE COURT:** OKAY.

**MR. SILVERSTEIN:** YOU KNOW -- EXCUSE ME, JUDGE. ONE OTHER -- I'M SORRY. I APOLOGIZE.

**THE COURT**: ALL RIGHT. WHAT'S YOUR SECOND REQUEST OR SUGGESTION, MR. SILVERSTEIN?

**MR. SILVERSTEIN:** MR. MCLAUGHLIN -- I CAN'T EVEN SAY HIS NAME -- SUGGESTED SOMETHING, WHICH I

THOUGHT WAS KIND OF A GOOD POINT. HE SAID THIS -- I THINK WE ALL PROBABLY AGREE THAT THIS CASE IS GOING TO BE WITH US FOR A LONG TIME AFTER THIS CASE IS OVER.

**THE COURT**: I HAVE NO DOUBT ABOUT THAT.

**MR. SILVERSTEIN:** AND WE'RE PROBABLY ALL GOING TO GROW OLD WITH THIS TOGETHER.

**THE COURT:** WE'LL BE BACK AT THIS COURTHOUSE IN ABOUT TWO AND A HALF OR THREE YEARS.

**MR. SILVERSTEIN:** AND MAYBE BY BREAKING IT OUT, THAT MAY PROVIDE A LITTLE MORE INFORMATION TO A -- AN APPELLATE COURT WHEN THIS -- IF AND WHEN THIS CASE ENDS UP IN THE FIFTH CIRCUIT. THAT WAS MR. MCLAUGHLIN'S COMMENT. I THOUGHT THAT WAS KIND OF A PRETTY GOOD POINT.

**THE COURT:** IT IS A GOOD POINT. BUT I'M GOING TO DO THINGS THE WAY I TYPICALLY DO THEM IN THIS CASE. AND IT'S GOING TO BE ONE QUESTION. WE'RE GOING TO TAKE OUT THE "AND ARTICLE 2315 AND LOUISIANA CIVIL CODE." YOU KNOW, YOU CAN ALL ARGUE TOMORROW TO THE JURY THAT IT IS -- THIS ONE QUESTION IS ASKING THE JURY TO DO TWO THINGS: ONE, WAS THERE NEGLIGENCE? BUT IT DOESN'T STOP THERE. DOES THE NEGLIGENCE -- WAS THE NEGLIGENCE THE CAUSE OF MR. MAYS'S DEATH? AND SO I'LL ITALICIZE THE WORD

"AND" JUST TO KIND OF GIVE IT -- SO THAT THE JURY UNDERSTANDS THAT THEY HAVE TWO QUESTIONS THERE.

AND I WILL ALSO NOTE THAT WHEN I GIVE THEM THE INSTRUCTIONS TOMORROW, I'LL MAKE IT A POINT TO TELL THEM THAT IT'S NOT JUST WHETHER THERE WAS NEGLIGENCE BUT WHETHER THERE WAS NEGLIGENCE SUFFICIENT TO HAVE CAUSED THE DEATH.

ALL RIGHT. NO. 3, ANY OBJECTION BY THE DEFENSE?

OKAY. SO HOW ABOUT THIS? JORDAN, MY VERY HIGHLY PAID LAW CLERK, HAS A SUGGESTION; AND THAT IS, RATHER THAN SAYING THAT JAMES MAYS HIMSELF WAS AT FAULT -- RATHER THAN -- SO THAT THERE IS CONSISTENCY HERE, WE'RE ASKING ON QUESTION 2 WHETHER CHEVRON WAS NEGLIGENT. THE SUGGESTION BY JORDAN IS THAT MAYBE NO. 3 SHOULD SAY "WAS JAMES MAYS HIMSELF NEGLIGENT AND THAT HE CONTRIBUTED"; "WAS FURMANITE NEGLIGENT AND CONTRIBUTED."

**MR. SILVERSTEIN:** I AGREE WITH THAT, JUDGE, EXCEPT I WOULD USE THE SAME LANGUAGE. I WOULD SAY -- USE THE WORD "CAUSED" RATHER THAN "CONTRIBUTED."

**THE COURT:** OKAY.

**MR. PAPILLION:** "NEGLIGENT" AND "CAUSE" IS FINE.

**THE COURT:** SO WE'LL MAKE THOSE TWO CHANGES

TO QUESTIONS 3, 4 AND WHAT WE'LL BE THE NEW QUESTION 5, WHICH WILL ADDRESS ACADIAN CONTRACTORS.

GOT THAT, JORDAN?

**MR. REDMON:** YES, SIR.

**MR. PAPILLION:** AND JUST RESERVE THE OBJECTION ON THE SEPARATION. BY SAYING IT'S FINE, I DON'T MEAN TO WAIVE, YOUR HONOR.

**THE COURT:** I UNDERSTAND, MR. PAPILLION.

**MR. PAPILLION:** THANK YOU.

**MS. PIERCE:** AND, JUDGE, IF I MAY ADD SOMETHING WITH REGARD TO ACADIAN CONTRACTORS. IN THE PRETRIAL ORDER, WHICH IS DOCUMENT 182, THAT WAS ADDED. BUT THEN IT WAS ALSO STATED, "PLAINTIFF DOES NOT AGREE THAT THIS IS AN ISSUE OF FACT, AS THERE HAS BEEN NO EVIDENCE REGARDING ANY NEGLIGENCE OF ACADIAN CONTRACTORS." SO I JUST WANTED THE COURT TO KNOW WE DID NOT NOT OBJECT TO THAT FINDING.

**THE COURT:** AND I APPRECIATE THAT CLARIFICATION, MS. PIERCE. I UNDERSTAND THAT THE PLAINTIFF DOES NOT AGREE THAT ACADIAN HAS ANY FAULT AT ALL IN THIS CASE. I UNDERSTAND THAT. AND THANK YOU FOR CLARIFYING THAT ON THE RECORD.

**MS. PIERCE:** ALL RIGHT. I JUST DIDN'T WANT YOU TO THINK THAT WE HAD NOT OBJECTED TO THAT.

**THE COURT:** AGAIN, I APPRECIATE YOU POINTING

THAT OUT. AND THAT WILL BE ONE OF THE THINGS I THINK ABOUT AND WILL CONSIDER WHEN WE DO OUR RESEARCH TONIGHT.

SO AGAIN, WE'LL MAKE THOSE CHANGES TO QUESTIONS 3, 4 AND WHAT WILL BE THE NEW QUESTION 5.

**MR. PAPILLION:** WE OBJECT TO 5, BUT I THINK THAT'S NOTED.

**THE COURT:** YES. AND THEN FINALLY WE HAVE QUESTION NO. 5 ON PAGE 4. ACTUALLY, NO, WE HAVE A COUPLE MORE. YES, THIS IS THE PERCENTAGE OF FAULT, SO THIS WILL BE AMENDED TO INCLUDE A LINE FOR ACADIAN. OTHER THAN THAT -- AND I KNOW THERE IS AN OBJECTION, MR. PAPILLION.

**MR. PAPILLION:** WE'RE JUST OBJECTING TO PAGE 4 TO THE SEPARATION OF MAYS AND FURMANITE AND THE INCLUSION OF ACADIAN, YOUR HONOR.

**THE COURT:** VERY GOOD. AND ANY OBJECTIONS BY THE DEFENDANT TO THE INSTRUCTION ON PAGE 5, WHICH WILL BE NO. 6 IN THE NEXT VERSION?

**MR. MCLAUGHLIN:** YOUR HONOR, ON THIS -- I THINK WE'RE STILL ON PAGE 4. THE CURRENT LANGUAGE: "INDICATE IN THE SPACES BELOW THE PERCENTAGE FAULT (0 TO 100) FOR THE DEATH THAT YOU ASSIGN." I THINK THE PRIOR CHARGES KIND OF TALKED ABOUT A PREPONDERANCE.

I SUBMIT A MORE CONSISTENT APPROACH WOULD BE

TO INDICATE WHAT PERCENTAGE YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE -- I TAKE THAT BACK, JUDGE. I THINK THAT WOULD BE MORE CONFUSING.

**THE COURT:** WE REALLY TRIED TO SIMPLIFY THIS. WE CAN INSERT IT, BUT WE'VE ALREADY GOT THE STANDARD CITED EARLIER ON.

**MR. MCLAUGHLIN:** I AGREE, YOUR HONOR.

**THE COURT:** LET'S MOVE ON NOW TO PAGE 6, WHICH -- I MEAN -- EXCUSE ME -- PAGE 5, QUESTION NUMBER -- WHICH WILL BE QUESTION NO. 7. THAT IS INDICATING THE DOLLAR AMOUNTS. AND WHAT WE'VE TRIED TO DO HERE IS -- OF COURSE WE'VE ELIMINATED THE SUPPORT CATEGORY FOR FUNERAL EXPENSES, WHICH THERE WAS A STIPULATION TO THE LOSS OF SUPPORT FOR MRS. MAYS, LOVE AND AFFECTION FOR MRS. MAYS AND THEN THE OTHERS. ANY OBJECTION BY THE PLAINTIFF?

**MR. PAPILLION:** ON THE FUNERAL EXPENSES I WASN'T CLEAR. IS IT JUST GOING TO BE INSERTED OR ARE YOU GOING TO REMOVE IT? I JUST DIDN'T HEAR.

**THE COURT:** IN THE INSTRUCTIONS I'M -- I WILL INSTRUCT THEM THAT THERE IS A STIPULATION THAT THE FUNERAL EXPENSES WERE 12,000 OR WHATEVER.

**MR. PAPILLION:** I UNDERSTAND.

**THE COURT:** BUT I CAN'T --

**MR. PAPILLION:** YOU CAN'T DECIDE IT FOR

THEM.

**THE COURT:** THEY HAVE TO ADOPT THAT.

**MR. PAPILLION:** THANK YOU, YOUR HONOR.

**THE COURT:** SO OTHER THAN THAT, ANY OTHER SUGGESTED EDITS?

**MR. PAPILLION:** NONE, YOUR HONOR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** OKAY. ALL RIGHT.

ANYTHING ELSE? AND OF COURSE ON PAGE 6 IS THE STANDARD SIGNATURE LINE AND DATE FOR THE FOREPERSON.

ANYTHING ELSE WITH RESPECT TO THE VERDICT FORM? ANYTHING FOR THE PLAINTIFF?

**MS. PIERCE:** NO, SIR.

**THE COURT:** BY THE DEFENSE?

**MR. MCLAUGHLIN:** NO, YOUR HONOR.

**THE COURT:** OKAY. ALL RIGHT. WELL, I GUESS THAT JUST ABOUT --

**MR. REDMON:** ONE LAST THING ON THE INSTRUCTIONS. THE FIRST DISPUTED INSTRUCTION, WHICH WAS THE INSTRUCTION THAT DEALT WITH THE LONGSHORE AND HARBOR WORKERS' COMP ACT, NO HEADING AT ALL? WE REMOVED THE HEADING. AND I WASN'T CLEAR IF --

**THE COURT:** LET'S SEE.

**MR. PAPILLION:** ON THE INSTRUCTION?

**MR. REDMON:** YES. IT PREVIOUSLY SAID "LAW OF THE CASE"; "LONGSHORE AND HARBOR WORKERS' COMP ACT."

**MR. PAPILLION:** YES.

**THE COURT:** LET'S SEE. THAT'S ON PAGE 12 OR 13? 16.

**MR. PAPILLION:** "APPLICABLE LAW"?

**THE COURT:** YEAH, LET'S JUST SAY "APPLICABLE LAW." JUST "APPLICABLE LAW."

**MR. MCLAUGHLIN:** WE'RE NOT WAIVING OUR OTHER OBJECTIONS, YOUR HONOR.

**THE COURT:** CORRECT. OKAY? ANYTHING ELSE FROM EITHER SIDE BEFORE WE ADJOURN FOR THE DAY?

**MR. SILVERSTEIN:** JUDGE, WE HAVE 30 MINUTES FOR CLOSING?

**THE COURT:** NO. YOU CAN HAVE MORE THAN THAT. I'M GOING TO GIVE YOU -- DO YOU NEED ANY MORE THAN 50 MINUTES TO CLOSE TOMORROW?

**MR. SILVERSTEIN:** I DON'T NEED ANYWHERE NEAR THAT TIME, JUDGE.

**MS. PIERCE:** DID YOU SAY FIVE ZERO?

**THE COURT:** FIVE ZERO.

**MS. PIERCE:** OKAY. NO, YOUR HONOR, THAT SHOULD BE FINE.

**THE COURT:** SO 50 MINUTES FOR BOTH SIDES. WE'LL TAKE A QUICK BREAK THEREAFTER. WE'LL COME BACK, WE'LL CHARGE THE JURY.

OKAY. ANYTHING ELSE WE SHOULD TALK ABOUT BEFORE WE ADJOURN?

**MS. PIERCE:** ARE WE BEGINNING AT EIGHT IN THE MORNING?

**THE COURT:** WE WILL BEGIN AT EIGHT IN THE MORNING. LET ME JUST SAY THIS, TOO. MS. LEGER, SHE'S NOT PRESENT WITH US. I HOPE EVERYTHING IS FINE WITH HER FAMILY MEMBER. I HOPE SHE'S OKAY.

**MS. PIERCE:** SHE'S STILL IN THE HOSPITAL, BUT SHE IS GOING TO BE FINE.

**THE COURT:** I'M SORRY TO HEAR THAT. WELL, AGAIN, I HOPE THINGS -- LET ME JUST SAY THIS TO THE LAWYERS. THIS IS A TOUGH CASE. THIS IS A CASE THAT'S BEEN GOING ON FOR A LONG TIME. AND BEYOND THAT, THIS INCIDENT IS AN ABSOLUTE TRAGEDY. BUT I APPRECIATE THE MANNER IN WHICH ALL THE LAWYERS HAVE HANDLED THEMSELVES IN THIS CASE.

YOU KNOW, CASES ARE NOT CLEAN. CASES CAN BE KIND OF MESSY AT TIMES. THAT'S JUST THE NATURE OF IT. BUT I THINK BOTH SIDES ACQUITTED THEMSELVES QUITE ADMIRABLY AND CERTAINLY WITH A LOT OF DEVOTION AND COMPETENCE, DEVOTION TO THEIR CLIENTS AND TO

THEIR CASES. AND SO I APPRECIATE THE PROFESSIONALISM THAT THE LAWYERS FOR BOTH SIDES HAVE DISPLAYED THROUGHOUT THIS TRIAL.

I HOPE YOU ALL HAVE A GOOD NIGHT, A RESTFUL EVENING, AND WE'LL SEE YOU ALL AT EIGHT O'CLOCK TOMORROW MORNING.

COURT IS ADJOURNED.

**(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)**

**C E R T I F I C A T E**

**I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE ABOVE-ENTITLED NUMBERED MATTER.**

**S:/NATALIE W. BREAUX**

**NATALIE W. BREAUX, RPR, CRR**

**OFFICIAL COURT REPORTER**